COPY

1

2  **REESE RICHMAN LLP**
   Michael R. Reese (Cal. State Bar. No. 206773)
3  230 Park Avenue, 10th Floor
   New York, New York 10169
4  Telephone: (212) 579-4625
   Facsimile: (212) 5673-4272
5  michael@reeserichman.com

   *E-filing*

6       - and –

7  **WHATLEY DRAKE & KALLAS, LLC**
   Deborah Clark Weintraub
8  Elizabeth Rosenberg
   1540 Broadway, 37th Floor
9  New York, New York 10036
   Telephone: (212) 447-7070
10 Facsimile: (212) 447-7077
   dweintraub@wdklaw.com
11 erosenberg@wdklaw.com

12 *Counsel for Plaintiffs*

13

14              UNITED STATES DISTRICT COURT                **JSW**

15              NORTHERN DISTRICT OF CALIFORNIA

16              SAN FRANCISCO DIVISION

17 ARNOLD KREEK, Individually And On Behalf   ) Case No. CV 08 1830
   Of All Others Similarly Situated,          )
18                                            )
                        Plaintiffs,           )  **CLASS ACTION COMPLAINT FOR**
19                                            )  **VIOLATION OF THE FEDERAL**
       vs.                                    )  **SECURITIES LAWS**
20                                            )
   WELLS FARGO & COMPANY, WELLS               )
21 FARGO FUNDS MANAGEMENT, LLC,               )  **JURY TRIAL DEMANDED**
   WELLS FARGO FUNDS TRUST, WELLS             )
22 FARGO DISTRIBUTORS, STEPHENS, INC.,        )
   WELLS FARGO BANK, N.A.,                    )
23                                            )
                        Defendants.           )
24                                            )
                                              )
25                                            )
                                              )
26                                            )
                                              )
27                                            )
                                              )
28
   CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Arnold Kreek and those similarly situated (collectively "Plaintiffs") by and through their counsel, allege the following based upon the investigation of counsel. Counsel's investigation included a review of United States Securities and Exchange Commission ("SEC") filings, as well as other regulatory filings, reports, and advisories, press releases, and media reports about Wells Fargo & Company and its related entities also named herein as defendants (collectively "Defendants" or "Wells Fargo"). Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.     This is a federal class action arising out of Defendants' failure to disclose an insidious kickback scheme that was designed to improperly enrich Defendants to the detriment of Plaintiffs and other members of the Class. This action is brought by Plaintiffs against Wells Fargo on behalf of a Class (defined below) consisting of all persons or entities who purchased one or more of the Wells Fargo Funds (except for the Wells Fargo Diversified Equity Fund, Montgomery Emerging Markets Fund and Small Cap Growth Fund) from November 4, 2000 through April 11, 2006 inclusive (the "Class Period"). This case is premised upon the allegations in *Siemers v. Wells Fargo et al*, Case No. 05-4518 WHA (N.D. Cal.) ("*Siemers* action") and hereby incorporates by reference the pleadings in the *Siemers* action.

2.     Defendants created undisclosed material conflicts of interest with members of the Class by entering into revenue-sharing agreements with brokerages and selling agents who sold the Wells Fargo Funds.

3.     Defendants financed these arrangements by illegally charging excessive and improper fees to the Wells Fargo Funds and their investors that should have been invested in the underlying portfolio. Defendants did not disclose to investors, at the time of purchase, their pre-existing and ongoing revenue sharing arrangements, but rather knowingly hid such information by way of material omissions and half-truths in the prospectuses and other offering documents.

4.     The NASD has fined and censured Wells Fargo Investments millions of dollars for its conduct accepting such kickbacks, which included its role in this scheme. Likewise, the NASD and SEC have fined and censured broker-dealers such as American Express for failure to disclose the kickbacks paid to the broker-dealers by Defendants.

5.     Defendants' sales practices created a material insurmountable conflict of interest between themselves and their clients by using investor assets to provide monetary incentives to broker/dealers to sell Wells Fargo Funds, sales of which increased Defendants' overall profits, but improperly diminished investors' returns. Defendants failed to disclose their kickback scheme, knowing that if the truth were revealed, no reasonable investor would invest in the Wells Fargo Funds. This conflict of interest created by Defendants' failure to disclose these incentives violates federal securities laws. Furthermore, Plaintiffs and other members of the Class paid fees and commissions that they would not have paid otherwise had the kickback scheme been disclosed, and, as result, received lower returns from their investments.

6.     In engaging in this conduct, the Distributors, Registrant, and Control Person Defendants violated the Securities Act of 1933. In addition, the Investment Advisor, Distributors, Registrant, and Control Person Defendants violated the Securities Exchange Act of 1934.

### JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") and 15 U.S.C. § 78aa; Section 22 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77v and 28 U.S.C. §§ 1331, 1337 and 1367(a).

8.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391. Substantial acts in furtherance of the alleged fraud, including the preparation and dissemination of materially false and misleading information, occurred within this District. Defendant Wells Fargo is headquartered in San Francisco.

9.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### Plaintiffs

10.     Arnold Kreek purchased shares of the Wells Fargo Funds during the Class Period and was thereby damaged. The Wells Fargo Funds acquired by Arnold Kreek are included in the certification attached hereto as Exhibit A.

### The Parent Company

11.     Wells Fargo & Company is the ultimate parent of all Defendants named in this Complaint other than Stephens, Inc. and is incorporated in Delaware. Wells Fargo & Company is a diversified financial services company providing banking, insurance, investments, mortgage and consumer finance services. Through its subsidiaries, Wells Fargo & Company also markets, sponsors, and provides investment advisory, distribution, and administrative services to mutual funds, including the Wells Fargo Funds. Defendant Wells Fargo & Company is headquartered at 420 Montgomery Street, San Francisco, California 94104. It was the ultimate beneficiary of the secret plan and scheme to drive new investors into the Wells Fargo Funds through the kickback scheme alleged herein. Defendant Wells Fargo & Company is herein referred to as the "Control Person Defendant."

### The Investment Adviser

12.     Defendant Wells Fargo Funds Management, LLC ("the Fund Management Defendant" or "the Investment Adviser Defendant"") is a Delaware corporation registered as an investment adviser under the Investment Advisers Act. Its offices are located at 525 Market St., San Francisco, California 94105. It is an indirect, wholly-owned subsidiary of Wells Fargo & Company. Prior to March 1, 2001, the Fund Management Defendant existed as a division or department of Defendant Wells Fargo Bank, N.A., rather than as a separate legal entity, but at all times it has acted in the capacities described herein. For example, in the prospectuses dated February 1, 2001, the Fund Management Defendant stated that it had been created in "early

2001" but referenced its existence as a fund manager (under the ownership of Wells Fargo & Company) prior to that date, stating, "As of September 30, 2000, Funds Management and its affiliates managed over $514 billion in assets."

