GILBERT R. SEROTA (No. 75305)
Email: gserota@howardrice.com
JASON M. SKAGGS (No. 202190)
Email: jskaggs@howardrice.com
JEREMY T. KAMRAS (No. 237377)
Email: jkamras@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone:    415/434-1600
Facsimile:    415/217-5910

THOMAS O. JACOB (No. 125665)
Email: tojacob@wellsfargo.com
WELLS FARGO LAW DEPARTMENT
MAC A0194-266
45 Fremont Street, 26th Floor
San Francisco, CA 94105
Telephone:    415/396-4425
Facsimile:    415/975-7864

Attorneys for Defendants
WELLS FARGO & COMPANY, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS FARGO FUNDS TRUST, WELLS FARGO FUNDS DISTRIBUTOR, LLC, STEPHENS, INC., and WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARNOLD KREEK, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS FARGO FUNDS TRUST, WELLS FARGO DISTRIBUTORS, STEPHENS, INC., WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. CV-08-1830 WHA<br><br>Action Filed: April 4, 2008<br><br>**DEFENDANTS' SUBMISSION RE EDWARD LEE'S MOTION TO BE APPOINTED LEAD PLAINTIFF** |

In its Order dated June 30, 2008, the Court directed "defense counsel to attend the hearing on lead plaintiff selection" and to "be prepared to address the accuracy of the methodology used by candidates to assess their damages claims." Dkt. 28 at 1:28-2:2. At yesterday's hearing on Edward Lee's motion to be appointed lead plaintiff, defense counsel therefore identified for the Court an apparent discrepancy between the near *doubling* in value of the share price of the Wells Fargo Advantage Specialized Tech Fund Class A (WFSTX) during the period when Mr. Lee held shares in that fund, and what Mr. Lee characterized in his response to the Court-ordered questionnaire as a *loss* on the sale of those same shares of $1,185.41. Dkt. 31 at 4:22-26. The Court directed defense counsel to file a submission on this point. Dkt. 35.

**Background**: In his response to the Court-ordered questionnaire, Mr. Lee represented that he purchased 1,065.897 shares of the Specialized Tech Fund on June 6, 2003 at a share price of $3.40 for a total cost of $3,624.05. Dkt. 31 at 4:22. Mr. Lee also represented that he sold 1,065.897 shares—that is, all of his shares—in the Specialized Tech Fund on July 6, 2007, and that the "proceeds from [the] sale" totaled $7,066.90. *Id.* at 4:25. Although Mr. Lee does not in his response set forth the share price at which he sold his position in the Specialized Tech Fund, according to Yahoo! Finance it was $6.63. Declaration Of Jeremy Kamras In Support Of Defendants' Submission Re Edward Lee's Motion To Be Appointed Lead Plaintiff ("Kamras Decl.") Ex. A at 1.[1] Multiplied by the number of shares Mr. Lee sold, this does in fact equal $7,066.90. Therefore, Mr. Lee purchased his shares for $3,624.05, and sold them for $7,066.90, thereby profiting $3,442.85—a **95 percent return** on his investment (about 23% per year). Inexplicably, however, Mr. Lee claims a *loss* of $1,185.41 on this transaction. Dkt. 31 at 4:26.

**Inadequate Explanation**: In communications between counsel before the hearing, Mr. Reese sought to explain the discrepancy as a result of an "average cost basis" in the amount of $8,252.31 caused by *reinvestment of dividends*. Kamras Decl. Ex. B ("The average cost basis of a mutual fund

---

[1] Defendants request that, pursuant to Federal Rule of Evidence 201, the Court take judicial notice of the Yahoo! Finance quotes for the share price of the Specialized Tech Fund Class A. *See Siemers v. Wells Fargo & Co.*, No. 05-04158, 2007 WL 1456047, at *2 (N.D. Cal. May 17, 2007) (Alsup, J.) (taking judicial notice of Yahoo! Finance quotes for other Wells Fargo mutual funds).

DEFENDANTS' SUBMISSION RE LEAD PLAINTIFF MOTION                                     CV-08-1830 WHA
-1-

1  is often more than the purchase price because it includes capital gain distributions," which "are often
2  reinvested, thereby changing the average cost basis"). That could not be the case. A reinvestment
3  of dividends would result in the purchase of additional shares in the fund. But according to
4  Mr. Lee's written submission to the Court, he purchased 1,065.897 shares of the Specialized Tech
5  Fund and then later sold *precisely the same amount*, which Mr. Lee himself characterized as "all
6  shares." Dkt. 31 at 4:22-24. He therefore did not reinvest or otherwise acquire additional shares at a
7  cost (or basis) different from that at which he purchased the original (and only) 1,065.897 shares.

