**REESE RICHMAN LLP**
Michael R. Reese (Cal. State Bar. No. 206773)
230 Park Avenue, 10th Floor
New York, New York 10169
Telephone: (212) 579-4625
Facsimile: (212) 253-4272
michael@reeserichman.com

- and -

**WHATLEY DRAKE & KALLAS, LLC**
Deborah Clark-Weintraub
Elizabeth Rosenberg
1540 Broadway, 37th Floor
New York, New York 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077
dweintraub@wdklaw.com
erosenberg@wdklaw.com

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARNOLD KREEK, Individually And On Behalf Of All Others Similarly Situated,<br><br>                      Plaintiffs,<br><br>vs.<br><br>WELLS FARGO & COMPANY, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS FARGO FUNDS TRUST, WELLS FARGO DISTRIBUTORS, STEPHENS, INC., WELLS FARGO BANK, N.A.,<br><br>                      Defendants. | Case No. CV 08-1830 WHA<br><br>**PLAINTIFF EDWARD LEE'S RESPONSE TO DEFENDANTS' SUBMISSION RE EDWARD LEE'S MOTION TO BE APPOINTED LEAD PLAINTIFF** |

Plaintiff Edward Lee respectfully submits the following in response to defendants Wells Fargo & Company, Wells Fargo Funds Management, LLC, Wells Fargo Funds Trust, Wells Fargo Distributors, Stephens, Inc., and Wells Fargo Bank, N.A. (collectively "Wells Fargo" or "Defendants") Submission Re Edward Lee's Motion to Be Appointed Lead Plaintiff (Dkt. 36).

### PLAINTIFF'S RESPONSE

Defendants, in a desperate attempt to avoid liability for their misconduct at issue here, make a baseless personal attack on the proposed lead plaintiff Mr. Edward Lee. Defendants' submission, however, is without merit, and is based on nothing more than their own unfounded speculation.

Specifically, Defendants raise issue regarding Mr. Lee's questionnaire response that provided information regarding the post-Class Period sale of one of Mr. Lee's Wells Fargo Mutual Funds. In addition to providing information regarding the number of shares and sale price, as requested by the Court, Mr. Lee also provided information supplied to him by his broker, Charles Schwab, regarding any capital gain or loss on his investment using an average cost basis calculation.

As repeatedly explained to defense counsel, an average cost basis calculation is a methodology approved of by the Internal Revenue Service to determine capital loss or gain for tax purposes. It is not the methodology used to determine damages in the above-captioned action; rather that calculation is based upon the hundreds of millions of dollars of fees paid by investors that were used by Wells Fargo for undisclosed, improper purposes – *i.e.* the payment of kickbacks to selling agents of the Wells Fargo funds. Nor is the average cost basis calculation intended as a substitute for damages under the Securities Act of 1933 ("'33 Act"). That measurement is pursuant to statute.[1] In other words, the average cost basis calculation is completely irrelevant to any measure of damages to be made in this case.

---

[1] Defendants' argument that the failure of the Plaintiff to have damages pursuant to the '33 Act makes him inadequate to serve as lead plaintiff in an action alleging violations of both the '33 Act and the Securities Exchange Act of 1934 ("'34 Act") is without merit. In the related case of *Siemers v. Wells Fargo & Co. et al.*, Case no. 05-4518-WHA (N.D. Cal.), the lead plaintiff, Ronald Siemers, did have damages under the '34 Act, but did not have damages under the '33 Act. This did not prevent this Court from ruling that Mr. Siemers was adequate to represent the class that this Court ultimately certified both on a contested class certification motion and for settlement purposes.

Despite the irrelevancy of the average cost basis calculation, Defendants attempt to use it to attack Mr. Lee's credibility, and possibly preclude him from serving as lead plaintiff. An examination of Defendants' submission, however, shows that it is based upon unfounded speculation and is without merit.

There is no question that Mr. Lee relied upon the Charles Schwab calculation in good faith. Indeed, counsel for Defendants were shown the document Mr. Lee received from his broker and relied upon in completing the questionnaire. Nor is there any proof that the Charles Schwab calculation is inaccurate. Instead, based purely on speculation, Defendants argue that the Charles Schwab calculation must be inaccurate, and that Mr. Lee, despite good faith reliance on his broker's calculation, is somehow unfit to serve as the lead plaintiff in this action because he provided an allegedly inaccurate average cost basis calculation that the Court never asked for in its questionnaire. Such speculation piled on speculation, however, is meaningless and provides no basis for this Court to exclude Mr. Lee from serving as the lead plaintiff in this case.

