1  GILBERT R. SEROTA (No. 75305)
   Email: gserota@howardrice.com
2  JASON M. SKAGGS (No. 202190)
   Email: jskaggs@howardrice.com
3  JEREMY T. KAMRAS (No. 237377)
   Email: jkamras@howardrice.com
4  HOWARD RICE NEMEROVSKI CANADY
        FALK & RABKIN
5  A Professional Corporation
   Three Embarcadero Center, 7th Floor
6  San Francisco, California 94111-4024
   Telephone:   415/434-1600
7  Facsimile:   415/217-5910

8  THOMAS O. JACOB (No. 125665)
   Email: tojacob@wellsfargo.com
9  WELLS FARGO LAW DEPARTMENT
   MAC A0194-266
10 45 Fremont Street, 26th Floor
   San Francisco, CA 94105
11 Telephone:   415/396-4425
   Facsimile:   415/975-7864

12 Attorneys for Defendants
13 WELLS FARGO & COMPANY, WELLS FARGO
   FUNDS MANAGEMENT, LLC, WELLS FARGO
14 FUNDS TRUST, WELLS FARGO FUNDS
   DISTRIBUTOR, LLC, STEPHENS, INC., and
15 WELLS FARGO BANK, N.A.

16                UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18                    SAN FRANCISCO DIVISION

20  ARNOLD KREEK, Individually And On Behalf        No. CV-08-1830 WHA
    Of All Others Similarly Situated,
21                                                  Action Filed: April 4, 2008
                   Plaintiffs,
22                                                  **DEFENDANTS' REPLY SUBMISSION
         v.                                         RE EDWARD LEE'S MOTION TO BE
23                                                  APPOINTED LEAD PLAINTIFF**
    WELLS FARGO & COMPANY, WELLS
24  FARGO FUNDS MANAGEMENT, LLC,
    WELLS FARGO FUNDS TRUST, WELLS
25  FARGO DISTRIBUTORS, STEPHENS, INC.,
    WELLS FARGO BANK, N.A.,
26
                   Defendants.

**Introduction.** Departing from earlier representations to the Court, Edward Lee's response to Defendants' submission now introduces a ***third*** and fundamentally ***different*** explanation for his alleged "loss" from the sale of his position in the Wells Fargo Advantage Specialized Tech Fund Class A (WFSTX)—an explanation that places his ability to represent a class of purchasers of Wells Fargo funds in great doubt.

Contrary to what he seemed to represent to the Court in item 5 of his Court Questionnaire, Mr. Lee now concedes that he *never bought shares in this Wells Fargo fund*. Instead, he now asserts—with no backup documentation—that he acquired the shares in June 2003 when non-Wells Fargo funds in which he owned shares were merged into Wells Fargo funds. *See* Dkt. 38 at 3:1-5.

This admission casts doubt on whether he actually purchased the two other Wells Fargo funds listed in the questionnaire (Large Company Growth and Mid Cap Growth) because Mr. Lee's entries on the Questionnaire for each of those funds shows a purchase date of June 6, 2003 and each of those funds were part of a June 2003 merger of Wells and Montgomery funds. It is therefore reasonable to infer that the other two Wells Fargo funds were not acquired by purchase, but by merger. As we discuss below, this not only raises questions of diligence and honesty about Mr. Lee's disclosures to the Court, it raises legal questions as to whether he could ever show critical elements of a 10b-5 or Section 12(2) claim against Wells Fargo.

**Lack of Credibility and Diligence:** If we now assume that Mr. Lee did in fact acquire the Specialized Tech Fund through merger, why did the Court and counsel for Wells Fargo receive two other obviously incorrect explanations for the disparity between the obvious profit on the transaction and the assertion of a loss based on "cost basis" shown in the Questionnaire? It appears that Mr. Lee either had not done his homework on how he became a Wells Fargo funds shareholder or he was trying to mislead the Court and opposing counsel into believing that he might have viable securities claims against Wells Fargo when he may be unable to show either a "loss" required by Section 12(a)(2) of the Securities Act, or reliance on any alleged misstatements or omissions at the time or purchase, which is an element of a cause of action under Section 10(b) of the Exchange Act. Either explanation casts doubt on his ability to serve as lead plaintiff.

