1  GILBERT R. SEROTA (No. 75305)
   Email: gserota@howardrice.com
2  JASON M. SKAGGS (No. 202190)
   Email: jskaggs@howardrice.com
3  JEREMY T. KAMRAS (No. 237377)
   Email: jkamras@howardrice.com
4  HOWARD RICE NEMEROVSKI CANADY
        FALK & RABKIN
5  A Professional Corporation
   Three Embarcadero Center, 7th Floor
6  San Francisco, California  94111-4024
   Telephone:    415/434-1600
7  Facsimile:    415/217-5910

8  THOMAS O. JACOB (No. 125665)
   Email: tojacob@wellsfargo.com
9  WELLS FARGO LAW DEPARTMENT
   MAC A0194-266
10 45 Fremont Street, 26th Floor
   San Francisco, CA  94105
11 Telephone:    415/396-4425
   Facsimile:    415/975-7864

12
   Attorneys for Defendants
13 WELLS FARGO & COMPANY, WELLS FARGO
   FUNDS MANAGEMENT, LLC, WELLS FARGO
14 FUNDS TRUST, WELLS FARGO FUNDS
   DISTRIBUTOR, LLC, STEPHENS, INC., and
15 WELLS FARGO BANK, N.A.

16             UNITED STATES DISTRICT COURT

17           NORTHERN DISTRICT OF CALIFORNIA

18              SAN FRANCISCO DIVISION

19

20 ARNOLD KREEK, Individually And On Behalf     No. CV-08-1830 WHA
   Of All Others Similarly Situated,
21                                              Action Filed: April 4, 2008
                   Plaintiffs,
22                                              **DECLARATION OF JEREMY T.**
                                                **KAMRAS IN SUPPORT OF**
23         v.                                   **DEFENDANTS' REPLY SUBMISSION**
                                                **RE EDWARD LEE'S MOTION TO BE**
24 WELLS FARGO & COMPANY, WELLS                 **APPOINTED LEAD PLAINTIFF**
   FARGO FUNDS MANAGEMENT, LLC,
25 WELLS FARGO FUNDS TRUST, WELLS
   FARGO DISTRIBUTORS, STEPHENS, INC.,
26 WELLS FARGO BANK, N.A.,

27                 Defendants.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

I, Jeremy T. Kamras, declare as follows:

1.    I am an attorney licensed to practice law in the State of California and a member of the bar of this Court.  I am an associate at the law firm of Howard, Rice, Nemerovski, Canady, Falk & Rabkin, and am one of counsel of record for Defendants Wells Fargo & Company, Wells Fargo Funds Management, LLC, Wells Fargo Funds Trust, Wells Fargo Funds Distributor, LLC, Stephens, Inc., and Wells Fargo Bank, N.A. in the above-captioned matter, and make this declaration in support of Defendants' Reply Submission Re Lead Plaintiff Motion.  Except where otherwise stated, I make this declaration based upon my personal knowledge of the matters stated herein.  If called as a witness, I could and would testify competently to the facts stated herein.

2.    Attached hereto as Exhibit A is a true and correct copy of Defendants' Statement of Non-Opposition Re: Motion For Appointment Of Lead Plaintiff And Lead Counsel, filed on February 2, 2006 in the related case of *Siemers v. Wells Fargo & Co.*, No. C-05-04518-WHA (the "*Siemers* Action").

3.    Attached hereto as Exhibit B is a true and correct copy of Defendants' Response To Court's Questions Re: Appointment Of Lead Plaintiff And Lead Counsel, filed on February 16, 2006 in the related *Siemers* Action.

4.    Attached hereto as Exhibit C is a true and correct copy of Order Granting Defendants' Motion For Judgment On The Pleadings, entered on May 17, 2007 in the related *Siemers* Action.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on August 19, 2008 in San Francisco, California.

/s/
——————————————————
JEREMY T. KAMRAS

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

# EXHIBIT A

1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   BRUCE A. ERICSON  #76342
2  CLIFFORD C. HYATT  #196458
   DAVID L. STANTON  #208079
3  JACOB R. SORENSEN  #209134
   KRISTIN M. LEFEVRE #221541
4  50 Fremont Street
   Post Office Box 7880
5  San Francisco, CA  94120-7880
   Telephone: (415) 983-1000
6  Facsimile: (415) 983-1200
   bruce.ericson@pillsburylaw.com
7
   Attorneys for Defendants WELLS FARGO & COMPANY,
8  WELLS FARGO FUNDS MANAGEMENT, LLC,
   WELLS CAPITAL MANAGEMENT INCORPORATED,
9  H.D. VEST INVESTMENT SERVICES,
   WELLS FARGO FUNDS TRUST and STEPHENS INC.
10
   THOMAS O. JACOB  #125665
11 VANESSA M. HOFFMANN  #206086
   OFFICE OF GENERAL COUNSEL
12 WELLS FARGO & CO.
   633 Folsom Street, 7th Floor
13 San Francisco, California  94107
   Telephone: (415) 396-4425
14 Facsimile: (415) 975-7867
   tojacob@wellsfargo.com
15
   Attorneys for Defendants
16 WELLS FARGO & COMPANY and affiliates

