IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD KREEK, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS FARGO FUNDS TRUST, WELLS FARGO DISTRIBUTORS, STEPHENS, INC., and WELLS FARGO BANK, N.A.,<br><br>    Defendants.<br>                                                        / | No. C 08-01830 WHA<br><br><br>**ORDER APPOINTING LEAD PLAINTIFF** |

**INTRODUCTION**

Pursuant to the Private Securities Litigation Reform Act, this order appoints Edward Lee as the lead plaintiff for this securities class action. No other parties moved to be lead plaintiff. This order also sets forth the procedure to be used for the selection and approval of class counsel.

**STATEMENT**

This is a putative class action that arises from allegations of false and misleading statements in violation of federal securities laws. It is related and a follow-on to *Ronald Siemers v. Wells Fargo*, C 05-04518-WHA. Plaintiffs are investors who purchased Wells Fargo Funds from November 4, 2000, through April 11, 2006, inclusive. Defendants Wells Fargo & Company and its affiliates (Wells Fargo Funds Management, LLC, Wells Fargo Funds Trust,

1  Wells Fargo Distributors, Stephens, Inc., and Wells Fargo Bank) provide financial services to
2  clients — such as banking, insurance, investments, mortgage, and consumer finance services.
3         Plaintiffs allege that Wells Fargo and its affiliates entered into secret revenue-sharing
4  agreements with brokerages and selling agents who sold Wells Fargo Funds. Brokerages and
5  selling agents received revenue when they steered their clients into Wells Fargo Funds to the
6  exclusion of other funds better suited to their clients' interests. Defendants financed these
7  improper kickbacks by charging excessive fees to their clients, which fees should have instead
8  been invested in the fund's underlying portfolio. These preexisting and ongoing revenue-
9  sharing arrangements were not disclosed to investors at the time investors purchased Wells
10 Fargo Funds.
11        Investor Arnold Kreek first filed suit on April 4, 2008, claiming violations of federal
12 securities laws. In accordance with the Private Securities Litigation Reform Act, a notice was
13 published on *PR Newswire* on April 23, 2008, informing class members of their right to file a
14 motion for appointment as lead plaintiff. The notice also described the general allegations
15 against defendants. Mr. Kreek did not move for appointment as lead plaintiff. Plaintiff Edward
16 Lee has been the only party to do so. He purchased shares in three Wells Fargo Funds for a
17 total of $20,025.10 in three Wells Fargo Funds on June 6, 2003. According to his response to
18 the court-ordered questionnaire, his loss was $1185.41.[1]

19                                **ANALYSIS**
20        Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of
21 the purported plaintiff class that the court determines to be the most capable of adequately
22 representing the interests of the class members in accordance with this subparagraph."
23 15 U.S.C. 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most
24 adequate plaintiff should be the plaintiff who: (1) has brought the motion for appointment of

---

[1] He purchased 209.3150 shares of NVLAX at $42.14 per share ($8820.53), 1589.2080 shares of WFMCX at $4.77 per share ($7580.52), and 1065.897 shares of WFSTX at $3.40 per share ($3624.05). He acquired his WFMCX shares through a merger; he used to have shares in Montgomery Global Tech, Telecom and Media Fund, which became Wells Fargo Specialized Technology Fund after a merger between the two. In his questionnaire, he also wrote that the average cost basis was $8252.31. The questionnaire never asked for this calculation and it is unclear why it was included.

2

lead counsel in response to the publication of notice; (2) has the "largest financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of FRCP 23. 15 U.S.C. 78u-4(a)(3)(b)(I)(aa)–(cc).  The above presumption may be rebutted only upon proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class.  15 U.S.C. 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

The PSLRA sets up a three-step inquiry for appointing a lead plaintiff.  First, a plaintiff files the action and posts notice, allowing other lead-plaintiff candidates to file motions. Next, the district court considers which of those plaintiffs has the largest financial interest in the action, and whether that plaintiff meets FRCP 23's requirements.  Finally, other candidates have the opportunity to rebut the presumption that the putative lead plaintiff can adequately represent the class.  *In re Cavanaugh*, 306 F.3d 726, 729–730 (9th Cir. 2002).