13. The Investment Adviser Defendant is responsible for implementing the investment policies and guidelines for the Wells Fargo Funds and for supervising the sub-adviser responsible for their day-to-day management, including the placing of orders for the purchase and sale of portfolio securities. In return, the Investment Adviser receives fees calculated as percentage of net assets under management.

14. As of June 30, 2004, the Investment Adviser Defendant managed over $75 billion in Wells Fargo Funds mutual fund assets. In breach of its fiduciary duties, the Investment Adviser Defendant provided self-serving information to the Funds' Board of Trustees and created a secret plan with broker/dealers to promote the Wells Fargo Funds which resulted in the Funds' investors footing the bill.

**The Distributors**

15. Defendant Wells Fargo Funds Distributor, LLC is the distributor of all Wells Fargo Funds. Wells Fargo Distributor is located at 525 Market Street, San Francisco, California 94105 and is an affiliate of the Fund Management Defendant. According to the Wells Fargo Funds prospectuses: "Wells Fargo Funds Distributor, LLC serves as the principal underwriter distributing securities of the Funds on a continuous basis" during the Class Period. *See* April 11, 2005 prospectuses for Wells Fargo Advantage Small Cap Growth Fund.

16. Defendant Stephens Inc. served as the Distributor of the Wells Fargo Funds until July 26, 2004. Stephens Inc. is located at 111 Center Street, Little Rock, Arkansas 72201. According to the Wells Fargo Funds prospectuses: "Stephens served as the principal underwriter distributing securities....on a continuous basis" during portions of the Class Period. *See* April 11, 2005 prospectuses for Wells Fargo Advantage Small Cap Growth Fund.

17. Defendant Stephen Inc. and Wells Fargo Funds Distributor, LLC., will be collectively referred to as the "Distributor Defendants".

**The Registrant**

18.     Defendant Wells Fargo Funds Trust is the Registrant of all the Wells Fargo Funds for the purposes of filing financials with the SEC, under which the Wells Fargo Funds are organized as several portfolios/series. Defendant Wells Fargo Funds Trust is an open-ended management company incorporated in Delaware and is registered with the SEC under the Investment Company Act. Wells Fargo Funds Trust has its principal executive offices at 525 Market Street, San Francisco, California 94105. Defendant Wells Fargo Funds Trust is herein referred to as the "Registrant Defendant."

## SUBSTANTIVE ALLEGATIONS

**Background**

19.     Wells Fargo provides banking, insurance, investments, mortgage and consumer finance services to more than 23 million customers through an international network of over 6,160 financial services offices, the internet and other distribution channels. Wells Fargo has $435 billion in assets and over 150,000 employees. Wells Fargo calls its financial consultants "team members" and states on its website that the "team members" will "provide sound financial advice for customers ... and create new wealth for them." WellsFargo.com, Vision and Values: What is Wells Fargo, http://www.wellsfargo.com/ invest_relations/vision_values/4.

20.     Investors often turn to financial consultants for guidance on savings and retirement vehicles that will maximize the growth of their assets. Brokers, such as those at Wells Fargo Investments, refer to themselves as financial consultants. Wells Fargo states on its website that among its core values are that its employees "[v]alue and reward open, honest, two-way communication...[a]void any actual or perceived conflict of interest...[and] [c]omply with the letter and the spirit of the law." WellsFargo.com, Vision and Values: What Are Our Values, http://www.wellsfargo.com/invest_relations/vision_values/11. Indeed, the "Wells Fargo Team Members Code of Ethics and Business Conduct" states that team members must avoid conflicts of interest or the appearance of conflicts of interest, and also notes that it is unlawful for team members to accept anything of value from any person intending to be

influenced or rewarded in connection with any business or transaction of Wells Fargo. *See* WellsFargo.com, Wells Fargo Team Members Code of Ethics and Business Conduct, June 1, 2004, at 6, http://www.wellsfargo.com/ pages/about/corporate/ethics/team_member_code_of_ethics_2004.pdf. These internally-published prohibitions on conflicts of interest are, of course, in addition to the matrix of market regulations governing broker/dealers and mutual fund companies that prohibit such conduct.

21.     However, Defendants' mutual funds sales practices clearly contradict their statements made to investors. Undisclosed conflict of interests were rampant in the relationships between Defendants and mutual fund investors who are members of the Class.

22.     The kickbacks paid by Defendants were in the form of "revenue sharing." Revenue sharing occurs when a mutual fund's investment adviser or its affiliate makes cash payments to a broker/dealer in exchange for the broker/dealer pushing shares of that fund over other funds. Revenue sharing arrangements are problematic because they reduce the assets of the funds for a purpose that is not disclosed to investors. In addition, broker/dealers cannot uphold their fiduciary responsibilities when they choose to include or exclude a fund based on the fund's participation in a revenue sharing arrangement rather than based on the benefit to the investor without informing the investor. The SEC has stated that "[r]evenue sharing arrangements not only pose potential conflicts of interest, but also may have the indirect effect of reducing investors' returns by increasing the distribution-related costs incurred by funds." 69 Fed. Reg. 6438, 6441 n.21 (Feb.10, 2004)

**THE WELLS FARGO FUNDS' PROSPECTUSES, THEIR STATEMENTS OF ADDITIONAL INFORMATION AND DEFENDANTS' PUBLIC STATEMENTS WERE MATERIALLY FALSE AND MISLEADING REGARDING THE KICKBACK ARRANGEMENTS**

23.     The kickback activities engaged in by Defendants as described herein created conflicts of interest with respect to the financial consultants' investment advice given to their clients and the management of their client accounts. These conflicts of interest were not disclosed to Plaintiffs and the Class, and were actively concealed from investors. Disclosure of

these sales incentives and compensation structures were necessary for Wells Fargo's clients to make informed investment decisions.

24.     Wells Fargo disclosed information to its customers concerning mutual fund purchases primarily through supplying customers with the prospectuses and if requested, the statements of additional information ("SAIs") issued by the mutual funds.

25.     A mutual fund's prospectus and its SAIs are required to disclose all material facts in order to provide investors with information that will assist them in making an informed decision about whether to invest in a mutual fund. The law requires that such disclosures be in straightforward and easy to understand language such that it is readily comprehensible to the average investor. *See* Plain English Disclosure, SEC Release Nos. 33-7497, 34-39593 (Oct. 1, 1998) (to be codified at 17 C.F.R. pts. 228, 229, 230, 239 and 274).