Following the hearing, Mr. Reese showed defense counsel a document that he represented to have been produced by Charles Schwab, the broker through which Mr. Lee is said to have acquired his shares in the Specialized Tech Fund. The document lists a figure of approximately $8,200, but it was unclear where this number came from or how it related to the single purchase and single sale of the fund in question. Neither Mr. Lee nor Mr. Reese were able to adequately explain the derivation of this figure. Mr. Lee claimed that the figure was generated for tax purposes, but could not otherwise explain its origin. Mr. Reese asserted that the figure is the average cost basis. But the use of an "average cost basis" typically requires the purchase of shares at different times and different prices. According to the Internal Revenue Service, "[i]n order to figure your gain or loss using an average basis, **you must have acquired the shares at various times and prices** and have left them on deposit in an account handled by a custodian or agent who maintains an account for the acquisition or redemption of these shares." *Frequently Asked Tax Questions and Answers: How do I calculate the average basis for the sale of mutual fund shares?* (emphasis added), *available at* http://www.irs.gov/faqs/faq-kw123.html. Here, there were no additional shares purchased.

Earlier today, Mr. Reese sent a letter to defense counsel in which he again sought to explain the derivation of the average cost basis figure listed in the Schwab document. Kamras Decl. Ex. C. Unlike his earlier email, however, Mr. Reese no longer claimed that the increased cost basis resulted from the reinvestment of dividends. Rather, he asserted (without citation to any authority) that "[c]alculating the Average Cost Basis . . . involves a myriad of inputs, including, but not limited to, sales charges and redemption fees paid by the investor," and "it does not necessarily change the number of shares purchased or sold . . ." *Id.* at 1-2. A hypothetical followed purporting to

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

DEFENDANTS' SUBMISSION RE LEAD PLAINTIFF MOTION      CV-08-1830 WHA
-2-

demonstrate that these kind of fees could increase the cost basis. *Id.* at 2.

But, even if theoretically correct, Mr. Reese's new explanation goes no further than to *hypothesize* how Mr. Lee's average cost basis *might* have been calculated—he does not say how Mr. Lee's average cost basis in fact was calculated. More importantly, the hypothetical by which Mr. Reese seeks to demonstrate how sales charges and redemption fees can impact a mutual fund's cost basis reflects an increase in cost basis of *only 7.1 percent* (from $100.00 to $107.10). Here, however, Mr. Lee has represented to the Court a "cost basis" that is said *to have increased by 127.7 percent* (from $3,624.05 to $8,252.31) from the actual purchase price. It is absolutely inconceivable that sales charges and redemption fees could *more than double* the cost of a mutual fund. Not surprisingly, neither Mr. Reese nor Mr. Lee have supplied actual data to support this absurd contention.

**Significance:** The significance of the discrepancy bears on Mr. Lee's adequacy to serve as Lead Plaintiff not only because diligence and credibility are important, but also because two of the claims in the current version of the *Kreek* complaint are based on Section 12(a)(2) of the Securities Act. *See* Dkt. 1 at 20:22-23:22. As the Court held in the related *Siemers* Action, "[t]his order finds that pursuant to [*In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201 (9th Cir. 2002)], where, as here, the undisputed facts show that plaintiff has profited from the transactions at issue, such allegations cannot constitute a Section 12(a)(2) claim for damages. . . . The same is true for securities currently held that could be sold at their present value for a profit." *Siemers*, 2007 WL 1456047, at *4. Whether Mr. Lee lost money, or as the case in fact appears to be, greatly profited, from the sale of his shares in the Specialized Tech Fund is therefore significant.

**Conclusion:** It's as simple as this: If you buy 1,065.897 shares in a fund for $3,624.05 and you then sell 1,065.897 shares in the same fund for $7,066.90, you have made a profit—a big profit.

Characterizing the transaction as a loss is problematical and deserves a cogent and credible explanation, which we have not seen. Instead, we have seen non-credible, nonsensical attempts to explain the representations by Mr. Lee without any actual data.

DATED: August 8, 2008

Respectfully,

GILBERT R. SEROTA
JASON M. SKAGGS
JEREMY T. KAMRAS
HOWARD RICE NEMEROVSKI CANADY
   FALK & RABKIN
A Professional Corporation

THOMAS O. JACOB
WELLS FARGO LAW DEPARTMENT

By: _____/s/_____
       GILBERT R. SEROTA

Attorneys for Defendants WELLS FARGO & COMPANY, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS FARGO FUNDS TRUST, WELLS FARGO FUNDS DISTRIBUTOR, LLC, STEPHENS, INC. and WELLS FARGO BANK, N.A.