In fact, the average cost basis calculation provided by Mr. Lee is not a mathematical impossibility or as simple as Defendants suggest. One of many factors that can impact an average cost basis calculation is whether the investor acquired his or her shares by way of a merger of funds. As stated on the website of Fidelity Investments (a leading brokerage and source of mutual funds):

> **Merged funds**
>
> If you own a fund that is merged into another fund, your holding period and total cost basis normally are not affected. However, since the number of shares you have after a merger may be different than the number before the merger, the average cost basis per share changes. If this is the case, when calculating gains and losses you must determine the number of shares acquired in each transaction based on the number of shares received in the merger.

*See* Fidelity.com – Cost Basis – Cost Basis Basics – Merged Funds, http://personal.fidelity.com/webxpress/help/topics/learn_account_cost_basis.shtml (last visited Aug. 15, 2008).

Mr. Lee acquired his share of the Wells Fargo Specialized Technology Fund when the Montgomery Global Tech, Telecom and Media Fund that he owned merged with the Wells Fargo Specialized Technology Fund. As a result of this merger, the 430.7350 shares of the Montgomery Global Tech, Telecom and Media Fund owned by Mr. Lee became 1065.8970 shares of the Wells Fargo Specialized Technology Fund.[2]

Defendants' submission with respect to the average cost basis calculation provided in response to the Court's questionnaire is not the only baseless attack on Mr. Lee's credibility Defendants have launched. At the lead plaintiff hearing, counsel for Defendants implied in open court that Mr. Lee had committed perjury by failing to list on his PSLRA certification a post-Class Period transaction that Mr. Lee had included in his response to this Court's questionnaire. Counsel was forced to retract this accusation when it was pointed out that the Private Securities Litigation Reform Act of 1995 ("PSLRA") governs what is to be included in the certification, and specifically limits the transactions to be listed to those that occurred during the Class Period. This Court's questionnaire, on the other hand, specifically requested that post-Class Period transactions be provided, which explained the discrepancy. In other words, this "perjury" argument was completely without merit and should never have been made. It showed, at best, sloppiness concerning the law and the facts, and, at worst, a premeditated attempt to smear and intimidate Mr. Lee with a baseless accusation of perjury.

Defendants' argument regarding the average cost basis calculation made here is no different than the "perjury" argument made at the lead plaintiff hearing. It is completely unsubstantiated and

---

[2] Under Supreme Court authority, acquisition of a security through a merger constitutes a purchase under the federal securities laws. *See, e.g., SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 467 (1969) "([W]e conclude that Producers' shareholders 'purchased' shares in the new company by exchanging them for their old stock."). In other words, Mr. Lee's acquisition of the Wells Fargo Specialized Technology Fund as a result of a merger of funds constitutes a purchase under the federal securities laws. Additionally, the documentation shown to defense counsel at the hearing reflected this stock merger, so they have no justification for their failure to take this into account before making their unfounded attack. Furthermore, as noted above, the damages suffered by Mr. Lee are measured by the fees he paid as a result of the merger that were used for undisclosed kickbacks – this calculation of damages does not change in any way if Mr. Lee purchased his Wells Fargo mutual funds through payment of cash or through a merger.

represents nothing more than Defendants' attempt to smear and intimidate the Plaintiff. It should be seen for what it is – an attempt to avoid liability – and be rejected.

                                        Respectfully Submitted,

DATED:   August 15, 2008

                         **REESE RICHMAN LLP**
                       By:  ___/s/ Michael R. Reese_____
                         Michael R. Reese
                         230 Park Avenue, 10th Floor
                         New York, New York  10169
                         Telephone:(212) 579-4625
                         Facsimile: (212) 253-4272

                                - and -

                       **WHATLEY DRAKE & KALLAS, LLC**
                       Deborah Clark-Weintraub
                       Elizabeth Rosenberg
                       1540 Broadway, 37th Floor
                       New York, New York 10036
                       Telephone:  (212) 447-7070
                       Facsimile:  (212) 447-7077

                       *Counsel for Plaintiff*