Counsel for Mr. Lee had several prior opportunities to explain the derivation of the $8,252.31

figure that Mr. Lee characterized as an "average cost basis" and on which he bases his claim of a "loss." Dkt. 31 at 4:26. Each time, he offered an entirely different *and inconsistent* explanation. Before the hearing on Mr. Lee's motion to be appointed lead plaintiff, Mr. Reese responded to our firm's inquiries about the Questionnaire responses by claiming that the "average cost basis" resulted from reinvestment of dividends. Declaration Of Jeremy Kamras In Support Of Defendants' Submission Re Edward Lee's Motion To Be Appointed Lead Plaintiff ("Kamras Decl.") Ex. B ("The average cost basis of a mutual fund is often more than the purchase price because it includes capital gain distributions," which "are often reinvested, thereby changing the average cost basis").

When Defendants' counsel explained that this could not be the case because the number of shares held by Mr. Lee did not increase as it would from dividend reinvestment (*see* Dkt. 31 at 4:22-24), Mr. Reese then claimed that the increased cost basis resulted from "sales charges and redemption fees paid by the investor." Kamras Decl. Ex. C at 1-2. In our earlier submission to the Court, we exposed this theory as nonsense—sales charges and redemption fees alone could not conceivably cause Mr. Lee's cost basis to have more than doubled. Dkt. 36 at 2:22-3:11.

Now Mr. Reese proffers a third explanation. This time the increased cost basis results not from phantom dividend reinvestments or from gargantuan sales charges and redemption fees, but because Mr. Lee acquired his shares in the Specialized Tech Fund by way of a merger of a non-Wells Fargo fund he had purchased from a different fund sponsor. Dkt. 38 at 2:15-3:5.

Like the other explanations, this most recent explanation is made without any evidentiary support.[1] Taking this third explanation at face value, however, leads to ever more troubling implications. In response to this Court's questionnaire—the obvious and stated purpose of which was to evaluate Mr. Lee's adequacy as lead plaintiff for *this* putative class action (*see generally* Dkt.

---

[1] Mr. Reese asserts that "counsel for Defendants were shown the document Mr. Lee received from his broker and relied upon in completing the questionnaire." Dkt. 38 at 2:6-7. Counsel for Defendants were shown this document once, for a few moments, and have not since been given a copy of it. Nor has Mr. Reese made available to Defendants any other of Mr. Lee's account statements, despite counsel for Defendants' suggestion that Mr. Reese redact any sensitive information such as social security numbers. And because Mr. Lee acquired his shares through an independent broker-dealer, Defendants do not independently have access to Mr. Lee's account records.

DEFS.' REPLY ISO SUBMISSION RE LEAD PLAINTIFF MOTION    CV-08-1830 WHA

-2-

1   28-2; *see also* Dkt. 28), an action involving claims under Section 12(a)(2) of the Securities Act—
2   Mr. Lee, in his own words, claimed a "loss" resulting from his sale of certain of the funds at issue
3   using an "average cost basis" calculation (Dkt. 31 at 4:24-25).  But if in fact Mr. Lee has a cost basis
4   of $8,252.31 as a result of the position he held in the pre-merger Montgomery fund—which was not
5   a Wells Fargo fund—it can only be because his position in the pre-merger fund declined in value
6   *before the merger*.  Mr. Lee's counsel concedes that this cost basis cannot serve as a basis for a
7   claim of loss on the Wells Fargo fund purchase: "It is ***not*** the methodology used to determine
8   damages in the above-captioned action . . . .  [T]he average cost basis calculation ***is completely***
9   ***irrelevant to any measure of damages to be made in this case***."  *Id.* at 1:17, 22-23 (emphases
10  added).  In short, as it pertains to this action, Mr. Lee had no "loss."  He manufactured it.

11       **Significance.**  The latest revelations by Mr. Lee not only show that he had no "loss" on the
12  Specialized Tech Fund but calls into question whether he ever purchased any Wells Fargo fund
13  shares upon which he could pursue claims.  This is no small matter—and it certainly is not a
14  "baseless personal attack" nor an "attempt to smear and intimidate the Plaintiff."  *Id.* at 1:7, 4:1.  It
15  bears on Mr. Lee's credibility and no less significant, his due diligence—a characteristic this Court
16  has noted as crucial to an effective lead plaintiff.  Dkt. 28-2 at 1:19-2:21.  It also bears directly on
17  his ability to represent the putative class as to the claims alleged.