17              UNITED STATES DISTRICT COURT

18             NORTHERN DISTRICT OF CALIFORNIA

19               SAN FRANCISCO DIVISION

20

| | |
|---|---|
| 21  THE MCDANIEL FAMILY TRUST, Individually And On Behalf Of ALL OTHERS | No. C-05-04518-WHA |
| 22  SIMILARLY SITUATED, | **CLASS ACTION (PSLRA)** |
| 23            Plaintiff, | **STATEMENT OF NON-OPPOSITION RE: MOTION FOR** |
| 24    vs. | **APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL** |
| 25  WELLS FARGO & COMPANY, et al., | Date:  February 23, 2006 |
| 26            Defendants. | Time:  8:00 A.M. |
| 27 | Ctrm:  9, 19th Floor |
| 28 | Honorable William H. Alsup |

1    Defendants **WELLS FARGO & COMPANY, WELLS FARGO FUNDS**

2    **MANAGEMENT, LLC, WELLS CAPITAL MANAGEMENT INCORPORATED,**

3    **H.D. VEST MANAGEMENT SERVICES, WELLS FARGO FUNDS TRUST** and

4    **STEPHENS, INC.** (collectively, the "Wells Fargo Defendants and Stephens") hereby

5    respond to the motion (Dkts. 11-13) filed by the "Wells Fargo Lead Plaintiff Group"

6    requesting the Court to (a) appoint a lead group of plaintiffs, (b) appoint a plaintiffs'

7    steering committee and (c) approve the lead plaintiff group's selection of lead counsel,

8    coordinating counsel, and liaison counsel.

9        The motion, addressed to selecting the "most adequate plaintiff" and to approving

10   counsel to represent a purported plaintiff class, does not request any relief against any

11   defendant.  Accordingly, the Wells Fargo Defendants and Stephens take no position with

12   respect to the motion.

13       By not opposing this motion, the Wells Fargo Defendants and Stephens are not

14   indicating agreement with the statements contained in plaintiff's complaint and memoranda

15   about defendants' conduct; indeed, the Wells Fargo Defendants and Stephens strongly

16   disagree with these mischaracterizations of their conduct.  The Wells Fargo Defendants and

17   Stephens reserve all their rights to object to defects in plaintiff's complaint, to object to the

18   proposed lead plaintiff group's adequacy as representatives of the purported class and to

19   oppose class certification.  But none of those matters is before the Court now, so the Wells

20   Fargo Defendants and Stephens will not address them now.

21   //

22   //

23   //

24

25

26

27

28

1    *Form of proposed order:* The Wells Fargo Defendants and Stephens have no

2    objection to the form of order proposed by moving parties.

3    Dated: February 2, 2006.

4                                    PILLSBURY WINTHROP SHAW PITTMAN LLP
                                     BRUCE A. ERICSON
5                                    CLIFFORD C. HYATT
                                     DAVID L. STANTON
6                                    JACOB R. SORENSEN
                                     KRISTIN M. LEFEVRE
7                                    50 Fremont Street
                                     Post Office Box 7880
8                                    San Francisco, CA  94120-7880

9                                    Attorneys for Defendants
                                     WELLS FARGO & COMPANY, WELLS FARGO
10                                   FUNDS MANAGEMENT, LLC, WELLS CAPITAL
                                     MANAGEMENT INCORPORATED, H.D. VEST
11                                   INVESTMENT SERVICES, WELLS FARGO
                                     FUNDS TRUST and STEPHENS INC.
12

13                                   THOMAS O. JACOB
                                     VANESSA M. HOFFMANN
14                                   OFFICE OF GENERAL COUNSEL
                                     WELLS FARGO & CO.
15                                   633 Folsom Street, 7th Floor
                                     San Francisco, California  94107

16                                   Attorneys for Defendants
17                                   WELLS FARGO & COMPANY, WELLS FARGO
                                     FUNDS MANAGEMENT, LLC, WELLS CAPITAL
18                                   MANAGEMENT INCORPORATED, H.D. VEST
                                     INVESTMENT SERVICES and WELLS FARGO
19                                   FUNDS TRUST

20

21                                   By   /s/ Bruce A. Ericson
22                                            Bruce A. Ericson

23

24

25

26

27

28

EXHIBIT B

1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON #76342
2   CLIFFORD C. HYATT #196458
    DAVID L. STANTON #208079
3   JACOB R. SORENSEN #209134
    KRISTIN M. LEFEVRE #221541
4   50 Fremont Street
    Post Office Box 7880
5   San Francisco, CA 94120-7880
    Telephone: (415) 983-1000
6   Facsimile: (415) 983-1200
    bruce.ericson@pillsburylaw.com
7
    Attorneys for Defendants WELLS FARGO & COMPANY,
8   WELLS FARGO FUNDS MANAGEMENT, LLC,
    WELLS CAPITAL MANAGEMENT INCORPORATED,
9   H.D. VEST INVESTMENT SERVICES,
    WELLS FARGO FUNDS TRUST and STEPHENS INC.
10
    THOMAS O. JACOB #125665
11  VANESSA M. HOFFMANN #206086
    OFFICE OF GENERAL COUNSEL
12  WELLS FARGO & CO.
    633 Folsom Street, 7th Floor
13  San Francisco, California 94107
    Telephone: (415) 396-4425
14  Facsimile: (415) 975-7867
    tojacob@wellsfargo.com
15
    Attorneys for Defendants
16  WELLS FARGO & COMPANY and affiliates