### 1. LARGEST FINANCIAL INTEREST.

In the Ninth Circuit, the test for which plaintiff has the largest financial interest is strictly applied.  *Id.* at 729.  The PSLRA does not indicate a specific method for calculating which plaintiff has the "largest financial interest."  *See* 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb).  In this district, two judges have equated "largest financial interest" with the largest amount of potential recovery.  *See In Re Critical Path, Inc. Sec. Litig.*, 156 F.Supp.2d 1102, 1107–08 (N.D. Cal. 2001) (Orrick, J.); *Weisz v. Calpine Corp.*, 2002 WL 32818827 (N.D. Cal. 2002) (Armstrong, J.).  Here, Mr. Lee is the only moving party.  He therefore has the largest financial interest in this matter.

### 2. REQUIREMENTS OF TYPICALITY AND ADEQUACY UNDER FRCP 23.

The district court must then inquire whether the putative lead plaintiff satisfies the requirements of FRCP 23(a).  *In re Cavanaugh*, 306 F.3d at 730.  The inquiry focuses on the "typicality" and "adequacy" requirements, as the other requirements in FRCP 23 of numerosity and commonality would preclude class certification by themselves.  *Id.* at 730 n5.  "Once [the court] determines which plaintiff has the biggest stake, the court must appoint that plaintiff as

1  lead, unless it finds that he does not satisfy the typicality or adequacy requirements. . ."
2  *Id*. at 732.
3        The "typicality" requirement is satisfied when the named plaintiffs have (1) suffered the
4  same injuries as class members; (2) as a result of the same course of conduct; and (3) their
5  claims are based on the same legal issues. *Armour v. Network Assoc., Inc.*, 171 F. Supp.2d
6  1044, 1050 (N.D. Cal. 2001) (Jenkins, J.). In the instant action, Mr. Lee suffered the same
7  injuries as class members. He purchased shares of Wells Fargo Funds during the class period in
8  reliance on the alleged material misrepresentations issued by defendants. As a result, he
9  suffered damages. Finally, his claims are based on the same legal issues.
10       The "adequacy" requirement is satisfied when the proposed lead plaintiff does not have
11 interests antagonistic to the proposed class. *In re Emulex Corp. Secur. Litig.*, 210 F.R.D. 717,
12 720 (C.D. Cal. 2002) (Taylor, J.). Mr. Lee has shown the same interest as the rest of the class.
13 He wishes to recover against defendants for the damages suffered because of the alleged
14 misrepresentations. Mr. Lee was also present at the hearing and adequately answered the
15 Court's questions.

16     **3.**    **ATTEMPTS TO REBUT PRESUMPTION.**

17       Other plaintiffs may rebut the presumption that the putative lead plaintiff has satisfied
18 the requirements of typicality and adequacy. *Cavanaugh*, 306 F.3d at 730. Mr. Lee is the only
19 party moving for appointment as lead plaintiff. At the hearing on August 7, 2008, however,
20 defense counsel questioned the propriety of appointing Mr. Lee as lead plaintiff on the ground
21 that there was some confusion to Mr. Lee's damage calculation. The Court allowed both sides
22 to provide supplemental briefing on the matter.
23       Defense counsel pointed to a purported discrepancy in Mr. Lee's calculations. In the
24 Court's questionnaire to lead-plaintiff candidates, Mr. Lee wrote that, on June 6, 2003, he
25 purchased 1065.897 shares of the Wells Fargo Advantage Specialized Tech Fund Class A
26 (WFSTX) for $3.40 per share (for a total cost of $3624.05). On July 6, 2007, he then sold all
27 of the WFSTX shares (1065.897). The proceeds from the sale were $7066.90. Defendant
28 questions how Mr. Lee could enjoy $7066.90 in proceeds from the sale of shares despite his

1  claim that he lost $1185.41. Defendant then says that plaintiff's counsel failed to explain how
2  the discrepancy might be a result of the "average cost basis" calculation.