26.     Prior to investing in any of the Wells Fargo Funds, Plaintiffs and each member of the Class were entitled to receive the appropriate prospectuses. The SAI is not distributed to investors, but is available to them on request. The prospectuses and SAIs were deceptive and misleading as they failed to disclose Defendants' practice of steering investors into Wells Fargo Funds.

27.     Each of the Wells Fargo Funds prospectuses and their SAIs issued during the Class Period failed to adequately disclose to investors material information about the mutual funds and the fees and costs associated with them. Each of the prospectuses and their SAIs contained the same materially false and misleading statements and omissions regarding revenue sharing.

28.     Before 2002, the prospectuses had no disclosures about revenue sharing. Beginning in February 2002, the prospectuses included the following language:

> In addition to payments received from the Funds, selling or shareholder servicing agents may receive significant additional payments directly from the Adviser, the Distributor, or their affiliates in connection with the sale of Fund shares.

Beginning in February 2004, this language was revised to the following:

> In addition to payments received from the Funds, selling or shareholder servicing agents may receive significant additional

payments directly from the adviser, the distributor, or their affiliates in connection with the sale of Fund shares. These amounts may be fixed dollar amounts or a percentage of sales or both, and may be up-front or ongoing payments or both. Agents may agree to provide a marketing or servicing advantages to the Funds in return for the payments. Selling or shareholder servicing agents, in turn, may pay some or all of these amounts to their employees who recommend or sell Fund shares or make investment decisions on behalf of clients. Payments made with respect to the Funds may differ from those made with respect to other mutual funds available through the agent and could influence the agent's recommendations or decisions. Prospective investors should consult with their selling or shareholder servicing agent if they wish to request further information regarding these matters.

Beginning on April 11, 2005, this language was further revised as follows:

In addition to payments received from the Funds for distribution and shareholder servicing, the Adviser, the Funds' distributor or their affiliates, may pay out of their own assets, and at no cost to the Funds, significant amounts to selling or shareholder servicing agents in connection with the sale and distribution of shares of the Funds or for services to the Funds and their shareholders.

In return for these payments, the Funds may receive certain marketing or servicing advantages including, without limitation, inclusion of the Funds on a selling agent's "preferred list"; providing "shelf space" for the placement of the funds on a list of mutual funds offered as investment options to its clients; granting access to a selling agent's registered representatives; providing assistance in training and educating the selling agent's registered representatives and furnishing marketing support and other related services. Additionally, the Funds and their shareholders may receive certain services including, but not limited to, establishing and maintaining accounts and records; answering inquiries regarding purchases, exchanges and redemptions; processing and verifying purchase, redemption and exchange transactions; furnishing account statements and confirmations of transactions; processing and mailing monthly statements, prospectuses, shareholder reports and other SEC-required communications, and providing services that might typically be provided by a Fund's transfer agent (e.g., the maintenance of omnibus or omnibus-like accounts, the use of the National Securities Clearing Corporation for the transmission of transaction information and the transmission of shareholder mailings).

Payments made by the Funds' Adviser, distributor or their affiliates, for the advantages and services described above, may be fixed dollar amounts, may be based on a percentage of sales and/or assets under management or a combination of the above, and may be up-front or ongoing payments or both. Such payments may be based on the number of customer accounts maintained by the selling or shareholder servicing agent, or based on a percentage of the value of shares sold to, or held by, customers of the selling or shareholder servicing agent, and may differ among selling and shareholder servicing agents.

In addition, representatives of the Funds' distributor visit selling

> agents on a regular basis to educate their registered representatives and to encourage the sale of Fund shares. The costs associated with such visits and any arrangement, such as sponsoring various contests and promotions to encourage the sale of Fund shares, may be paid for by the Adviser, the Funds' distributor or its affiliates, subject to applicable NASD regulations.

These disclosures were misleading in that they were not placed anywhere near the applicable text regarding strategies, shareholder fees, or organization and management of the funds but on a page near the end of the prospectus, without any heading, between sections labeled "You Can Buy Fund Shares" and "Minimum Investments." Moreover, these statements, as well as the prospectuses and SAIs as a whole, were misleading in that they failed to disclose (1) that all or a portion of the fee paid for advisory services, administrative services, networking, transfer agency and shareholder services in fact was used to market the funds by way of kickbacks to selling agents; (2) the amounts being paid or the identities of the payees; (3) that these distribution arrangements were not approved by the board of directors of the funds and the board was unable to and did not supervise the funds adequately; (4) that there were pre-existing agreements with selling agents by which a portion of fees paid by the funds were sent to those selling agents as kickbacks or to state the amount of the kickbacks; (5) that the board was acting as an arm of the investment adviser, (6) that fees for distribution were being paid on shares other than class B and C shares, (7) that the source of the "additional payments" were fees charged to the investors by the funds, and then sent by the funds to the investment adviser and distributors, or that the investment adviser's only source of income was fees earned from the funds, or (8) that the payments were made in exchange for preferential marketing treatment by the selling agents.

## SEC Enforcement Actions Confirm The Insufficiency Of Defendants' Disclosures.

29.    The SEC has ruled in similar cases that such prospectus disclosures are not adequate. *See* SEC Order Instituting Administrative and Cease-And-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions, In the Matter of Massachusetts Financial Services Company, Mar. 31, 2004, *available at* http://www.sec.gov/litigation/admin/ia-2224.htm; SEC Order Instituting Administrative And Cease-And-Desist Proceedings, Making

1   Findings, And Imposing Remedial Sanctions, In the Matter of Franklin Advisers, Inc. and

2   Franklin/Templeton Distributors, Inc., *available at* http://www.sec.gov/litigation/admin/34-

3   50841.htm (emphasis added). *See also* SEC Order Instituting Administrative And Cease-And-

4   Desist Proceedings, Making Findings, And Imposing Remedial Sanctions, In the Matter of

5   OppenheimerFunds, Inc. and OppenheimerFunds Distributor, Inc., Sept. 14, 2004, *available at*

6   http://www.sec.gov/litigation/ admin/34-52420.pdf; SEC Order Instituting Administrative And

7   Cease-And-Desist Proceedings, Making Findings, And Imposing Remedial Sanctions, In the

8   Matter of Putnam Investment Management, LLC, Mar. 23, 2005, *available at*

9   http://www.sec.gov/litigation/admin/ia-2370.pdf.

10        30.     As was explained in the SEC Administrative Cease-and-Desist Order brought

11   against Citigroup Global Corp ("CGMI"):

> [M]ost of the disclosures were generally vague and lacked sufficient
> information to inform CGMI's customers of the nature and scope of
> CGMI's revenue sharing program. For example, the prospectuses and
> SAIs did not specifically disclose the magnitude of the revenue sharing
> payments that CGMI received from the fund complexes or that certain fund
> complexes had greater access to, or increased visibility in, CGMI's retail
> network. As a result, CGMI's customers were not provided with sufficient
> information to appreciate the dimension of the conflict of interest the
> revenue sharing program created.

In the Matter of Citigroup Global Markets, Inc., Order Instituting Administrative and Cease-and-

Desist Proceedings, SEC Act Release No. 8557, March 23, 2005. Likewise, in an SEC action

against Edward D. Jones, the SEC also came to the same conclusions, and noted that the:

> [P]referred families' prospectuses and SAIs fail to disclose adequate
> information about the source and the amount of revenue sharing payments
> to Edward Jones and the dimensions of the resulting potential conflicts of
> interest. Although the Preferred Families' prospectuses and SAI's
> contained various disclosures concerning payments to broker-dealers
> distributing their funds, few of these disclosures adequately described
> Edward Jones' potential conflict of interest.

In the Matter of Edward D. Jones & Co., L.P., Order Instituting Administrative and Cease-and

Desist Proceedings, SEC Release No. 8520, December 22, 2004.

31.     Here, as in the SEC's actions against Edward Jones and Citigroup, the

prospectuses and SAIs failed to disclose the financial quid pro quo arrangements discussed

above. The Wells Fargo Fund prospectuses and SAIs also failed to disclose that participants in financial arrangements paid with a portion of advisory fees and other fees derived from the Wells Fargo Funds and their investors, in addition to the sales loads accompanying the initial purchase of shares.

**The Investment Adviser Defendant and Distributor Defendants Were Responsible for the False and Misleading Statements in the Wells Fargo Funds' Prospectuses and SAIs.**

32. The Investment Adviser Defendant and the Distributor Defendants were responsible for the statements made in the Wells Fargo Funds Prospectuses and SAIs and had a duty to disclose all material information in the Prospectuses and SAIs. In addition to the general anti-fraud provision of section 10(b) of the Securities Exchange Act of 1934, the federal securities laws impose specific duties on mutual fund investment advisers and distributors/underwriters to disclose all material information. *See* Section 11(a)(5) of the Securities Act of 1933, 15 U.S.C. § 77k (stating that an underwriter is liable for any misleading material statements or omissions made in a registration statement); section 34(b) Investment Company Act of 1940; 15 U.S.C. § 80a-34(b) (stating that an investment adviser involved in the preparation or filing of a registration statement is liable for any misleading material statements or omissions made therein). Additionally, the SEC also imposes disclosure requirements on mutual fund investment advisers and distributors through its rules and regulations, including, but not limited to, the requirements of Form N-1A. Accordingly, when a mutual fund investment adviser or distributor fails to meet the disclosure requirements imposed by the federal securities laws and the SEC, the SEC has held mutual fund investment advisers and distributors liable under the federal securities laws for failure to disclose.

33. The Wells Fargo Prospectuses and SAIs state that the Investment Adviser Defendant – Wells Fargo Funds Management, LLC – was directly involved in the preparation and dissemination of the false and misleading Prospectuses and SAIs. For example, the Prospectus for Wells Fargo Advantage Large Cap Stock Funds states as follows:

**Organization and Management of the Funds**

**The Administrator**

Funds Management provides the [Wells Fargo] Funds with administrative services, including general supervision of each Fund's operation, coordination of the other services provided to each Fund, *compilation of information for reports to the SEC and the state securities commissions, preparation of proxy statements and shareholder reports, and general supervision of data compilation in connection with preparing periodic reports to the Trust's Trustees and officers.*

Prospectus for Wells Fargo Advantage Large Cap Stock Funds including the Wells Fargo Advantage Capital Growth Fund, Wells Fargo Advantage Dividend Income Fund, Wells Fargo Advantage Growth Fund, Wells Fargo Advantage Growth and Income Fund, Wells Fargo Advantage Large Cap Growth Fund and Wells Fargo Advantage Value Fund effective December 1, 2005 (emphasis added).

34.    The SAIs to the Wells Fargo Advantage Funds Prospectuses further underscore the significant involvement of the Investment Adviser Defendant:

**Administrator**

The [Wells Fargo Fund] Trust has retained Funds Management (the *"Administrator"*) as administrator on behalf of the Portfolios pursuant to an Administration Agreement. Under the Administration Agreement with the Trust, Funds Management provides, among other things: (i) general supervision of the Portfolios' operations, including communication, coordination and supervision services with regard to the Portfolios' transfer agent, custodian, fund accountant and other service organizations that render record-keeping or shareholder communication services; (ii) *coordination of the preparation and filing of reports and other information materials regarding the Portfolios, including prospectuses, proxies and other shareholder communications*; (iii) *development and implementation of procedures for monitoring compliance with regulatory requirements* and compliance with the Portfolios' investment objectives, policies and restrictions; and (iv) any other administrative services reasonably necessary for the operation of the Portfolios other than those services that are provided by the Portfolios' transfer agent, custodian and fund accountant. Funds Management also furnishes office space and certain facilities required for conducting the Portfolios' business together with ordinary clerical and bookkeeping services.

Wells Fargo Growth Fund SAI effective October 21, 2003 (emphasis added).

35.    In situations identical to that presented here where a mutual fund investment adviser is responsible for "compilation of information for reports to the SEC" and engaged in providing "revenue-sharing" kickbacks, the SEC has held the investment adviser liable for

violating the disclosure requirements of the federal securities laws and Form N-1A. For example, in the SEC's cease-and-desist action against investment adviser MFS filed March 31, 2004 the SEC stated that:

> **MFS Did Not Adequately Disclose to MFS Shareholders that it Allocated Fund Brokerage Commissions to Satisfy Strategic Alliances**
>
> MFS *was responsible for ensuring that the MFS Funds' Prospectus and SAI were in compliance* with the requirements of Form N-1A.
>
> The information the Commission requires investment companies to disclose in prospectuses and SAIS is set forth in Form N-1A. Specifically, Item 16(c) of the Form N-1A requires a description in the SAI of "how the fund will select brokers to effect securities transactions for the Fund" and required that "[i]f the Fund will consider the receipt of products or services other than brokerage or research services in selecting brokers, [the Fund should] specify those products or services."
>
> From at least January 1, 2000 to November 7, 2003, MFS Funds' SAIs disclosed that MFS may consider sales of shares of the funds as a factor in the selection of broker-dealers to execute the MFS Funds' portfolio transactions. The SAIs did not make the distinction, however, between directing commissions in "consideration of fund sales" and satisfying negotiated arrangements for specific amounts with brokerage commissions. The SAIs did not adequately disclose to shareholders that MFS had entered into bilateral arrangements in which it agreed to allocate specific negotiated amounts of fund brokerage commissions, subject to best execution, to broker-dealers for "shelf space" or heightened visibility within their distribution systems.
>
> As a result of the conduct described above, MFS willfully...
>
> Violated Section 34(b) of the Investment Company Act, which provides in pertinent part that it is "unlawful for any person to make any untrue statement of a material fact in any registration statement filed or transmitted pursuant to" the Investment Company Act and to "omit to state therein any fact necessary in order to prevent the statements made therein, in light of the circumstances under which they were made, from being materially misleading."

36. Likewise, in the SEC's November 8, 2006 cease-and-desist proceedings against investment adviser Hartford Investment Financial Services, LLC and its distributor Hartford Securities Distribution Company, Inc. the SEC held that:

> The Retail and HLS Funds provided prospectuses and statements of additional information ("SAI") to Fund shareholders. *Hartford Investment and HL*

1   ***Advisors prepared and distributed the Retail and HLS Funds' prospectuses and
2   SAIs, and thus were responsible for ensuring that they were accurate.***

3                                        * * *

4   Hartford Investment and HL Advisors omitted to state additional material facts to
    shareholders regarding the use of directed brokerage.  Specifically the Retail
5   Funds' SAI and the HLS Funds' prospectus state that they may direct brokerage
    commissions to broker-dealers who also sold shares of the Retail and HLS Funds.
6   These representations were misleading.

7                                        * * *

8
9   Section 17(a)(2) and 17(a)(3) of the Securities Act prohibits any person, in the
    offer or sale of securities, from making any untrue statement of a material fact, or
10  omitting to state a material fact necessary in order to make the statement made, in
    light of the circumstances under which they were made, not misleading…

11
12  Section 34(b) of the Investment Company Act prohibits any person from making
    any untrue statement of a material fact, or omitting to state any fact necessary in
13  order to prevent the statements made therein, in the light of the circumstances
    under which they are made, from being materially misleading, in any registration
14  statement, application, report, account, record, or other document filed or
    transmitted pursuant to the Investment Company Act.

15
16  As a result of the conduct described above, Hartford Investment and HL Advisors
    willfully violated Section 17(a)(2) and 17(a)(3)of the Securities Act.

17  SEC Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings and

18  Imposing Remedial Sanction In the Matter of Hartford Investment Financial Services, LLC, HL

19  Investment Advisors, LLC, and Hartford Securities Distribution Company, Inc. dated November

20  6, 2006, *available at* http://www.sec.gov/litigation/admin/2006/33-8750.pdf (emphasis added).

21  *See also* SEC Order Instituting Administrative and Cease-and-Desist Proceedings, Making

22  Findings and Imposing Remedial Sanction In the Matter of Putnam Investment Management,

23  LLC dated March 23, 2005, *available at* http://www.sec.gov/litigation/admin/ia-2370.pdf

24  ("[investment adviser] Putnam was primarily responsible for ensuring that the Putnam Funds'

25  Prospectuses and SAIs were in compliance with the requirements of Form N-1A in describing

26  Putnam's trading practices for the Putnam Funds"); SEC Order Instituting Administrative and

27  Cease-and-Desist Proceedings, Making Findings and Imposing Remedial Sanction In the Matter

28  of Franklin Advisers, Inc. and Franklin/Templeton Distributors, Inc., dated  December 13, 2004

1 | *available at* http://www.sec.gov.litigation/admin/34-50841.htm ("The shelf space arrangements
2 | also were not adequately disclosed to the FT Shareholders. [Investment adviser] FA [Franklin
3 | Advisers, Inc.] was responsible for ensuring that the disclosures made in the funds' prospectuses
4 | and Statements of Additional Information ("SAIs") accurately described how
5 | [distributor/underwriter] FTDI chose the broker-dealers with which it worked.").

6 | **THE KICKBACKS WERE FINANCED BY IMPROPER USE OF THE FEES CHARGED**
7 | **TO THE INVESTORS OF THE WELLS FARGO FUNDS**

8 |      37.    During the relevant time-frame, compensation and fees paid to the Investment
9 | Adviser Defendant and the Distributor Defendants rose dramatically even though the services
10 | provided by these Defendants remained the same, and no additional benefits were provided to
11 | the Funds or their investors in return for the additional fees.

12 |      38.    A major reason for the dramatic increase in compensation to the Investment
13 | Adviser Defendant, Distributor Defendants and affiliates was the growth in the size of the
14 | Wells Fargo Funds, resulting from Defendants' use of Wells Fargo Fund assets to promote the
15 | sale of Wells Fargo Fund shares through participation in revenue sharing or "Shelf Space"
16 | programs. These payments resulted in the growth of the Wells Fargo Funds, which benefited
17 | the Investment Adviser Defendant and Distributor Defendants because it allowed their
18 | advisory and other asset-based fees to increase. The aforesaid Defendants engaged in those
19 | programs in an effort to generate increased compensation even though many of those programs
20 | were in violation of SEC and NASD rules and regulations. Defendants engaged in such
21 | activity despite ample evidence that the increase in their compensation was not justified by any
22 | increase in the quality or nature of the services which they provided to the Wells Fargo Funds
23 | or their investors, or by additional benefits to the Wells Fargo Funds or their investors.

24 |      39.    Although an increase in mutual fund assets can benefit investors through
25 | economies of scale that decrease the expenses of operating such funds on a per share basis,
26 | Defendants failed to reduce their fees to pass on the economies of scale to the Wells Fargo
27 | Funds or their investors. Instead, they utilized the economies of scale for their own benefit.

28 |

40. The fee structure imposed by Defendants on the Wells Fargo Funds and their investors far exceeded the fees that would be paid as a result of arm's-length bargaining. Fees for essentially the same services that were paid by similar funds not affiliated with Defendants were substantially less.

41. In addition, Wells Fargo Fund assets were used to pay large amounts of what essentially were "Rule 12b-1" fees to the Distributor Defendants without any benefit accruing to the Wells Fargo Funds or their investors from those payments, without being limited to class B and class C shares, and without disclosure to investors.

42. Furthermore, the Directors of the Wells Fargo Funds ("Directors") failed to satisfy their duty to independently and conscientiously evaluate the Funds' 12b-1 and advisory fee arrangements, a factor which strongly supports a finding of fee excessiveness. The Directors were unable to perform their duties as the "watchdogs" of the Wells Fargo Funds because they failed to obtain enough information adequately to evaluate the Wells Fargo Funds' distribution fees as required by Rule 12b-1. As a result of the Directors' failure to be adequately informed, they were unable to evaluate whether Defendants' use of Wells Fargo Fund assets for Shelf Space agreements was in the Wells Fargo Funds' and their investors' best interest and whether the fees being charged were excessive. Moreover, the increase in the Wells Fargo Funds' net assets, accompanied by an increase in the expense ratios and Defendants' failure to reduce their fees, were red flags which the Directors disregarded. As a result, the Directors did not perform their duties as "watchdogs" of the Wells Fargo Funds because they failed to ensure that any economies of scale that were being realized from the increase in Wells Fargo Funds assets were passed to the Wells Fargo Funds and their investors. The Directors' failure to satisfy their duties resulted in the improper use of fees that were being charged to the Wells Fargo Funds that were disproportionate to the services rendered and were not the product of arm's-length bargaining.

43. The fees charged to a mutual fund and its investors should be the equivalent of fees that would have been negotiated within the bounds of arm's-length bargaining. Directors are responsible for negotiating the fees charged to the fund on behalf of the investors who,

1   individually, are unable to negotiate such fees. At the same time, investment advisers and their

2   affiliates have a fiduciary duty with respect to the fees that are charged to investors, in that

3   such fees must be reasonably related to the services provided.

4         44.    Congress has underscored directors' duties by adopting Section 15(c) of the

5   Investment Company Act, requiring directors to be adequately informed of the terms of any

6   investment advisory contracts, and giving them the authority to demand documents and other

7   information from investment advisers in order to make informed and independent decisions

8   when evaluating such contracts. *See* 15 U.S.C. § 80a-15(c). However, as alleged below, the

9   Directors were beholden to the Investment Adviser Defendant, failed to adequately inform

10   themselves and disregarded red flags showing that the advisory and distribution fees were

11   excessive. Furthermore, the Directors failed to hold the Investment Adviser Defendant

12   accountable for revenue sharing agreements entered into by them with various brokerage firms,

13   or for other Shelf Space payments for which the Investment Adviser Defendant and the

14   Distributor Defendants charged the Funds, and therefore their investors, fees and commissions.

15   **Additional Scienter Allegations**

16         45.    As alleged herein, the, Investment Adviser, Distributor and Registrant

17   Defendants acted with scienter in that they knew that the public statements issued or

18   disseminated in the name of Wells Fargo were materially false and misleading, knew that such

19   statements would be issued or disseminated to the investing public, and knowingly and

20   substantially participated or acquiesced in the issuance or dissemination of such statements as

21   primary violations of the federal securities laws. As set forth elsewhere herein in detail, the

22   Investment Adviser, Distributor and Registrant Defendants, by virtue of their knowledge of the

23   true facts regarding the kickback scheme, culpably participated in the fraudulent scheme

24   alleged herein. Defendants were highly motivated to allow and facilitate the wrongful conduct

25   alleged herein and participated in and/or had actual knowledge of the fraudulent conduct

26   alleged herein.

27

28

**Plaintiffs And Other Members Of The Class Have Suffered Damages As A Result Of Defendants' Illegal And Improper Actions**

46.     As a result of Defendants' conduct alleged above, Plaintiffs and the other members of the Class have suffered damages. The damages suffered by Plaintiffs and the other members of the Class were a foreseeable consequence of Defendants' omissions and conduct, particularly in light of the fact that the net returns on the Wells Fargo Funds were diminished as a result of the improper kickbacks paid to broker/dealers from the funds. Plaintiffs and other members of the Class would not have purchased the Wells Fargo Funds, and paid the related commissions and fees associated with them, had they known of the illegal and improper practices as alleged above. By investing in the Wells Fargo Funds, Plaintiffs and the other members of the Class received a return on their investment that was substantially less than the return they would have received had they invested the same dollars in a comparable fund. Alternatively, investors could have invested fewer dollars in a non-Wells Fargo Fund to obtain a rate of return equal to or greater than that obtained at a higher price from the comparable Wells Fargo Fund.

47.     Additionally, Plaintiffs and the other members of the Class were deceived into buying shares of the Wells Fargo Funds at an artificially inflated value. Plaintiffs and the other members of the Class accepted, as an integral aspect of purchasing shares of the Wells Fargo Funds, that they would be required to pay fees and expenses against their ownership interests in the Wells Fargo Funds, with the understanding that those charges were legitimate outlays for services that would benefit the mutual fund and contribute positively to its value. In truth, a significant portion of those expenses was not being used to provide the services promised, but rather to increase the sales of the funds to other investors and thus the profits of Wells Fargo. As a result, the values of the Wells Fargo Funds were less than they appeared to be to members of the Class. Plaintiffs and the other members of the Class have also suffered damages through commissions paid by Plaintiffs and the other members of the Class for their purchase of shares of the Wells Fargo Funds. Had Plaintiffs and the other members of the Class known about the practices alleged above, Plaintiffs and the other members of the Class would not have paid

1    such commissions.  The damages sustained by Plaintiffs and the other members of the Class, as

2    a result of the commissions they paid for shares of the Wells Fargo Funds, were a foreseeable

3    consequence of Defendants' failure to disclose.

4         48.     Additionally, as a result of the dissemination of the materially false and

5    misleading information and failure to disclose material facts, as set forth above, the market

6    prices of the Wells Fargo Funds were distorted during the Class Period such that they did not

7    reflect the risks and costs of the continuing course of conduct alleged herein.  In ignorance of

8    the fact that market prices of the shares were distorted, and relying directly or indirectly on the

9    false and misleading statements made by Defendants, or upon the integrity of the market in

10   which the securities trade, and/or on the absence of material adverse information that was

11   known to or recklessly disregarded by Defendants but not disclosed in public statements by

12   Defendants during the Class Period, Plaintiffs and the other members of the Class acquired the

13   shares or interest in the Wells Fargo Funds during the Class Period at distorted prices and were

14   damaged thereby.

15                        **CLASS ACTION ALLEGATIONS**

16        49.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

17   Procedure 23(a) and (b)(3) on behalf of a class of all persons or entities who purchased shares

18   or like interests in any of the Wells Fargo Funds except for the Wells Fargo Diversified Equity

19   Fund, Montgomery Emerging Markets Fund and Small Cap Growth Fund between November

20   4, 2000 and April 11, 2006, inclusive and who were damaged thereby.  Excluded from the

21   class are Defendants, members of their immediate families and their legal representatives,

22   heirs, successors, or assigns and any entity in which Defendants have or had a controlling

23   interest (the "Class").

24        50.     The members of the Class and the Subclass are so numerous that joinder of all

25   members is impracticable.  While the exact number of the members of the Class and the

26   Subclass is unknown to Plaintiffs at this time and can only be ascertained through appropriate

27   discovery, Plaintiffs believe that there are thousands of members.  Record owners and other

28   members of the Class and the Subclass may be identified from records maintained by the Wells

1  Fargo and may be notified of the pendency of this action by mail, using a form of notice

2  similar to that customarily used in securities class actions. Plaintiffs' claims are typical of the

3  claims of the members of the Class as all members of the Class are similarly affected by

4  Defendants' wrongful conduct in violation of federal securities laws that is complained of

5  herein. Plaintiffs are adequate representatives of the members of the Class in that they are

6  informed about the general nature of the claims asserted herein, have hired and will supervise

7  competent counsel, and will remain informed about the prosecution of this suit.

8      51.     Common questions of law and fact exist as to all members of the Class, which

9  predominate over any questions solely affecting individual members of the Class. Among the

10  questions of law and fact common to the Class are:

11          a.      Whether the federal securities laws were violated by Defendants' acts as

12  alleged herein; and

13          b.      To what extent the members of the Class have sustained damages and the

14  proper measure of such damages.

15      52.     A class action is superior to all other available methods for the fair and efficient

16  adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

17  the damages suffered by individual members of the Class may be relatively small, the expense

18  and burden of individual litigation make it virtually impossible for members of the Class to

19  individually redress the wrongs done to them. There will be no difficulty in the management

20  of this action as a class action.

21

22                                  **COUNT I**

23

**ON BEHALF OF THE CLASS AGAINST THE REGISTRANT DEFENDANT**
24  **AND THE DISTRIBUTOR DEFENDANTS FOR VIOLATION OF SECTION 12(A)(2)**
**OF THE SECURITIES ACT**
25

26      53.     Plaintiffs repeat and reallege each and every allegation contained above as if

27  fully set forth herein, except that, for purposes of this claim, Plaintiffs expressly exclude and

28

1  disclaim any allegation that could be construed as alleging fraud or intentional or reckless
2  misconduct.

3      54.    This claim is brought pursuant to Section 12(a)(2) of the Securities Act, 15
4  U.S.C. § 77l(a)(2), on behalf of the Class against the Registrant Defendant and the Distributor
5  Defendants..

6      55.    The Registrant Defendant and each of the Distributor Defendants, were the
7  sellers, or the successors in interest to the sellers, within the meaning of the Securities Act, for
8  one or more of the respective Wells Fargo Fund shares sold to members of the Class because
9  they either: (a) transferred title to members of the Class of the Wells Fargo Funds;
10  (b) transferred title to shares of the Wells Fargo Funds to the Wells Fargo Funds Distributors
11  that in turn sold shares of the Wells Fargo Funds as agents for the Wells Fargo Funds; and/or
12  (c) solicited the purchase of shares of the Wells Fargo Funds by members of the Class.

13      56.    The Registrant Defendant and each of the Distributor Defendants issued, caused
14  to be issued and participated in the issuance of its respective misleading Prospectuses that
15  omitted material facts and is statutorily liable under Section 12.

16      57.    Prior to purchasing shares of the Wells Fargo Funds, members of the Class were
17  provided with a Wells Fargo Fund Prospectus. Members of the Class purchased shares of the
18  Wells Fargo Funds traceable to a misleading Prospectus and were damaged thereby.

19      58.    As set forth herein, when they became effective, the Prospectuses were
20  materially false and misleading as they omitted the following material facts:

21          a.    that the Wells Fargo Funds had a quid pro quo financial arrangement with
22  brokers whereby the brokers received payments from the Wells Fargo Funds in exchange for
23  pushing the Wells Fargo Funds on their clients;

24          b.    that the Wells Fargo Funds' investment advisers authorized the payment
25  for these financial arrangements from Wells Fargo investors assets which were hidden as
26  advisory and distribution fees, even though no services were rendered by the Investment Adviser
27  Defendant;

28

c.      that the Wells Fargo Funds Rule 12b-1 plans were not in compliance with Rule 12b-1, and that payments made pursuant to the plans were in violation of Section 12 of the Investment Company Act because, among other reasons, the plans were not properly evaluated by the Wells Fargo Funds' Directors and there was not a reasonable likelihood that the plans would benefit the company and its shareholders;

d.      that by paying brokers to steer their clients to the Wells Fargo Funds, the Investment Adviser Defendant was knowingly aiding and abetting a breach of fiduciary duties, and profiting from the brokers' improper conduct;

e.      that any economies of scale achieved by marketing the Wells Fargo Funds to new investors were not passed on to the Wells Fargo Funds investors; on the contrary, as the Wells Fargo Funds grew, fees charged to the Wells Fargo Funds investors continued to increase; and

f.      that the Directors failed to monitor and supervise the Investment Adviser Defendant and that, as a consequence, the Investment Adviser Defendant was able to systematically skim millions of dollars from the Wells Fargo Funds and their investors.

59.      Members of the Class have sustained damages due to these violations.

60.      At the time they purchased the Wells Fargo Funds shares traceable to the defective Prospectuses, members of the Class were without knowledge of the facts concerning the material omissions alleged herein and could not reasonably have possessed such knowledge. This claim was brought within the applicable statute of limitations.

## COUNT II

## ON BEHALF OF THE CLASS AGAINST THE CONTROL PERSON DEFENDANT FOR VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT

61.      Plaintiffs repeat and re-allege each and every allegation contained above, except that for purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

62. This claim is brought pursuant to Section 15 of the Securities Act against the Control Person Defendant as control persons of the Registrant Defendant, and Defendant Wells Fargo Funds Distributor, LLC. It is appropriate to treat these defendants as a group for pleading purposes and to presume that the misleading information complained about herein is the collective action of the Control Person Defendant.

63. Defendant Wells Fargo Funds Distributor, LLC and the Registrant Defendant are liable under Section 12(a)(2) of the Securities Act as set forth herein.

64. The Control Person Defendant was a "control person" of Defendant Wells Fargo Funds Distributor, LLC and the Registrant Defendant within the meaning of Section 15 of the Securities Act, by virtue of its position of operational control and/or ownership. At the time that members of the Class purchased shares of one or more of the Wells Fargo Funds, by virtue of its position of control and authority over Defendant Wells Fargo Funds Distributor, LLC and the Registrant Defendant, the Control Person Defendant directly and indirectly, had the power and authority, and exercised the same, to cause Defendant Wells Fargo Funds Distributor, LLC and the Registrant Defendant to engage in the wrongful conduct complained of herein.

65. Pursuant to Section 15 of the Securities Act, by reason of the foregoing, the Control Person Defendant is liable to members of the Class to the same extent as Defendant Wells Fargo Funds Distributor, LLC and the Registrant Defendant are for their primary violations of Section 12(a)(2) of the Securities Act.

66. By virtue of the foregoing, members of the Class are entitled to damages against the Control Person Defendant.

1

## COUNT III

2

3

**ON BEHALF OF THE CLASS AGAINST THE INVESTMENT ADVISER DEFENDANT AND THE REGISTRANT DEFENDANT FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER**

4

5

67.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein except for claims brought pursuant to the Securities Act.

6

7

8

9

10

11

12

68.     During the Class Period, the Investment Adviser Defendant and the Registrant Defendant carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did deceive the investing public, including Plaintiffs and other Class members, as alleged herein and caused Plaintiffs and other members of the Class to purchase Wells Fargo Funds at distorted prices and to otherwise suffer damages.  In furtherance of this unlawful scheme, plan and course of conduct, the Investment Adviser Defendant and the Registrant Defendant took the actions set forth herein.

13

14

15

16

17

18

19

20

21

69.     The Investment Adviser Defendant and the Registrant Defendant each (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct which operated as a fraud and deceit upon the purchasers of the Wells Fargo Funds, including Plaintiffs and other members of the Class, in an effort to enrich themselves through undisclosed manipulative tactics by which they wrongfully distorted the pricing of their securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued as primary participants in the wrongful and illegal conduct and scheme charged herein.

22

23

24

25

26

27

70.     The Investment Adviser Defendant and the Registrant Defendant, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Wells Fargo Funds' operations, as specified herein.

28

71.     The Investment Adviser Defendant and the Registrant Defendant each employed devices and artifices to defraud and engaged in a course of conduct and scheme as alleged herein to unlawfully manipulate and profit from excessive fees and/or commissions paid to them as a result of its undisclosed kickback arrangement described above and thereby engaged in transactions, practices and a course of conduct which operated as a fraud and deceit upon Plaintiffs and members of the Class.

72.     The Investment Adviser Defendant and the Registrant Defendant had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  The Investment Adviser Defendant and the Registrant Defendant's material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the truth.

73.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market prices of the Wells Fargo Funds were distorted during the Class Period such that they did not reflect the risks and costs of the continuing course of conduct alleged herein.  In ignorance of the fact that market prices of the shares were distorted, and relying directly or indirectly on the false and misleading statements made by the Investment Adviser Defendant and the Registrant Defendant, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by the Investment Adviser Defendant and the Registrant Defendant during the Class Period, Plaintiffs and the other members of the Class acquired the shares or interest in the Wells Fargo Funds during the Class Period at distorted prices and were damaged thereby.

74.     At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiffs and other members of the Class known the truth concerning the Wells Fargo Funds' operations, which Defendants did not disclose, Plaintiffs and other members of the Class would

not have purchased or otherwise acquired their shares, or, if they had acquired such shares during the Class Period, they would not have done so at the distorted prices which they paid; would not have paid the commissions or fees paid as a result of their acquisition of the Wells Fargo Funds; and would not have paid the fees and costs associated with ownership of the Wells Fargo Funds.

75. By virtue of the foregoing, the Investment Adviser Defendant and the Registrant Defendant have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76. As a direct and proximate result of the wrongful conduct by the Investment Adviser Defendant and the Registrant Defendant, Plaintiffs and other members of the Class suffered damages in connection with their purchases and acquisitions of Wells Fargo Funds during the Class Period.

## COUNT IV
### ON BEHALF OF THE CLASS AGAINST THE CONTROL PERSON DEFENDANT FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT

77. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein except for claims brought pursuant to the Securities Act.

78. This claim is brought pursuant to Section 20(a) of the Exchange Act against the Control Person Defendant.

79. The Control Person Defendant acted as a controlling person of the Investment Adviser and Registrant Defendants within the meaning of Section 20(a) of the Exchange Act for the reasons alleged herein. By virtue of its operational and management control of the Investment Adviser and Registrant Defendants' respective businesses and systematic involvement in the fraudulent scheme alleged herein, the Control Person Defendant had the power to influence and control and did influence and control, directly or indirectly, the decision-making and actions of the Investment Adviser Defendant and the Registrant Defendant, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. The Control Person Defendant had the ability to prevent the

issuance of the statements alleged to be false and misleading or could have caused such statements to be corrected.

80. In particular, the Control Person Defendant had direct and supervisory involvement in the operations of the Investment Adviser Defendant and the Registrant Defendant and, therefore, is presumed to have had the power to control or influence the particular transaction giving rise to the securities violations as alleged herein, and to have exercised same.

81. As set forth above, the Investment Adviser Defendant and the Registrant Defendant each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of its positions as a controlling person, the Control Person Defendant is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Investment Adviser Defendant and Registrant Defendant's wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of Wells Fargo Funds securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

(a) Determining that this action is a proper class action and certifying the Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiffs and the Class members against Defendants, jointly and severally, for all damages sustained as a result of Defendants' violations of the federal securities laws set forth above, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

DATED:    April 2, 2008

**REESE RICHMAN LLP**

By: _____
Michael R. Reese
230 Park Avenue, 10ᵗʰ Floor
New York, New York  10169
Telephone:(212) 579-4625
Facsimile: (212) 253-4272

- and -

**WHATLEY DRAKE & KALLAS, LLC**
Deborah Clark Weintraub
Elizabeth Rosenberg
1540 Broadway, 37th Floor
New York, New York 10036
Telephone:  (212) 447-7070
Facsimile:  (212) 447-7077

*Counsel for Plaintiffs*

I, Arnold Kreek ("Plaintiff") hereby declare under penalty of perjury that:

1.  Plaintiff purchased and sold the following Wells Fargo Mutual Fund(s) during the period November 4, 2000 to April 11, 2006 as set forth below:

**Purchases (All are Wells Fargo Funds)**

| Name of Fund | Date of Purchase | Shares Purchased | Price per Share |
|---|---|---|---|
| Wealthbuilder Growth Balanced Fund (WBGBX) | 10/22/2004 | 30,445 | $11.24 |
| Money Market-A Fund (STGXX) | 9/1/2005 | 2,000 | $1.00 |
| | 9/30/2005 | 4,000 | $1.00 |
| | 2/03/2006 | 1,000 | $1.00 |
| | 3/16/2006 | 2,000 | $1.00 |
| | 4/06/2006 | 1,000 | $1.00 |

**Sales**

| Name of Fund | Date of Sale | Shares Sold | Price per Share |
|---|---|---|---|
| Money Market-A Fund (STGXX) | 12/6/2005 | 992.51 | $1.00 |
| | 1/5/2006 | 5,000 | $1.00 |
| | 3/15/2006 | 1,000 | $1.00 |

2.  Plaintiff made no purchase or sales (other than automatic re-investments) of any Wells Fargo mutual funds during the time period stated above except for those purchases and sales forth above.

3.  Plaintiff did not purchase the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this action.

4.  Plaintiff has reviewed the complaint and authorized its filing.

4.  During the three year period prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class action under the federal securities.

5.  Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

6.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court. Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as representative party.

7.  I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of January, 2008.

Arnold Kreek

Exhibit A