18       Mr. Reese does not contest—nor could he—that under this Court's prior rulings and Ninth
19  Circuit precedent, Mr. Lee has no cognizable claim under Section 12(a)(2) to the extent he profited
20  from his positions in the Wells Fargo funds at issue.  *See* Dkt. 38 at 1:20-23 & n.1; *see also* Dkt. 36
21  at 3:12-21.  Further, Mr. Reese now concedes that Mr. Lee acquired his shares in the Specialized
22  Tech Fund (and presumably also his shares in the two other Wells Fargo funds, which were all
23  acquired on the same date) "[a]s a result" of a merger by which his shares in one fund "became"
24  share in the Specialized Tech Fund.  Dkt. 38 at 3:1-5 & n.2.  In "acquiring" these Wells Fargo funds,
25  Mr. Lee could not have relied on any of the misstatements or omissions that Defendants are alleged

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

to have made, and to that extent also has no cognizable claim under Section 10(b).[2]

Mr. Reese argues that such obvious atypicalities of Mr. Lee relative to the putative class, do not render him an inadequate representative. Dkt. 38 at 1 n.1. He bases this argument on the fact that in the related *Siemers* Action, Ronald Siemers served as the lead plaintiff despite the fact that he too had profited from his positions in the funds there at issue. *Id*. But that issue was not raised in the *Siemers* Action at the time Siemers was appointed lead plaintiff. Declaration Of Jeremy Kamras In Support Of Defendants' Reply Submission Re Edward Lee's Motion To Be Appointed Lead Plaintiff ("Kamras Reply Decl.") Exs. A-B.[3] Rather, the Court did not dismiss the Section 12(a)(2) claims in the *Siemers* Action until the defendants there moved for judgment on the pleadings. Kamras Reply Decl. Ex. C. And once the Court did dismiss those claims, Mr. Siemers no longer served as a lead plaintiff as to those claims.

**Conclusion.** Mr. Lee wishes to be lead plaintiff—to represent a class of absent plaintiffs to which, if appointed, he would owe fiduciary duties, including most importantly the duty to monitor the lead counsel and to direct the litigation in a manner best suited for the class. *See* Dkt. 28-2 at 1:19-2:21. He cannot fulfill these duties if he lacks credibility or, at a minimum, a demonstrated ability to conduct due diligence. As a fiduciary standing before the Court seeking to represent absent shareholders on August 7, Mr. Lee then should have known and disclosed that he never

---

[2] *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453 (1969), the case on which Mr. Reese relies for the proposition that "acquisition of a security through a merger constitutes a purchase under the federal securities laws" (Dkt. 38 at 3 n.2), involved misrepresentations and omissions that were made in communications to the shareholders by which respondents sought to obtain shareholder approval of the merger at issue. Here, by contrast, the alleged misrepresentations and omissions have nothing whatsoever to do with the merger of Mr. Lee's previously held mutual funds into Wells Fargo mutual funds, and there is no allegation in the current version of the complaint that Defendants made any misrepresentations or omissions in any communications regarding such mergers.

[3] Defendants request that, pursuant to Federal Rule of Evidence 201, the Court take judicial notice of the pleadings in the related *Siemers* Action.

bought one (or any) of the Wells Fargo funds and should have made that fact clear to the Court and to his counsel. He did not do so. That is enough to deny his request to be lead plaintiff.

DATED: August 19, 2008

Respectfully,

GILBERT R. SEROTA
JASON M. SKAGGS
JEREMY T. KAMRAS
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation

THOMAS O. JACOB
WELLS FARGO LAW DEPARTMENT

By: _____/s/_____
        GILBERT R. SEROTA

Attorneys for Defendants WELLS FARGO & COMPANY, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS FARGO FUNDS TRUST, WELLS FARGO FUNDS DISTRIBUTOR, LLC, STEPHENS, INC. and WELLS FARGO BANK, N.A.