17  [Other counsel are listed on the signature pages]

18               UNITED STATES DISTRICT COURT

19              NORTHERN DISTRICT OF CALIFORNIA

20                 SAN FRANCISCO DIVISION

21  _____

22  THE McDANIEL FAMILY TRUST,          No. C-05-04518-WHA
    Individually And On Behalf Of ALL OTHERS
23  SIMILARLY SITUATED,                 CLASS ACTION (PSLRA)

24              Plaintiff,              DEFENDANTS' RESPONSE TO
                                        COURT'S QUESTIONS RE:
25       vs.                           APPOINTMENT OF LEAD
                                        PLAINTIFF AND LEAD COUNSEL
26  WELLS FARGO & COMPANY, et al.,
                                        Date: February 23, 2006
27              Defendants.             Time: 2:00 P.M.
    _____    Ctrm: 9, 19th Floor
28                                      Honorable William H. Alsup

600116052v2

## I.  INTRODUCTION.

1

2         At the case management conference held February 9, 2006, the Court indicated that

3  it wishes to appoint one plaintiff as lead plaintiff and have that lead plaintiff choose one law

4  firm as its counsel.  Counsel for plaintiff, McDaniel Family Trust, expressed a concern that

5  defendants may interpose new or different defenses if only one lead plaintiff is chosen.  The

6  Court, in response, suggested that it may pose questions to defense counsel regarding that

7  point and it gave all parties until February 16, 2006 to submit additional briefing regarding

8  the lead plaintiff motion (Dkts. 11-13, 26).

9         This is the response of all defendants ("Defendants") to the concerns raised by

10  plaintiff's counsel at the case management conference.  In brief, Defendants submit that:

11  •  The Court's concerns about having multiple lead plaintiffs and multiple law firms

12     representing the lead plaintiffs are well-founded.

13  •  It is not Defendants' place, however, to comment on the bona fides of any particular

14     candidate to be lead plaintiff.

15  •  Depending on who is chosen to be lead plaintiff, Defendants may be obliged to raise the

16     issue of standing (in the constitutional sense of whether there is an Article III "case or

17     controversy").  We shall comment on this below.

18  •  It is also possible that the choice of lead plaintiff could affect other issues later in the

19     litigation—for example, issues that might be litigated on a motion to dismiss or a class

20     certification motion.  At this stage of the case, however, it is impossible to say with any

21     assurance what that effect might be.  Plaintiff has indicated that it intends to amend its

22     complaint, changing (among other things) its proposed class definitions and subclasses.

23     Without seeing that amended complaint, Defendants cannot say what defenses they

24     might raise or what might be the issues on class certification.

25  ## II.  DISCUSSION.

26  ### A.    One lead plaintiff, one plaintiff's counsel is a good concept.

27         Defendants agree with the concept of one plaintiff, one plaintiff's counsel.  As the

28  case mentioned by the Court (*In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747 (8th Cir.

1    2003)) shows, a "*fractured* lead plaintiff group that failed to speak with one voice" (*id.* at

2    750) (emphasis in original) can make it difficult to settle a case and multiply the costs

3    incurred by all parties.

4         Closer to home, the undersigned once suffered through seven days of settlement

5    approval hearings in a class action where five plaintiffs' firms fell to quarrelling over the

6    merits of a settlement. *See 7-Eleven Owners for Fair Franchising v. Southland Corp.*,

7    85 Cal. App. 4th 1135, 1142-44, 102 Cal. Rptr. 2d 777, 781-82 (2000). Hearings in the trial

8    court were spread over seven months. The ensuing appeal from approval of the settlement

9    took another two years, eight months. Enough said.

10        **B.    Issues of standing could arise and cannot be waived.**

11        This is not the first class action challenging so-called "Shelf Space" issues in the

12   mutual fund industry. Over half a dozen such class actions have been filed in federal

13   district courts back east. In at least two of these class actions, issues of standing have

14   already been litigated. Thus, while we cannot know yet whether issues of standing will

15   arise here, we can at least sketch the basic principles.

16        Article III of the Constitution limits the jurisdiction of federal courts to "cases or

17   controversies." As interpreted by the Supreme Court, this means that the plaintiff must

18   (1) have suffered injury (2) that is fairly traceable to the defendant's unlawful conduct and

19   (3) is likely to be redressed by the requested relief. *See, e.g., Lujan v. Defenders of*

20   *Wildlife*, 504 U.S. 555, 560-61 (1992). These are issues of constitutional dimension going

21   to the Court's subject-matter jurisdiction. They cannot be waived. As the court said in one

22   "Shelf Space" class action, "Article III standing goes to the very heart of a court's subject

23   matter jurisdiction. It determines whether the court has jurisdiction to resolve a dispute on

24   the merits." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 460 (D.N.J. 2005)

25   (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *ACLU-NJ v. Township of Wall*, 246 F.3d

26   258, 261 (3d Cir. 2001)).

27        In *In re Franklin*, 388 F. Supp. 2d at 461-62, and in another class action before the

28   same judge, *In re Lord Abbett Mutual Funds Fee Litigation*, 385 F. Supp. 2d 471, 480

1    (D.N.J. 2005), the court held that Article III standing existed as long as the lead plaintiff

2    had standing to bring at least one claim against each defendant. There, the actions were

3    brought against mutual fund families and their affiliates—fund advisers, fund distributors

4    and fund directors. In *Franklin,* the court dismissed all claims against "all investment

5    adviser defendants, distributor defendants, and director defendants" with leave to amend.

6    *Franklin,* 388 F. Supp. 2d at 462. In *Lord Abbett,* the court refused to dismiss any of the

7    defendants ("Lord Abbett, Lord Abbett Distributors LLC, the Directors and Trustees, and

8    the Partners") because the named plaintiffs owned interests in seven Lord Abbett funds.

9    *Lord Abbett,* 385 F. Supp. 2d at 478-80.

10          Standing must be assessed separately against each defendant because the lead

11   plaintiff must have suffered injury in fact traceable to that defendant's alleged misconduct.

12   *In re Franklin,* 388 F. Supp. 2d at 460-62.

13          To have standing to sue the broker/dealers, for example, we think a plaintiff must

14   have dealt with them—that is, received advice from a broker/dealer and bought a fund as a

15   result of that advice. How otherwise would the plaintiff have any claim against that

16   broker/dealer? Similarly, to have standing to sue the fund advisers and distributors, we

17   think a plaintiff must have dealt with them. If the plaintiff never bought a mutual fund from

18   the fund family that the adviser advises, or the distributor distributes, how could that

19   plaintiff have any claim against that adviser or distributor?

20          Applying these principles, it would appear that the present plaintiff, McDaniel

21   Family Trust, might not have standing as to all defendants. For example, it never purchased

22   or held any Proprietary Funds. Of the other proposed lead plaintiffs, some might have

23   similar problems and some might not. We are reluctant to say more without learning more

24   about them and seeing the amended complaint to which their names are to be attached.

25          **C.      It is too early to say whether the choice of lead plaintiff will affect merits**

26                  **defenses or class certification.**

27          As noted in the introduction, it certainly is possible that the choice of lead plaintiff

28   will affect the availability of certain defenses and arguments other than standing. But

1    without knowing what the amended complaint will look like, we would only be speculating

2    if we hazarded a guess as to what defenses or arguments might be affected. Needless to

3    say, we are certainly not going to sign any blank checks by waiving defenses or arguments

4    in advance of seeing the amended complaint.

5    **III.    CONCLUSION.**

6    Defendants have no objection to the Court selecting one lead plaintiff and one law

7    firm to represent the lead plaintiff. As a matter of constitutional law, however, Defendants

8    cannot waive any challenges that any of them may have to the standing of the plaintiff

9    chosen. And as a matter of prudence, Defendants do not waive any defenses they have to

10    the existing complaint or might have to an amended complaint that they have not yet seen,

11    or any arguments they might have relating to classes that have not yet been defined, or to a

12    class certification motion not yet made.

13    **DECLARATION PURSUANT TO GENERAL ORDER 45, § X.B**

14    I, BRUCE A. ERICSON, hereby declare pursuant to General Order 45, § X.B, that I

15    have obtained the concurrence in the filing of this document from the other signatory listed

16    below.

17    I declare under penalty of perjury that the foregoing declaration is true and correct.

18    Executed on February 16, 2006, at San Francisco, California.

19

20    PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON
    CLIFFORD C. HYATT

21    DAVID L. STANTON
    JACOB R. SORENSEN

22    KRISTIN M. LEFEVRE
    50 Fremont Street

23    Post Office Box 7880
    San Francisco, CA 94120-7880

24

25    Attorneys for Defendants
    WELLS FARGO & COMPANY, WELLS FARGO

26    FUNDS MANAGEMENT, LLC, WELLS CAPITAL
    MANAGEMENT INCORPORATED, H.D. VEST

27    INVESTMENT SERVICES, WELLS FARGO
    FUNDS TRUST and STEPHENS INC.

28

1
2
3
4

THOMAS O. JACOB
VANESSA M. HOFFMANN
OFFICE OF GENERAL COUNSEL
WELLS FARGO & CO.
633 Folsom Street, 7th Floor
San Francisco, California 94107

5
6
7

Attorneys for Defendants
WELLS FARGO & COMPANY, WELLS FARGO
FUNDS MANAGEMENT, LLC, WELLS CAPITAL
MANAGEMENT INCORPORATED, H.D. VEST
INVESTMENT SERVICES and WELLS FARGO
FUNDS TRUST

8

9          By    /s/ Bruce A. Ericson
10                        Bruce A. Ericson

11         MORGAN LEWIS & BOCKIUS LLP
           MICHAEL LAWSON
12         JONATHAN DEGOOYER
           One Market Street, Spear Street Tower
13         San Francisco, CA 94105

14

15         By    /s/ Jonathan DeGooyer
                          Jonathan DeGooyer

16
17         Attorneys for Defendant
           SEI INVESTMENT DISTRIBUTION CO.

18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   RONALD SIEMERS and FORREST                    No. C 05-04518 WHA
     MCKENNA, individually and on behalf of all
11   others similarly situated,

12                    Plaintiffs,                   **ORDER GRANTING**
                                                    **DEFENDANTS' MOTION**
13        v.                                        **FOR JUDGMENT ON**
                                                    **THE PLEADINGS**
14   WELLS FARGO & CO.,WELLS FARGO
     FUNDS MANAGEMENT, LLC, WELLS
15   CAPITAL MANAGEMENT, INC., H.D.
     VEST INVESTMENT SERVICES, WELLS
16   FARGO INVESTMENTS, LLC, STEPHENS,
     INC., and WELLS FARGO FUNDS TRUST,
17
18                    Defendants.
                                              /
19

20                              **INTRODUCTION**

21        In this securities-fraud action, defendants move for judgment on the pleadings as to

22   certain counts of the complaint, pursuant to Federal Rule of Civil Procedure 12(c).  Defendants

23   contend that the undisputed facts establish that plaintiffs' claims arising under Section 12(a)(2)

24   of the Securities Act of 1933 must fail as a matter of law.  This order finds that plaintiffs'

25   Section 12(a)(2) claims are barred by the statute of limitations or fail because plaintiffs have

26   suffered no rescissory loss.  Plaintiffs' claim under Section 15 of the 1933 Act must also fail.

27   For the below-stated reasons, defendants' motion for judgment on the pleadings is GRANTED.

28

**United States District Court**
For the Northern District of California

## STATEMENT

This action alleges that defendants, various Wells Fargo-affiliated companies in the mutual-fund trade, engaged in a hidden system of "revenue sharing" wherein fund sponsors made incentive payments to brokerage firms in exchange for increased visibility. The most incendiary allegation is that the payments came not from the sponsors' own money but from the investors' money — siphoned out of the common fund in the guise of sham fees. Two putative-class representatives are named as plaintiffs, Ronald Siemers and Forrest McKenna. The full procedural history of this action is set forth in an order dated March 9, 2007. *See Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 WL 760750, at *1 (N.D. Cal. Mar. 9, 2007).

Counts I and II of the third amended complaint assert claims against defendants Wells Fargo Investments, Wells Fargo Funds Trust, Wells Fargo Funds Distributor, and Stephens Incorporated, under Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. 77l(a)(2). Count III asserts a claim against Wells Fargo & Co. under Section 15 of the 1933 Act, 15 U.S.C. 77o. The instant motion is directed at Counts I, II, and III.

Defendants' motion focuses on specific purchases and sales of Wells Fargo mutual funds by plaintiffs McKenna and Siemers. The operative complaint alleges the following purchases of Wells Fargo funds by McKenna and Siemers (Compl. Exhs. A, B):[1]

McKenna:

- The purchase of 191.84 shares of Wells Fargo Advantage Large Company Growth Fund on May 3, 2001.

- The purchase of 252.15 shares of Wells Fargo Advantage Small Cap Growth Fund on May 3, 2001.

Siemers:

- Purchases of Wells Fargo Diversified Equity Fund at various prices between July 14, 2000, and December 24, 2003.

---

[1] Whether these were actual purchases or only reinvestments is not clear from this record.

2

1 • Three purchases of Wells Fargo Advantage Small Cap
    Growth Fund consisting of 620.018 shares on February 20,
2    2004 (at $11.08), 217.028 shares on February 20, 2004 (at
    $11.29), and 13.384 shares on December 15, 2004 (at
3    $11.59).

4 • One purchase of Wells Fargo TR Montgomery Emerging
    Markets Focus Fund, consisting of 451.264 shares on
5    February 23, 2004 (at $22.16).

6        Before the complaint was filed, Siemers sold all the shares he owned in both the

7   Diversified Equity Fund and the Emerging Markets Focus Fund. He sold his shares in the

8   Emerging Markets Fund on October 31, 2005, for $25.78 per share. He sold his shares in the

9   Diversified Equity Fund in two separate sales. On February 24, 2004, he sold 43.256 shares for

10  $40.02 per share, and on April 7, 2004, he sold 2.538 shares for $41.21 per share. He still owns

11  his shares in the Advantage Small Cap Growth Fund.

12       Defendants Wells Fargo Investments, Wells Fargo Fund Distributor, Wells Fargo Funds

13  Trust, and Stephens move for judgment as to Counts I and II. Defendant Wells Fargo &

14  Company moves for judgment as to Count III of the complaint. Plaintiffs concede that neither

15  Siemers nor McKenna may plead a Section 12(a)(2) claim based on any purchase made before

16  November 2, 2005. Thus only some of Siemers' purchases — and none of McKenna's — are at

17  issue in this motion.

**ANALYSIS**

18

19  **1.    LEGAL STANDARD.**

20       "After the pleadings are closed but within such time as not to delay the trial, any party

21  may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the

22  pleadings is evaluated according to virtually the same legal standard as a motion to dismiss

23  pursuant to Rule 12(b)(6), in that the pleadings are construed in the light most favorable to the

24  non-moving party. *See Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1130–31 (N.D.

25  Cal. 2005). "Judgment on the pleadings is proper when the moving party clearly establishes on

26  the face of the pleadings that no material issue of fact remains to be resolved and that it is

27

28

3

United States District Court
For the Northern District of California

1    entitled to judgment as a matter of law." *See Hal Roach Studios, Inc. v. Richard Feiner and*

2    *Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

3        Although materials outside of the pleadings should not be considered, a court may

4    consider all materials properly submitted as part of the complaint, such as exhibits. *See Hal*

5    *Roach Studios*, 896 F.2d at 1555 n.19. Otherwise, if "matters outside the pleadings are

6    presented to and not excluded by the Court," the motion must be treated as a

7    summary-judgment motion instead. Fed. R. Civ. P. 12(c).

8        The Court takes judicial notice of the Yahoo Finance quotes for the per share price of

9    the Wells Fargo Advantage Small Cap Growth Fund, filed concurrently with the instant motion.

10   *See Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997). While generally consideration of

11   these judicially noticed facts would not convert the instant motion into a motion for summary

12   judgment, there are other facts that require consideration of this motion as one for summary

13   judgment. *See In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*, 882 F. Supp.

14   915, 921 (C.D. Cal. 1994). Specifically, this order also takes into account defendants'

15   calculation of Siemers' profit from the sale of his shares. Although these calculations are not

16   disputed by plaintiffs in their opposition, the Court declines to take judicial notice of these facts

17   and will construe the instant motion, to that extent, as one for summary judgment.

18       Under Rule 56, summary judgment is proper where the evidence shows that "there is no

19   genuine issue as to any material fact and that the moving party is entitled to judgment as a

20   matter of law." It is not the task of the district court to scour the record in search of a genuine

21   issue of triable fact. The nonmoving party has the burden of identifying with reasonable

22   particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275,

23   1279 (9th Cir. 1996). A genuine dispute as to a material fact exists if there is sufficient

24   evidence for a reasonable finder of fact to return a verdict for the nonmoving party. On

25   summary judgment, the "evidence of the non-movant is to be believed, and all justifiable

26   inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

27

28

1   255 (1986). Absent such a factual showing, "the moving party is entitled to a judgment as a

2   matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

3       Defendants' motion for judgment on the pleadings is limited to plaintiffs' claims

4   alleging violations of Sections 12(a)(2) and 15 of the 1933 Act, the first three counts of the

5   complaint. Defendants first allege that certain transactions made before November 5, 2002, by

6   Siemers and McKenna are barred by the three-year statute of limitations, this action having

7   been initated on November 4, 2005. As stated above, plaintiffs concede that "neither Plaintiff

8   intended to plead any [Section] 12(a)(2) claims in the Third Amended Complaint with regard to

9   purchases made more than three years before the filing of the Complaint" (Opp. 1). None of

10  McKenna's purchases was within the three-year period, so he cannot plead a claim under the

11  1933 Act with respect to his purchases of the Wells Fargo funds. Plaintiffs also concede that

12  Siemers cannot plead a claim under the 1933 Act with respect to his purchases of Wells Fargo

13  funds before November 2002. All parties agree, however, that at least some of Siemers'

14  purchases of the Wells Fargo Small Cap Growth Fund, Wells Fargo Diversified Equity Fund,

15  and Wells Fargo TR Montgomery Emerging Markets Focus Fund occurred after November

16  2002 and are not time-barred.

17      **2.    SECTION 12(A)(2) CLAIMS.**

18      Defendants' principal argument is that as to the Wells Fargo funds Siemers purchased in

19  the three years preceding the filing of the complaint, he cannot sustain a Section 12(a)(2) claim

20  because he did not incur a loss. This argument has merit. This order recounts Siemers' relevant

21  transactions during the class period.

22      *Wells Fargo Diversified Equity Fund*: Siemers made ten purchases at various times and

23  prices between November 15, 2002, and December 24, 2003. These purchases were all at

24  prices between $31.37 and $38.98. He sold all his shares in February and April 2004 at prices

25  ranging from $40.02 to $41.21 per share. Matching his purchases against the lowest sale price,

26  his profit was 19%.

27

28

5

1    *Wells Fargo TR Montgomery Emerging Markets Focus Fund*:  Siemers made one

2    purchase, on February 23, 2004.  He bought these shares at $22.16.  He sold the shares at

3    $25.78 on November 2, 2005.  He thus made a profit of 16%.

4    *Wells Fargo Advantage Small Cap Growth Fund*:  Siemers made two purchases on

5    February 20, 2004, and one on December 15, 2004.  He paid $9,755.12 for 850.43 shares, at

6    prices of $11.08, $11.29, and $11.59 per share.  To date, he has not sold his shares in this fund.

7    On the day the action was filed, the per-share value was $12.57.  The share price was valued

8    more recently on April 5, 2007, at $13.87.

9                 **A.    Siemers Has No Section 12(a)(2) Losses.**

10    The parties agree that the remedies available under Section 12(a)(2) are limited.  A

11    plaintiff may "recover the consideration paid for such security with interest thereon, less the

12    amount of any income received thereon, upon the tender of such security, or for damages if he

13    no longer owns the security."  15 U.S.C. 77l(a)(2).  The Supreme Court has explained that this

14    provision "prescribes the remedy of rescission except where the plaintiff no longer owns the

15    security."  *Randall v. Loftsgaarden*, 478 U.S. 647, 655 (1986).  And "[e]ven in the latter

16    situation, we may assume that a rescissory measure of damages will be employed; the plaintiff

17    is entitled to a return of the consideration paid, reduced by the amount realized when he sold the

18    security and by any 'income received' on the security."  *Id.* at 655–56.  Thus, the successful

19    plaintiff under Section 12(a)(2) may recover his or her "purchase price, or . . . damages not

20    exceeding such price."  *Id.* at 656 (quoting H.R. Rep. No. 85, 73d Cong., 1st Sess. 9 (1933)).

21    According to defendants, because Siemers profited on the fund purchases at issue, he

22    would not be entitled to any Section 12(a)(2) damages.  The Ninth Circuit's holding in *In re*

23    *Broderbund /Learning Co. Securities Litigation*, 294 F.3d 1201, 1202–03 (9th Cir. 2002),

24    provides guidance.  In that decision, the plaintiff had acquired stock in The Learning Company

25    at a price of $17.6875 per share.  The plaintiff disposed of his stock at a price of $33.45 per

26    TLC share in a stock-for-stock deal when TLC was acquired by Mattel.  The plaintiff alleged

27    that certain misstatements by TLC had inflated the value of TLC stock when he purchased it.

28

                                            6

United States District Court

For the Northern District of California

1   He asserted claims under Sections 11 and 12(a)(2) of the 1933 Act. The Ninth Circuit affirmed

2   dismissal under Rule 12(b)(6), holding that the plaintiff had no damages as a matter of law:

3   "[W]hen he disposed of [the security], he did so for an amount greater than the purchase

4   price. . . . In the TLC transactions, he 'has suffered no damages recoverable under § 12(2)' of

5   the Act." *Id.* at 1205 (quoting *PPM AM., Inc. v. Marriott Corp.*, 853 F. Supp. 860, 876 (D. Md.

6   1994)). This order finds that pursuant to *Broderbund*, where, as here, the undisputed facts show

7   that plaintiff has profited from the transactions at issue, such allegations cannot constitute a

8   Section 12(a)(2) claim for damages. *See Randall*, 478 U.S. at 655–56 ("[T]he plaintiff is

9   entitled to a return of the consideration paid, reduced by the amount realized when he sold the

10  security and by any 'income received' on the security."). The same is true for securities

11  currently held that could be sold at their present value for a profit.

12      Plaintiffs maintain, however, that Siemers *did* suffer a rescissory loss for the mutual

13  funds he sold. They contend that defendants neglected to include interest information, which is,

14  in plaintiffs' view, necessary to calculate Section 12(a)(2) damages. Plaintiffs suggest that the

15  interest rate can only be set after resolving fact issues and that it is inappropriate to do so in a

16  motion for judgment on the pleadings. According to plaintiffs, Siemers can demonstrate

17  Section 12(a)(2) losses using an "appropriate" interest rate.

18      Plaintiffs are wrong that interest is *necessary* in a Section 12(a)(2) damages calculation.

19  In Section 12(a)(2) cases, "an award of prejudgment interest rests in the sound discretion of the

20  trial court." *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 615 (2d Cir. 1994).

21  Factors to be considered include: "(I) the need to fully compensate the wronged party for actual

22  damages suffered, (ii) considerations of the fairness and the relative equities of the award,

23  (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles that

24  the court deems relevant." *Wickham Contracting Co., Inc. v. Local Union No. 3, Intern. Bhd.*,

25  955 F.2d 831, 833–34 (2d Cir. 1992); *see also Milken*, 17 F.3d at 615.

26      Based on the undisputed facts, consideration of the factors here weighs in favor of

27  denying an award of interest as a matter of law. Perhaps most importantly, the undisputed facts

28

7

1    demonstrate that interest is not needed to fully compensate Siemers for any alleged Section

2    12(a)(2) loss suffered.  Over almost two years, Siemers made a 19% profit from his sale of

3    Wells Fargo Diversified Equity Fund shares.  Over one and a half years, he made a 16% profit

4    from his sale of Wells Fargo TR Montgomery Emerging Markets Focus Fund.  As other courts

5    have recognized, "if a plaintiff sells the securities at issue for an amount greater than the

6    plaintiff's purchase price, then the plaintiff has suffered no damages recoverable under § 12(2)."

7    *PPM AM., Inc.*, 853 F. Supp. at 876, *cited with approval in Broderbund*, 294 F.3d at 1205.

8           Furthermore, although he has not sold his shares in the Wells Fargo Advantage Small

9    Cap Growth Fund, he could have made a 10% profit if he had sold the fund on the day the

10   action commenced, or a 21% profit if he sold recently, on April 5, 2007.  Because plaintiff still

11   holds these shares, the proper remedy would be rescission; he would have to tender back his

12   interest and receive his purchase price.  *See Randall*, 478 U.S. at 655–56.  But he would not be

13   entitled to any award because rescission would result in him receiving less than the actual value

14   of the shares.  *See Merzin v. Provident Fin. Group, Inc.*, 311 F. Supp. 2d 674, 684 (S.D. Ohio

15   2004) ("Because in this case rescission would clearly result in a loss for Plaintiffs, such claim

16   should be and is dismissed.").

17          For all of the relevant investments, Siemers' gain is at least as great as conventional

18   interest over the periods in question, or so close thereto as to be fair without a disproportionate

19   waste of resources in trying to put a finer point on it.  This order holds that prejudgment interest

20   is adequately compensated for in the profits already earned on the investments.  Accordingly,

21   Counts I and II must fail.  In this regard, the Second Circuit has aptly held: "We realize that

22   Congress specifically provided in § 12(2) for an award of interest.  But we do not read § 12(2)

23   as insisting upon any set rate of interest. . . . The net result of these computations is that

24   appellants have not suffered compensable damages under § 12(2).  Allowing them to maintain a

25   cause of action under such circumstances would constitute a waste of judicial resources and a

26   thwarting of Congress' aim in enacting § 12(2)." *Milken*, 17 F.3d at 616.  The lack of a

27

28                                                          8

United States District Court
For the Northern District of California

1    cognizable loss under Section 12(a)(2) means that judgment must be entered on the Section

2    12(a)(2) claims in defendants' favor.

3    **B.    Plaintiffs' Proposed Interest Calculation Is Flawed.**

4        Even if the Court were to find interest available, plaintiffs' theory of "interest" to

5    demonstrate a "loss" lacks merit.  Plaintiffs propose a novel way to calculate interest.  Plaintiffs

6    "believe that one appropriate way to set the interest rate would be to see what return Mr.

7    Siemers would have earned had he invested in non-Wells Fargo mutual funds in the same

8    market segment" (Opp. 7).  Plaintiffs suggest comparing Siemers' rate of return relative to

9    industry "benchmark" funds identified by industry analysts at Morningstar and Yahoo.

10    According to the calculations offered by plaintiffs, if Siemers had invested in the benchmark

11    funds rather than the Wells Fargo funds, his return rate would have been higher.  Under this

12    theory, he has incurred a "loss" and is entitled to the "interest" he could have earned through a

13    hypothetical investment (*id.* at 7–9).[2]

14        This proposed theory of "interest" is rejected.  Plaintiffs cite no decision actually

15    applying this approach in a Section 12 case.  This theory is not interest at all.  It is capital gain

16    from competing equity investments.

17        The decision on which plaintiffs rely, *Johns Hopkins University v. Hutton*, 297 F. Supp.

18    1165, 1229–30 (D. Md. 1968), is inapposite.  *Johns Hopkins* held that "[i]n order to place [the

19    plaintiff] in the position it would have been in were it not for the violations by [the defendant]

20    of the standards of Section 12, an examination is required to determine what Hopkins could

21    reasonably have been expected to earn by a similar type of investment."  In the circumstances of

22    that decision, however, the court considered the rate of return the plaintiff had been *promised*

23    before making the investment.  The district court found that the promised rate was above the

24

25

26        [2] Plaintiffs expressly "do not waive their right to assert that the interest should be set in other ways,"

27    such as by reference to a fixed rate or a treasury-bill rate (Opp. 7).  They suggest the theory discussed above as
a possible way to calculate interest and to demonstrate that Siemers has incurred a loss.

28

9

1  prime rate and that accordingly, it was appropriate to award the plaintiff what it had expected to

2  earn according to the defendants' promise.

3       Even if *Johns Hopkins* is correct that a plaintiff's reasonable expectation can be

4  considered in calculating interest in Section 12(a)(2), plaintiffs do not argue that Siemers could

5  reasonably expect to receive a particular rate of return. Generally, "[i]n a rescission action the

6  proper measure is the amount lost rather than value of the bargain." *Andrews v. Blue*, 489 F.2d

7  367, 376 (10th Cir. 1973). There being no Section 12(a)(2) decision supporting the theory that

8  a fictitious investment can be used to create a loss for a plaintiff who has profited from the

9  investment at issue, plaintiffs' theory fails.

10       **3.**    **SECTION 15 CLAIM.**

11       Count III, alleging control-person liability under Section 15, only survives this motion if

12  the underlying claims brought under Section 12(a)(2), Counts I and II, survive. Because the

13  Section 12(a)(2) claims do not survive, judgment on the Section 15 claim must be entered in

14  Wells Fargo & Company's favor. *See* 15 U.S.C. 77o; *Durham v. Kelly*, 810 F.2d 1500,

15  1503–04 (9th Cir. 1987); *Payne v. Fidelity Homes of Am., Inc.*, 437 F. Supp. 656, 658 (D.C. Ky.

16  1977).

17                              **CONCLUSION**

18       For the foregoing reasons, defendants' motion for judgment on the pleadings as to

19  Counts I, II, and III, construed as a motion for summary judgment, is **GRANTED**. The

20  remaining claims are Count IV, which alleges a violation of Section 10(b) of the Securities

21  Exchange Act of 1934, 15 U.S.C. 78j(b) and Securities and Exchange Commission Rule 10b-5,

22  17 C.F.R. 240.10b-5; Count V, which alleges a violation of Section 20(a) of the 1934 Act, 15

23  U.S.C. 78t; and Count VI, which alleges a violation of Section 36(b) of the Investment

24  Company Act of 1940, 15 U.S.C. 80a-35(b).

25       **IT IS SO ORDERED.**

26  Dated: May 17, 2007.

27                            WILLIAM ALSUP
                          UNITED STATES DISTRICT JUDGE

28

*Left margin, vertical text:* United States District Court    For the Northern District of California