3  This order finds that the presumption that Mr. Lee has satisfied the lead plaintiff
4  requirements has not been rebutted for the following reasons. *First*, Mr. Lee did not sell the
5  shares during the class period. Certification under the PSLRA requires a lead plaintiff
6  candidate to provide a sworn certification that "sets forth all of the transactions of the plaintiff
7  in the security that is the subject of the complaint during the class period specified in the
8  complaint." 15 U.S.C. 78u-4(a)(2)(A)(iv). The questionnaire issued by the Court, however,
9  asked Mr. Lee to "list each transaction that you had made in the securities at issue up to the
10 present (not just during the class periods)" (Dkt. No. 31). In the instant action, the class period
11 was from November 4, 2000, through April 11, 2006, and Mr. Lee's sale of WFSTX shares
12 occurred afterwards — on July 6, 2007. Mr. Lee therefore truthfully provided information in
13 accordance with the PSLRA and the questionnaire without putting his certification at risk.

14 *Second*, the average cost basis calculation is unnecessary for calculating damages here.
15 Mr. Lee explained that the damages sought after are based on the alleged payment of kickbacks
16 to selling agents of the Wells Fargo funds. Defendant may be able to prove plaintiff wrong
17 later on. At this stage of the proceedings, however, Mr. Lee has sufficiently alleged loss.
18 The average cost basis discussion is merely a red herring, at least for now.

19 *Third*, defendant speculates that Mr. Lee did not really purchase the shares at issue.
20 It is true that Mr. Lee said that he acquired shares from one of the funds through a merger.
21 However, this can still constitute a "purchase." *See SEC v. National Securities, Inc.*, 393 U.S.
22 453, 467 (1969) ("we conclude that [the merging company's] shareholders 'purchased' shares
23 in the new company by exchanging them for their old stock"). When class certification time
24 comes in this case, however, it may be important whether or not plaintiff was steered into the
25 Wells Fargo funds rather than acquiring his shares via merger. For now, the issue is not joined.

5

**PROCEDURE FOR SELECTING AND APPROVING CLASS COUNSEL**

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. 78u-4(a)(3)(B)(v). Selection and approval of class counsel are important responsibilities for the lead plaintiff and the court. The selection and approval require an assessment of the strengths, weaknesses and experience of counsel as well as the financial burden — in terms of fees and costs — on the class. *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602–03 (N.D. Cal. 2000) (Walker, J.).

Any important decision made by a fiduciary should be preceded by due diligence. A lead plaintiff is a fiduciary for the investor class. No decision by the lead plaintiff is more important than the selection of class counsel. Consequently, the lead plaintiff should precede his or her choice with due diligence. The extent of such due diligence is a matter of judgment and reasonableness based on the facts and circumstances.

The lead plaintiff should immediately proceed to perform their due diligence in the selection of class counsel, and to interview appropriate candidates, and through counsel, move for the appointment and approval of their selected counsel no later than **SEPTEMBER 25, 2008**. The motion should be accompanied by declarations from the lead plaintiff explaining the due diligence undertaken by each with respect to the selection of class counsel. The declarations should also explain why the counsel selected was favored over other potential candidates. The declarations should be filed under seal and not served on defendants. The motion for approval of lead plaintiff's choice of counsel, however, should be served on defense counsel. No hearing will be held on the motion unless the Court determines that it would be beneficial.

Once class counsel is approved, the first order of business will be to file a consolidated complaint. This will be done by **NOVEMBER 13, 2008**. Defendant may then file a motion to dismiss (or answer) by **JANUARY 8, 2009**, any such motion to be heard on the normal 35-day track. Other deadlines for the case management conference and alternative dispute resolution are hereby **VACATED**. If lead plaintiff eventually selects counsel unfamiliar with the facts and circumstances of this case, the Court will consider giving more time for counsel to prepare.

This appointment is conditioned on Mr. Lee filing a certification in writing, **WITHIN SEVEN CALENDAR DAYS** that he has read this order and is willing and able to meet the schedule and its fiduciary obligations.

**IT IS SO ORDERED.**

Dated: August 22, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE