GILBERT R. SEROTA (No. 75305)
Email: gserota@howardrice.com
JIN H. KIM (No. 208676)
Email: jkim@howardrice.com
JEREMY T. KAMRAS (No. 237377)
Email: jkamras@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone:    415/434-1600
Facsimile:    415/217-5910

Attorneys for Defendants
WELLS FARGO & COMPANY, WELLS FARGO
FUNDS MANAGEMENT, LLC, AND WELLS
FARGO FUNDS TRUST

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EDWARD LEE, EDWARD ARSENAULT, EMIL DE BACCO, RICHARD HINTON, ARNOLD KREEK, and MARGRET MACHT, Individually And On Behalf Of All Others Similarly Situated, | No. 08-CV-1830 WHA<br><br>Action Filed:   April 4, 2008<br><br>REPLY BRIEF OF WELLS FARGO & COMPANY, WELLS FARGO FUNDS MANAGEMENT, LLC AND WELLS FARGO FUNDS TRUST IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT |
| Plaintiffs, | |
| v. | |
| WELLS FARGO & COMPANY, WELLS FARGO FUNDS MANAGEMENT, LLC, and WELLS FARGO FUNDS TRUST, | |
| Defendants. | Date:        February 26, 2009<br>Time:        2:00 pm<br>Dept:        Courtroom 9, 19th Floor<br><br>Trial Date:    TBD |

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS            08-CV-1830 WHA

**TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................ 1

I.    THIS ENTIRE ACTION IS BARRED BY THE STATUTE OF
      LIMITATIONS. ............................................................................ 1

      A.    Plaintiffs Misrepresent The Inquiry Notice Standard And Its
            Application. .................................................................... 1

      B.    Plaintiffs Run From Their Admissions And The *Siemers* Complaint,
            Distort The Remaining Public Record, And Dismiss The Publicity. ... 2

      C.    The *Siemers* Action Did Not Toll The Statute Of Limitations. ........ 6

      D.    Prospectus Disclosures At The Time The Action Was Filed Are
            Irrelevant. ...................................................................... 8

II.   THE STATUTE OF REPOSE RUNS AS TO EACH PURCHASE OF
      SECURITIES AND IS NOT SUBJECT TO TOLLING. ............................ 8

III.  PLAINTIFFS CANNOT ESTABLISH MATERIALITY BY RELYING
      ON A CUMULATIVE AMOUNT OF REVENUE SHARING THAT IS
      DE MINIMIS. ................................................................................ 9

IV.   THE *UTE* PRESUMPTION IS INAPPLICABLE WHERE PLAINTIFFS
      NEVER READ ANY OF THE STATEMENTS ALLEGED TO BE
      MISLEADING. .............................................................................. 10

V.    EXISTING LAW, SEC GUIDANCE, AND INDUSTRY PRACTICE
      PROVE THAT AN INFERENCE OF SCIENTER IS NOT
      REASONABLE OR COMPELLING. .................................................... 12

VI.   BECAUSE EXCESSIVE FEES IS AN ESSENTIAL ELEMENT OF THIS
      10B-5 CASE, FEDERAL LAW REQUIRING SPECIFICITY OF
      PLEADING MUST BE APPLIED. ...................................................... 14

VII.  THE NINTH CIRCUIT DOES NOT ALLOW 10B-5 DAMAGES THAT
      ARE UNCONNECTED TO THE DISCLOSURE OF THE ALLEGED
      FRAUD. ........................................................................................ 14

CONCLUSION ............................................................................................ 15

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972)     10, 11, 12

*AIG Retirement Servs., Inc. v. Altus Finance S.A.*, 2006 WL 5971775 (C.D. Cal. 2006)     2

*Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974)     6, 7

*Balam-Chuc v. Mukasey*, 547 F.3d 1044 (9th Cir. 2008)     9

*Benak v. Alliance Capital Mgmt. LP*, 349 F. Supp. 2d 882 (D.N.J. 2004), *aff'd*, 435 F.3d 396 (3d Cir. 2006)     3

*Berry v. Valence Tech., Inc.*, 175 F.3d 699 (9th Cir. 1999)     2

*Betz v. Trainer Wortham & Co.*, 519 F.3d 863 (9th Cir. 2008)     1, 2, 6

*Blackie v. Barrack*, 524 F. 2d 891 (9th Cir. 1975)     11

*Briskin v. Ernst & Ernst*, 589 F.2d 1363 (9th Cir. 1978)     6

*Castillo v. Dean Witter Discover & Co.*, No. 97 Civ 1272 (RPP), 1998 WL 342050 (S.D.N.Y June 25, 1998)     12, 14

*Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000)     7

*Cutsforth v. Renschler*, 235 F. Supp 2d 1216 (M.D. Fla. 2002); *accord Schlifke v. Seafirst Corp.*, 866 F.2d 935 (7th Cir. 1989)     11

*Eckstein v. Balcor Film Investors*, 58 F.3d 1162 (7th Cir. 1995)     11

*Gartenberg v. Merrill Lynch Asset Management*, 694 F.2d 923 (2d Cir. 1982)     7, 14

*Gomez v. St. Vincent Health, Inc.*, No. 1:08-cv-0153-DFH-DML, 2008 WL 5247281 (S.D. Ind. Dec. 16, 2008)     7

*Grandon v. Merrill Lynch & Co.*, 147 F.3d 184 (2d Cir. 1998)     12, 15

*Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623 (2007)     8

*Guenther v. Cooper Life Sci., Inc.*, No. C-89-1823-MHP, 1992 WL 206256 (N.D. Cal. Apr. 7, 1992)     6

*Hoffman v. UBS-AG*,—F. Supp. 2d—, No. 05 CIV 6817 LBS, 2008 WL 4684168 (S.D.N.Y. Oct. 22, 2008)     10

*In re Am. Funds Sec. Litig.*, 556 F. Supp. 2d 1100 (C.D. Cal. 2008)     1, 3, 6

*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3rd Cir. 1997)     10

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
*In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897(HB),  2006 WL 314524
(S.D.N.Y. Feb. 10, 2006), *vacated on other grounds*, 531 F.3d 190 (2d Cir. 2008)        8

4
*In re First Chicago Corp. Securities Litigation,* 769 F. Supp. 1444 (N.D. Ill. 1991)        10

5
*In re Hansen Natural Corp.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007)        10

6
*In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106 (C.D. Cal. 2003)        1, 6

7
*In re Initial Public Offering Sec. Litig.*, No. 21 MC 92(SAS), 2007 WL 2609585
(S.D.N.Y. Aug. 30, 2007)        7

8

9
*In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037 (N.D. Cal. 2008)        8

10
*In re Merrill Lynch Inv. Mgmt Funds Sec. Litig.*, 434 F. Supp. 2d 233 (S.D.N.Y. 2006)        10, 14

11
*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Lit.*, No. 03 Civ. 8208 (RO),
2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006)        13, 14

12
*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996)        1

13
*In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986 (N.D. Cal. 2007) (Alsup, J.)        8

14
*Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987)        7

15
*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2005)        4

16
*Luke v. Lincoln Nat'l. Life Ins. Co.*, No. 5:03-CV-256, 2006 WL 297761 (E.D. Tex.
Feb. 8, 2006)        4

17

18
*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2009)        13

19
*Moser v. Triarc Co., Inc.*, No. 05 cv 1742-LAB (WMC), 2007 WL 1111245 (S.D. Cal.
Mar. 29, 2007)        8

20
*Nesbit v. McNeil*, 896 F. 2d 380 (9th Cir. 1990)        15

21
*Nivram Corp. v. Harcourt Brace Jovanovich, Inc.*, 840 F. Supp. 243 (S.D.N.Y. 1993)        4

22
*Parnes v. Gateway 2000*, 122 F.3d 539 (8th Cir. 1997)        10

23
*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 552 F.3d 1049 (9th Cir. 2008)        1

24
*Rochelle v. Marine Midland Grace Trust Co.*, 535 F.2d 523 (9th Cir. 1976)        6

25
*Rosenberg v. Gould*, —F.3d—, No. 08-12392, 2009 WL 50721 (11th Cir. Jan. 9, 2009)        13

26
*SEC v. Zandford*, 535 U.S. 813 (2002)        15

27
*Sheppard v. Capital One Bank*, No. CV 06-7535 GAF, 2007 WL 5405188 (C.D. Cal.
July 11, 2007)        6

28


HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1

**TABLE OF AUTHORITIES**

2                                                                                                    **Page(s)**

3   *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981)                                         11

4   *Siemers v. Wells Fargo & Co.*, 243 F.R.D. 369 (N.D. Cal. 2007)          11, 12, 14

5   *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 2355411 (N.D. Cal.
       Aug. 14 2006)                                                                         4, 5, 8
6
    *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007)        12
7
    *Zucco Partners, LLC v. Digimarc Corp.* —F.3d—, No. 06-35758, 2009 WL 311070
8      (9th Cir. Feb. 10, 2009)                                                             12, 13

9                                             **Statutes**

10  17 CFR §240.10b-5                                                                         11

11

12

13

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendants Wells Fargo & Company, Wells Fargo Funds Management ("WFFM"), and Wells

2    Fargo Funds Trust (jointly referred to herein as "Defendants") hereby submit this Reply in support of

3    their Motion to Dismiss Plaintiffs' Amended Complaint.

4                                    **ARGUMENT**

5    **I.    THIS ENTIRE ACTION IS BARRED BY THE STATUTE OF LIMITATIONS.**

6         **A.    Plaintiffs Misrepresent The Inquiry Notice Standard And Its Application.**

7         Plaintiffs argue that a determination of inquiry notice is inappropriate on a motion to dismiss.

8    Plaintiffs' Opposition To Defendants' Motion To Dismiss ("Opp.") at 2. Not so. The Ninth Circuit and

9    its district courts repeatedly have found plaintiffs in instances like this to be on inquiry notice *as a matter*

10   *of law.*[1] Plaintiffs' reliance on *Betz v. Trainer Wortham & Co.*, 519 F.3d 863 (9th Cir. 2008), is

11   misplaced. The Plaintiffs here were not confronted with ambiguous indicia suggesting only "poor

12   financial performance." *See id.* at 878-79. Instead, Plaintiffs here had access to publicly available

13   regulatory discipline pertaining to the claims alleged here, a publicly filed complaint charging the same

14   Defendants with the same conduct alleged here, and substantial publicity of the complaint and its claims

15   thereafter.

16        Nor is it relevant that Defendants contested the allegations in *Siemers*. The Ninth Circuit in *Betz*

17   admonished litigants that there is *no* "*per se* rule that in all cases involving assurances from a [defendant]

18   to an investor, the issue of inquiry notice must go to a jury." *Betz*, 519 F.3d at 879. The Court found the

19   assurance in *Betz* of note only "in the total circumstances," which included the fact that the assurances

20   were made prior to litigation (*see id.*) and presumably while the investment advisor continued to function

21   as a fiduciary. Nor were these assurances undermined, as here, by extrinsic events such as regulatory

22   proceedings, a complaint, and disclosures.

23   _____

24        [1]*E.g., Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 552 F.3d 1049 (9th Cir. 2008) (affirming dismissal of misrepresentation and fraudulent concealment claims because the plaintiff was on inquiry

25   notice); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1411 (9th Cir. 1996) (affirming dismissal of securities claims against newly added defendants because "plaintiffs were clearly aware of or suspected fraud at

26   the time they filed their first complaint"); *In re Am. Funds Sec. Litig.*, 556 F. Supp. 2d 1100, 1111 (C.D. Cal. 2008) (dismissing securities claims and concluding that the defendants had met their "heavy

27   burden" to demonstrate that the plaintiffs were on inquiry notice); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1115 n.9, 1120-21 (C.D. Cal. 2003) (dismissing securities claims because the

28   plaintiffs were on "inquiry notice for potential fraud").

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   Plaintiffs not only mistake the relevance of *Betz*, they also misstate both prongs of the standard it

2   articulates.   Plaintiffs claim that "evidence that suggests a *possible* falsehood" is insufficient to place a

3   plaintiff on inquiry notice, and that a plaintiff must instead "discover[] facts providing evidence that

4   Defendants acted *with scienter* . . . ." Opp. at 3. That is wrong. Rather, "[a] plaintiff is on inquiry notice

5   when there exists sufficient *suspicion* of fraud to cause a reasonable investor to investigate the matter

6   further." *Betz*, 519 F.3d at 876 (emphasis added).[2]

7   Plaintiffs state that the second prong of the *Betz* standard inquires *whether* a plaintiff exercised due

8   diligence once on inquiry notice. *Id.* at 3, 10. Wrong again. Rather, "the statute of limitations on a

9   claim under §10(b) of the Securities Exchange Act begins running when the investor, in the exercise of

10   reasonable diligence, *should have* discovered the facts giving rise to his or her claim." *Betz*, 519. F3d at

11   879 (emphasis added).[3] *Betz* does not allow a plaintiff to willfully ignore facts that raise suspicion.

12   **B.   Plaintiffs Run From Their Admissions And The *Siemers* Complaint, Distort The**
    **Remaining Public Record, And Dismiss The Publicity.**

13   In addition to misplaced reliance on *Betz*, Plaintiffs understandably try to downplay the prolific

14   record of publicity giving rise to inquiry notice in this case. But try as they might, Plaintiffs cannot run

15   from their admissions. *See AIG Retirement Servs., Inc. v. Altus Finance S.A.*, 2006 WL 5971775, at *7-

16   9 (C.D. Cal. 2006) (dismissing claims on the basis of admission of actual notice in original complaint,

17   holding that the "[p]laintiff's attempt to explain away or plead around its admission is of no avail"). In

18   *Siemers*, plaintiffs alleged that "[t]he truth about Wells Fargo was revealed on June 8, 2005" when the

19   NASD issued its press release. Defendants' Request for Judicial Notice ("RJN") Ex. Z, ¶9. In this case,

20   they couch this disclosure under the heading: "***THE TRUTH BEGINS TO BE DISCLOSED.***"

21   Plaintiffs' First Amended Complaint ("FAC") ¶246.   Employing self-serving, revisionist history,

22   Plaintiffs now argue that this means only that the "scheme" "had begun to unravel" (Opp. at 7) and that

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

---

[2]Plaintiffs claim that Defendants "ignore[d]" *Betz* when they characterized this first prong as a low threshold. Opp. at 3 n.2. Defendants' meaning was clear: inquiry notice does not require complete notice of the fraud, but only reason to inquire further. *See* Defendants' Motion to Dismiss at 2-3; *see also Berry v. Valence Tech., Inc.*, 175 F.3d 699, 705 (9th Cir. 1999) ("an investor need not have full knowledge of fraud in order reasonably to be expected to investigate worrisome allegations . . . ").

[3]Plaintiffs' representation that "Plaintiffs Exercised Reasonable Diligence" (Opp. at 10) is therefore irrelevant. It is an objective, not subjective standard.

1    the press release included neither "specific alleged misrepresentations" nor "company-specific"

2    information. *Id.* at 6. Not so. The press release unmistakably implicates Wells Fargo affiliates and

3    "mutual fund complexes" that used "assets of the mutual funds" to pay "extra" or "revenue sharing"

4    fees. RJN Ex. A. If Plaintiffs had reviewed their prospectuses, this would have been sufficient to put

5    them on inquiry notice.[4]  Apart from the press release, *Siemers* alleged that "the *full extent* of

6    Defendants' conflicts of interests were revealed" by December 2005 when the "Disclosure Statement"

7    was "publicly circulated." *Id.* Ex. Y, ¶65 (emphasis added). And in this case, Plaintiffs again allege that

8    this "Disclosure Statement" revealed that WFFM had made the payments at issue, and that these

9    payments, which created a potential conflict of interest, had not been previously disclosed. FAC ¶247.

10   Although Plaintiffs take issue with the lack of "evidence" concerning the publication of this document

11   (*but see* p. 5, *infra*), they *do not contest* that it was sufficient to put Plaintiffs on inquiry notice.

12        Plaintiffs can no more avoid the significance of the November 2005 complaint in *Siemers*. The

13   fact that there were plaintiffs who had access to sufficient, publicly available information to file a

14   complaint under the PSLRA's heightened standards—including allegations of scienter—against

15   Defendants alleging the same cause of action as here on the basis of materially identical allegations is

16   dispositive evidence that a reasonable investor, in the course of due diligence, could have discovered the

17   alleged fraud. *See* Defendants' Motion to Dismiss ("Opening Br.") at 5-6 (citing cases); *see also Benak*

18   *v. Alliance Capital Mgmt. LP*, 349 F. Supp. 2d 882, 892 (D.N.J. 2004), *aff'd*, 435 F.3d 396 (3d Cir.

19   2006) (existence of an earlier-filed complaint reinforced the Court's opinion that the limitations period

20   was triggered). Plaintiffs ignore these cases except for *In re American Funds*. As to that case, they

21   argue that it was incorrectly decided because the earlier-filed complaint did *not* include a 10b-5 claim

22   and did not disclose that the defendants had acted with scienter. *See* Opp. at 8 n.4. But the facts here are

23   much stronger: the first-filed complaint in *Siemers did* include a 10b-5 claim and allegations of scienter.

24   *See, e.g.*, RJN Ex. Z, ¶¶145-54.

25

26   [4]Plaintiffs also seek to distinguish the NASD release because "Wells Fargo disclosed to regulators
     less that one-third of the revenue sharing actually paid." Opp. at 5. Even if correct, this gratuitous
27   comment, which Plaintiffs felt compelled to make twice in the same paragraph, is irrelevant. The press
     release did not disclose the revenue sharing totals at all, so no alleged underreporting could have been
28   communicated to investors.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    The complaint in *Siemers* is independently significant because the complaint and ensuing publicity

2    further put Plaintiffs on inquiry notice.  In opposition, Plaintiffs first argue that "the filing of a prior class

3    action lawsuit does not as a matter of law put plaintiffs on inquiry notice."  Opp. at 8.  But the cases cited

4    by them either do not involve a complaint that alleges the *same* claim against the *same* defendants as a

5    later-filed complaint, or do not involve a complaint as well publicized as was *Siemers*.  *Livid Holdings*

6    *Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 951 (9th Cir. 2005) (bankruptcy petition alone "seems

7    unlikely" to constitute inquiry notice of securities violations because "financial problems alone are

8    generally insufficient to suggest fraud"); *Luke v. Lincoln Nat'l. Life Ins. Co.*, No. 5:03-CV-256, 2006

9    WL 297761, at \*5 (E.D. Tex. Feb. 8, 2006) (comparing publicity of first-filed action, apparently limited

10   to the filing of the suit and SEC filings, against cases involving greater publicity); *Nivram Corp. v.*

11   *Harcourt Brace Jovanovich, Inc.*, 840 F. Supp. 243, 254 (S.D.N.Y. 1993) (suggesting prior-filed suits

12   were "not highly publicized").

13   Plaintiffs also argue that the first-filed complaint in *Siemers* did not contain allegations sufficient

14   to establish scienter.  Opp. at 7 n.3; *see also id.* at 8-9.  This self-serving interpretation is as astounding as

15   it is baseless.  Defendants were named parties (RJN Ex. Z, ¶¶15-16, 25); Defendants were alleged to

16   have violated Rule 10b-5 and the corresponding control person provision (*id.* ¶¶145-54, 165-69); and at

17   least half of the "substantive allegations" in the first-filed complaint are devoted to the alleged "improper

18   conduct" of WFFM (and the sub-adviser).  *Id.* ¶¶82-123.  The core allegations here—including

19   scienter—were alleged against Defendants in the first-filed complaint.  *E.g., id.* ¶¶1-2, 3-4, 7-8, 59, 63-

20   66, 79, 81, 91, 146-50, 173.  Plaintiffs in *Siemers* even characterized the first-filed complaint in the

21   accompanying press releases in almost identical terms as Plaintiffs characterize this action.  *Compare*

22   RJN Ex. AA at Ex. B *with* FAC ¶3.

23   Defendants in *Siemers* did argue that Plaintiffs failed to adequately plead scienter (*see* Opp. at 8),

24   but this Court held otherwise.  And although the Court did so after the filing of amended complaints, its

25   reasoning was applicable to the first-filed complaint: "The fact that defendants had the incentive

26   programs in place indicates that they believed these programs would drive sales.  In light of this

27   conscious strategy, the failure to disclose the full extent of the payback programs raises a strong

28   inference of scienter."  *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 2355411, at \*9

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS          08-CV-1830 WHA

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   (N.D. Cal. Aug. 14 2006). Nothing in this reasoning, as Plaintiffs contend, necessarily relied on

2   "allegations based on confidential sources not found in the original *Siemers* complaint." *See* Opp. at 9

3   n.6. Nor is it relevant that, in Plaintiffs' view, "this Court heavily relied on the incomplete and

4   misleading disclosures in the Wells Fargo funds prospectuses detailed in the Third Amended Complaint

5   in [thereafter] finding that scienter had been adequately alleged." *Id.* at 9. All of those prospectuses

6   were at issue from the outset, and at all times publicly available.

7       Plaintiffs seek to minimize the extent and importance of this mountain of information that was

8   publicly available as of 2005. Plaintiffs imply that the "Disclosure Statement" was not widely

9   publicized until August 2006 (*id.* at 10) and that the *Siemers* complaint filed with the SEC may not have

10  been publicly accessible. *Id.* at 9-10. As for the "Disclosure Statement," Plaintiffs themselves allege

11  that it was "issued" in December 2005 (FAC ¶247), and in the Third Amended Complaint in *Siemers*,

12  alleged that it was then "publicly circulated." RJN Ex. X, ¶258. The SEC website (of which the Court

13  may take judicial notice), confirms that the complaint is now publicly available. *See*

14  http://idea.sec.gov/Archives/edgar/vprr/05/9999999997-05-050326. Plaintiffs make no contention that

15  the website differed in 2005. Nor can they. The stamp in the lower-left corner of Exhibit FF of the RJN

16  shows that Thomson Financial "processed" the document on or around December 28, 2005 and confirms

17  that the complaint was then publicly accessible.

18      Plaintiffs also do not contest that the *Siemers* complaint was available through their counsel's

19  website in late 2005. Opening Br. at 4 (citing RJN Ex. AA at B). Nor can they contest that the NASD

20  press release and *Siemers* complaint were widely publicized, over the span of six months, in public

21  filings and repeated releases through news outlets, including trade reports, financial publications and

22  mainstream periodicals. *Id.* at 3-5 (citing examples).

23      Instead, Plaintiffs argue that mass media and trade reports do not generally place investors on

24  inquiry notice as a matter of law. Opp. at 6, 10. But unlike the typical article, the releases publicizing

25  the *Siemers* complaint were, pursuant to the PSLRA, targeted to reach putative class members, and in a

26  manner later approved by the Court. *See* Opening Br. at 2-3. Plaintiffs also fail to address the case-law

27  to the contrary. *E.g.*, *id.* at 3. Even the cases on which they rely permit a finding of inquiry notice within

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    a reasonable period following publication where, as here, the coverage is extensive.[5]  The cumulative

2    effect of the publication here was sufficient to put Plaintiffs on inquiry notice.  *See Infonet Servs Corp.*

3    *Sec. Litig.*, 310 F. Supp. 2d 1106, 1114 (C.D. Cal. 2003); *In re Am. Funds Sec. Litig.*, 556 F. Supp. 2d

4    1100, 1109-10 (C.D. Cal. 2008).  Had a reasonable investor thereafter exercised due diligence he or she

5    would have discovered the facts giving rise to his or her claim.  *See Betz*, 519 F3d at 879.[6]

6    **C.    The *Siemers* Action Did Not Toll The Statute Of Limitations.**

7            Plaintiffs concede that the statute of limitations is not tolled as to a successive class action where

8    plaintiffs in the second action seek to relitigate the correctness of a previous denial of class certification.

9    Opp. at 11-12.  Because this Court denied certification of the broad proposed class in *Siemers* on the

10   ground that it was unmanageable (RJN Ex. GG at 10-11), Plaintiffs now argue that the class proposed in

11   this action is "a different and narrower class."  Opp. at 12.  This is absurd.  The proposed class here seeks

12   to include purchasers of all but three of the dozens of funds included within the proposed class in

13   *Siemers*.  FAC ¶249.  And whereas the proposed class periods in *Siemers* and here both begin on

14   November 4, 2000, the proposed class period here extends *ten months longer* than that in *Siemers*.

15   *Compare id.* ¶249 *with* RJN Ex. HH at 1; *see also* Opp. at 13 n.7.[7]  In any event, even if the proposed

16   class here were narrower, tolling still would not be appropriate.  *Sheppard v. Capital One Bank*, No. CV

17   06-7535 GAF, 2007 WL 5405188 (C.D. Cal. July 11, 2007) (refusing to apply tolling doctrine for "a

18   California subclass that is narrower than the original, proposed nationwide class").

19
20          [5] *See, e.g., Briskin v. Ernst & Ernst*, 589 F.2d 1363, 1367 (9th Cir. 1978) (holding, as a matter of
     California law, that it is not necessarily the case "that a reasonably prudent person will read all trade
21   papers *on the date they are received*") (emphasis added); *Rochelle v. Marine Midland Grace Trust Co.*,
     535 F.2d 523, 532 (9th Cir. 1976) ("Information in public records or published by the news media may
22   be so massive that investors will not be heard to say that they remained ignorant of the financial plight of
     the corporation involved"); *Guenther v. Cooper Life Sci., Inc.*, No. C-89-1823-MHP, 1992 WL 206256,
23   at *6 (N.D. Cal. Apr. 7, 1992) (distinguishing case from those that involve "very extensive coverage by
     the mass media of the precise information allegedly withheld by the defendant").

24          [6] Plaintiffs claim that because the class period in *Siemers* ended on June 8, 2005, putative class
     members in this action, who have claims arising thereafter, cannot be said to have been on inquiry
25   notice.  Opp. at 7.  But the reasonable investor, aware of alleged fraud spanning five years, would, in the
     exercise of due diligence, investigate whether such misconduct may have continued thereafter, and
     would have then discovered facts giving rise to any claim.

26          [7] At a minimum, then, tolling for those that purchased Wells Fargo funds after June 8, 2005 is
27   inappropriate.  *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("the commencement of a class
     action suspends the applicable statute of limitations as to all asserted members of the class who would
28   have been parties had the suit been permitted to continue as a class action").

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    In order to succeed on class certification where they failed before, Plaintiffs suggest subdividing

2    the proposed class into nine subclasses. Opp. at 12. That, however, does not change the broad scope of

3    the proposed class or the fact that it is properly labeled as a successive class action. The same

4    manageability concerns that caused the Court to substantially narrow the proposed class in *Siemers*

5    remain. The class as a whole would still include purchasers in over 70 mutual funds. FAC ¶249. Even

6    if the class is divided into nine subclasses for trial, the Court still would be tasked with presiding over

7    nine separate trials involving multiple mutual funds with multiple cost structures, performance

8    characteristics, returns on investment, and other unique and separate facts. As this Court found, the

9    "multiple *Gartenberg* factors" would still have to be weighed, "fund by fund, fee by fee." RJN Ex. GG

10   at 10. "And, the varying prospectuses . . . would [remain] a mess to track, even more so to track and to

11   overlay on the fee scenarios." *Id.* at 10-11

12       Contrary to Plaintiffs' assertion, this is not the "scenario left open in *Korwek*" (*see* Opp. at 12),

13   where the Second Circuit reserved "for another day the question of whether the filing of *a* potentially

14   proper subclass would be entitled to tolling under *American Pipe.*" *Korwek v. Hunt*, 827 F.2d 874, 879

15   (2d Cir. 1987) (emphasis added). Plaintiffs are not seeking to certify *a* subclass, but rather *nine*

16   subclasses that, in combination, are as large as (if not larger than) the class that this Court refused to

17   certify in *Siemers*. Plaintiffs also misstate the holding of *In re Initial Public Offering Sec. Litig.*, No. 21

18   MC 92(SAS), 2007 WL 2609585 (S.D.N.Y. Aug. 30, 2007). The court there did not "allow" tolling as

19   to successive class actions. The question was whether, following an order vacating class certification in

20   six "focus cases," the "statute of limitations as to the absent putative class members' *individual claims*

21   continues to be tolled . . . ." *Id.* at *1 (emphasis added).

22       Plaintiffs' argument is without any authority, and in fact, is in direct contravention of Ninth Circuit

23   law. *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1147 (9th Cir. 2000). Plaintiffs therefore devote

24   much ink to policy arguments (Opp. at 11-14), and in so doing, rely extensively on *Gomez v. St. Vincent*

25   *Health, Inc.*, No. 1:08-cv-0153-DFH-DML, 2008 WL 5247281 (S.D. Ind. Dec. 16, 2008) (a lower court

26   case that departs from the rulings of every Circuit, including the Ninth). The policy arguments raised by

27   Plaintiffs have all been considered by the Ninth Circuit. *See Catholic Soc. Servs., Inc.*, 232 F.3d at 1146-

28   49. In any event, they are of limited impact on these facts; the certification order in the *Siemers* Action

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS          08-CV-1830 WHA

1    was entered on June 1, 2007 (RJN Ex. GG), leaving Plaintiffs several months in which to timely file

2    another action even absent tolling.

3         **D.    Prospectus Disclosures At The Time The Action Was Filed Are Irrelevant.**

4         Plaintiffs assert that because Defendants allegedly continued to make inadequate disclosures at the

5    time this action was filed, it cannot be time-barred. Opp. at 14-15. Neither case on which Plaintiffs rely

6    involves securities claims or even remotely supports Plaintiffs' position.[8] This Court has held, "the

7    statute of limitations [for a 10b-5 claim] accrues as of when the violation itself occurs, not when the last

8    violation in a series of alleged violations occur." *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d

9    986, 1014 (N.D. Cal. 2007) (Alsup, J.). The Court therefore rejected the argument that "the statute of

10   limitations for the entire scheme should be tolled from the last misleading statement . . . ." *Id.* Plaintiffs

11   seek to distinguish *Zoran* on the ground that stock-option backdating cases "do not involve a continuous

12   scheme," but fail to explain how misrepresentations made over the course of 9 years, pursuant to 3 plans

13   (*id.* at 1004-06), is any less a "continuous scheme" than the conduct alleged here.

14   **II.   THE STATUTE OF REPOSE RUNS AS TO EACH PURCHASE OF SECURITIES AND
         IS NOT SUBJECT TO TOLLING.**

15

16        Plaintiffs argue that the statute of repose also does not begin to run until the last alleged

17   misrepresentation. Opp. at 14. This Court held otherwise in *Siemers*, 2006 WL 2355411, at *13. *See

18   also In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1051 (N.D. Cal. 2008). Even the

19   case on which Plaintiffs rely for the contrary position supports Defendants. There, the court permitted

20   plaintiff to sue on the basis of a statement first made more than five years before the action, but only

21   because the "plaintiff purchased the bonds at issue less than five years before filing suit." *In re Dynex

22   Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897(HB), 2006 WL 314524, at *5 n.4 (S.D.N.Y. Feb. 10, 2006),

23   *vacated on other grounds*, 531 F.3d 190, 192, 197 (2d Cir. 2008).

24

25        [8]*Moser v. Triarc Co., Inc.*, No. 05cv1742-LAB (WMC), 2007 WL 1111245, at *2-3 (S.D. Cal.
     Mar. 29, 2007) (holding that under California law, counts based on republications of defamatory remarks
26   within the limitations period were not time-barred, even if separately pled count based on original
     publication was time-barred); *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 635-38 (2007)
27   (declining to adopt presumption that plaintiffs know that smoking is addictive or harmful because some
     plaintiffs may have reasonably relied on misrepresentations by tobacco companies).
28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS          08-CV-1830 WHA

1    Plaintiffs also claim that the statute of repose was tolled, but cite to no Ninth Circuit authority in

2    support of this proposition.  Nor is there any.  Ninth Circuit law is clear that statutes of repose are not

3    subject to tolling, but rather "act as the endpoint of the definite time period in which Congress would

4    permit [claims to be made]." *Balam-Chuc v. Mukasey*, 547 F.3d 1044, 1049 (9th Cir. 2008) (quotations

5    marks and citation omitted).

6    **III.   PLAINTIFFS CANNOT ESTABLISH MATERIALITY BY RELYING ON A**

7    **CUMULATIVE AMOUNT OF REVENUE SHARING THAT IS DE MINIMIS.**

8    Plaintiffs concede that their Complaint does not allege *any* financial impact that revenue sharing

9    had on the performance of *any investment* by *any plaintiff* in *any of the Wells Fargo mutual funds*.

10   Instead of alleging a financial impact that a reasonable investor would care about, Plaintiffs essentially

11   argue that it is per se material for 10b-5 purposes if more than 70 mutual funds (identified at FAC ¶249)

12   paid a *cumulative amount* of $350 million over the *five-year, five-month* class period alleged in the

13   Complaint.  Opp. at 15. (The remainder of the Opposition's section on "materiality" deals with the

14   alleged duty to disclose, which is not relevant materiality)[9]

15   Plaintiffs theory is not sufficient to plead materiality and does not withstand financial analysis

16   when put in the context of Plaintiffs' allegation that all the Wells Fargo funds comprised over $500

17   billion in invested assets per year.  FAC ¶17.  On an average per year basis, the $350 million allegedly

18   used to fund revenue sharing is no more than $70 million per year for a five-year class period (rather

19   than the five year, five months alleged in the Complaint).  Compared to the $500 billion in invested

20   assets, that $70 million represents only .014% or $.00014 per $1 invested per year.  Even assuming that

21   the performance of each fund was so successful that each returned profits of 10% per year per dollar

22   invested, the impact of revenue sharing on a dollar invested would be less than $.000014 per year.  This

23   analysis shows why Plaintiffs have failed and refused to allege the financial impact of revenue sharing

24

25   [9]Plaintiffs' irrelevant assertions about a duty to disclose revenue sharing are wrong.  They *ignore*

26   the numerous court cases cited in our Motion that analyze then-existing regulations governing
     prospectus and SAI disclosure (Opening Br. at 10, 16-18) and find no recognized duty to disclose

27   revenue sharing in any more than conclusory terms adequate to put an investor on sufficient notice to
     inquire of the broker selling him the fund.  Further, each regulatory order cited by Plaintiffs is principally

28   founded upon "directed brokerage," a practice not at issue here.  Opp. at 16-17.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   by WFFM on any mutual fund for any year or on any plaintiff's investment in any Wells Fund: the

2   amounts are de minimis and it would not be reasonable to claim that an investor would find such

3   disclosure important.

4       We are aware of no 10b-5 case finding such a negligible financial impact to be material. The

5   Eighth Circuit has held that a misrepresentation or omission affecting as much as 2% of a company's

6   assets "would not matter to a reasonable investor" and was immaterial as a matter of law. *Parnes v.*

7   *Gateway 2000*, 122 F.3d 539, 547 (8th Cir. 1997) (finding an alleged overstatement of assets in the

8   amount of $6.8 million to be immaterial as a matter of law because it was only 2% of Gateway's total

9   assets). Lower court courts have followed suit in revenue sharing cases. *See, e.g., Hoffman v. UBS-*

10   *AG*,—F. Supp. 2d—, No. 05 CIV 6817 LBS,  2008 WL 4684168, at *7 (S.D.N.Y. Oct. 22, 2008)

11   (dismissing shelf space claims on grounds including that the additional commissions, in the range of .09-

12   1.0%, are not material); *In re Merrill Lynch Inv. Mgmt Funds Sec. Litig.*, 434 F. Supp. 2d 233, 238

13   (S.D.N.Y. 2006) (revenue sharing paid by fund held "immaterial").

14      Cases outside the context of revenue sharing reach the same result. "When the financial import of

15   alleged misstatements is *de minimis*, those alleged misstatements are immaterial as a matter of law." *In*

16   *re Hansen Natural Corp.*, 527 F. Supp. 2d 1142, 1161 (C.D. Cal. 2007). In *In re First Chicago Corp.*

17   *Securities Litigation,*769 F. Supp. 1444, 1454 (N.D. Ill. 1991), the Court found that a $250 million loan-

18   related non-disclosure was not material in the context of a total commercial loan portfolio of $20.561

19   billion. And, in *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1427 (3rd Cir.

20   1997), the Court found that a disclosure impact of 0.2% of total costs "would have had no more than a

21   negligible impact on a reasonable investor's prediction of the firm's future earnings . . ." and "can be

22   ruled immaterial as a matter of law." In *Hansen*, the Court dismissed 10b-5 allegations on materiality

23   (and other) grounds, finding a failure "to quantify the financial impact" of the alleged nondisclosure of

24   option backdating. 527 F. Supp 2d at 1161. The same result is required here.

25   **IV.   THE *UTE* PRESUMPTION IS INAPPLICABLE WHERE PLAINTIFFS NEVER READ**
26         **ANY OF THE STATEMENTS ALLEGED TO BE MISLEADING.**

27       The Opposition does not argue that any of the Plaintiffs actually read any of the prospectuses or

28   SAIs at issue. This is an astounding concession, given that Plaintiffs also concede that the "fraud on the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    market" doctrine does not apply.  Although the Opposition relies exclusively on the *Ute* presumption to

2    avoid pleading reliance, it fails to distinguish either the 5th Circuit (*Shores v. Sklar*, 647 F.2d 462 (5th

3    Cir. 1981)) or 7th Circuit (*Eckstein v. Balcor Film Investors*, 58 F.3d 1162 (7th Cir. 1995)) holdings that

4    the *Ute* presumption *does not apply* where, as here, a plaintiff does not claim to have read or otherwise

5    received an allegedly misleading statement.

6           Under the express language of Rule 10b-5, an *omission* to state a material fact is actionable only

7    when the omitted fact is "necessary in order to make the misstatements made, in the light of the

8    circumstances under which they were made, not misleading."  17 CFR §240.10b-5.[10]   Because the 10b-

9    5 cause of action for omissions requires a misleading statement, the *Ute* presumption cannot be applied

10   unless the plaintiff actually received, i.e. read or heard, the allegedly misleading statement.  If there is

11   such receipt, then the materiality of omitted facts can supply the element of reliance.  In *Ute*, the

12   misleading statements were made orally to the plaintiffs and the purpose of the presumption was to avoid

13   plaintiffs having to prove what they might have done if they had received the allegedly omitted material

14   facts. But if the plaintiff never received a misleading statement in the first place, *Ute* cannot excuse a

15   failure to allege reliance.

16          Plaintiffs cite no authority for their position aside from *Siemers*.  With all respect to this Court,

17   Plaintiff's reliance on *Siemers* is misplaced.  First, this is *not* a motion for class certification, as was the

18   type of order on appeal in *Blackie v. Barrack*, 524 F. 2d 891 (9th Cir. 1975), which was cited by

19   *Siemers* in the context of class certification.  *Siemers v. Wells Fargo & Co.*, 243 F.R.D. 369, 374 (N.D.

20   Cal. 2007).  This is a motion to dismiss, which raises the question of whether *any named plaintiff* can

21   state *an individual* cause of action.  In the absence of the fraud-on-the-market doctrine, if a named

22   plaintiff cannot prove he received a misleading statement from a defendant, then he cannot state a claim

23   based on an omission.

24

25

---

26          [10]Under Rule 10b-5, "it is not enough to be actionable for a defendant simply to omit information
     potentially of interest to investors, but rather the omission must render statements actually made
27   misleading."  *Cutsforth v. Renschler*, 235 F. Supp.2d 1216, 1230 (M.D. Fla. 2002); *accord Schlifke v.
     Seafirst Corp.*, 866 F.2d 935, 944 (7th Cir. 1989).
28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1      Second, we disagree with *Siemers'* reliance in 2006 on *Grandon v. Merrill Lynch & Co.,* 147 F.3d

2   184, 192-94 (2d Cir. 1998), at least as to WFFM, which is not a retail stock broker.  *Grandon* was

3   relevant only to the defendant brokerage firms in *Siemers,* because *Grandon* involves excessive markups

4   by brokers dealing directly with their clients.  There, the Second Circuit reversed the lower court on the

5   issue of a broker's duty to disclose mark-ups on municipal bonds to its own customers.  In *Grandon,*

6   there is no discussion of reliance, no allegations of omissions from a prospectus or other public filings,

7   and the *Ute* presumption was not discussed, much less applied.

8   **V.    EXISTING LAW, SEC GUIDANCE, AND INDUSTRY PRACTICE PROVE THAT AN
        INFERENCE OF SCIENTER IS NOT REASONABLE OR COMPELLING.**

9

10      *Tellabs Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499 (2007), was issued after this Court's

11  opinions in *Siemers.*  It requires that the Court examine the entire context of the allegations in the

12  Complaint to determine if there is a plausible inference opposing scienter, *e.g.,* that defendant acted with

13  less than a mental intent to deceive.  127 S. Ct. at 2513.[11]  The Opposition's discussion of scienter

14  ignores the regulatory and case history set forth in our Opening brief.  It *fails to dispute* that (1) during

15  the entire class period, the SEC and Congress were fully aware of the widespread practice of revenue

16  sharing and did not require specific disclosure in prospectuses or SAIs; (2) relying on an SEC amicus

17  brief, the Second Circuit held in 2000 that nothing more than "notice" disclosure of revenue sharing was

18  required; and (3) several persuasive cases since then have found "notice" disclosure of revenue sharing

19  to be adequate.  *See* Opening Br. at 17-18.[12]  The record filed with this Motion gives the Court ample

20  basis to draw an inference that Wells Fargo's disclosures were not adopted and issued with a conscious

21  intent to deceive.

22

23      [11]The Ninth Circuit has stated that "*Tellabs* calls into question a methodology that relies
    exclusively on a segmented analysis of scienter" and that the Circuit's prior approach "is not sufficient."
24  *Zucco Partners, LLC v. Digimarc Corp.* —F.3d—, No. 06-35758, 2009 WL 311070, at *6 (9th Cir. Feb.
    10, 2009).

25      [12]In 1998, the Court in *Castillo v. Dean Witter Discover & Co.,* No. 97 Civ 1272 (RPP), 1998 WL
26  342050, at *9 (S.D.N.Y June 25, 1998), rejected the notion that a mutual fund prospectus should have
    disclosed details about the use of an advisor's fees to pay incentive compensation to brokers: "[I]t is for
27  the SEC or Congress, not this Court, to create a definition of the extent and nature of such a duty to
    disclose."  As we know, the SEC never acted beyond advising the Second Circuit that mere "notice"
28  disclosure was sufficient.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    As an apparent diversion, Plaintiffs devote their Opposition to the unsurprising proposition that

2    WFFM and its employees *knew* they were engaging in revenue sharing and *knew* the content of their

3    prospectus disclosures.  Opp. at 20-23.  Of course.  Revenue sharing was an industry-wide practice and

4    Wells Fargo's disclosures comported with industry practice at the time.  Under recent Ninth Circuit

5    authority, the fact that Wells engaged in the practice and issued its now-challenged disclosures is

6    insufficient to establish a knowing intent to deceive.  Instead, there must be allegations of wrongful

7    intent by someone acting for the defendant at the time of the disclosures.  *Metzler Inv. GMBH v.*

8    *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2009) (defendants' use of an erroneous

9    accounting and disclosure methodology does not amount to scienter unless defendant "admitted or was

10   aware that the practice was improper.")[13]   This Complaint contains no allegations of conscious

11   wrongdoing.  Nor does it allege that any individual officer or director received any personal benefit or

12   had any personal motive for wrongdoing.

13       Plaintiffs improperly suggest that the Court can find scienter by hindsight, *i.e.*, by deciding that

14   disclosures were insufficient years after they were made.  Just last month, in *Rosenberg v. Gould*, —

15   F.3d—, No. 08-12392, 2009 WL 50721 (11th Cir. Jan. 9, 2009), the Eleventh Circuit applied the

16   principles of *Tellabs* and dismissed a 10b-5 claim against a company's CEO who had received

17   intentionally backdated options because there was no red flag alerting him that a failure by his company

18   to disclose the added expense of the options would have caused a material misstatement of the

19   company's financial condition.  Likewise, Wells Fargo had no notice from Congress, the regulators, or

20   the Courts that its disclosures were insufficient.  *See In re Morgan Stanley & Van Kampen Mut. Fund*

21   *Sec. Lit.*, No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *11 (S.D.N.Y. Apr. 18, 2006) (it cannot be

22   conscious misbehavior or recklessness to fail to disclose information in a prospectus not required by

23   SEC regulations).

24       Under post-*Tellabs* cases, the allegations that WFFM knew it was engaged in revenue sharing and

25   knew the content of its disclosures do not properly plead scienter.

26   _____

27   [13]In *Zucco*, the Ninth Circuit also refused to infer scienter from the fact that executives chose to use a lower uniform scrap rate for financial disclosure, even in the face of internal dissension on the issue. Like *Metzler* and this case, the missing element was consciousness of wrongdoing.

28

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN

## VI.   BECAUSE EXCESSIVE FEES IS AN ESSENTIAL ELEMENT OF THIS 10B-5 CASE, FEDERAL LAW REQUIRING SPECIFICITY OF PLEADING MUST BE APPLIED.

Under *Siemers*, each fee paid to the advisor "must be judged under the excessiveness factors set forth in *Gartenberg* . . . ." 243 F.R.D. at 374. Given that it is essential to Plaintiffs' '34 Act case *to prove* excessive fees under *Gartenberg*, there is no legal basis to exempt this element of the case from the pleading requirements of Rule 9(b) and the Reform Act.

## VII.   THE NINTH CIRCUIT DOES NOT ALLOW 10B-5 DAMAGES THAT ARE UNCONNECTED TO THE DISCLOSURE OF THE ALLEGED FRAUD.

The Opposition clearly shows that Plaintiffs have alleged no damages that are recoverable under Rule 10b-5. Although the Complaint alleges in conclusory fashion that defendants' conduct caused the price of the mutual funds to be "artificially inflated" and "distorted," the Opposition fails to point to any allegations identifying the specific mutual funds whose price was inflated, the amount of the alleged inflation in price, the date range of the price inflation, or when and how the inflation was related to any nondisclosure. In short, they fail to allege any damages that are within the scope of 10b-5 recovery.

Plaintiffs concede that the amount of alleged damages caused by revenue sharing would not be reflected as a change in the price of their mutual funds following disclosure of the practice. Instead, quoting from *Siemers*, they claim that the corpus of each mutual fund—irrespective of purchases and sales—would have "been greater, thus saving investors money and increasing their return on their investment." Opp. at 24.[14] The problems with this unique approach to damages under 10b-5 are (1) a reduction in the assets held by a mutual fund (or the assets of a traded company) has *never* been deemed recoverable under Rule 10b-5; and (2) none of these alleged damages are pleaded with any degree of specificity as to any fund for any year.[15]

Even though *Siemers* based its loss causation and damages analysis on Ninth Circuit churning cases (243 F.R.D. at 374-75), the Opposition fails to address the fact that the Ninth Circuit limited the

---

[14] This damages approach has been expressly rejected in other mutual fund revenue sharing cases, including *Castillo v. Dean Witter Discover*, *In re Morgan Stanley*, and *Van Kampen*, *supra*.

[15] In a similar "shelf space" case, the Court rejected damages allegations like those here on the grounds that "plaintiffs have not tied the investment performance of any fund to the alleged mis-representations and omissions." *In Re Merrill Lynch Inv. Mgmt. Funds Litig.* 434 F. Supp. 2d at 238.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    loss causation exemption in *Nesbit v. McNeil*, 896 F. 2d 380 (9th Cir. 1990), to cases *not* involving

2    misrepresentations or omissions.  *See* Opening Br. at 24.  Aside from citing to *Siemers*, Plaintiffs resort

3    to arguing that the "general objective of the federal securities laws" permits this Court to craft damages

4    theories even if they are outside Circuit Court and Supreme Court authority.  Opp. at 25.  They are

5    wrong.  All three cases cited by Plaintiffs—*Nesbit, Grandon* and *SEC v. Zandford,* 535 U.S. 813

6    (2002)—are inapplicable.  *Nesbit* and *Grandon* deal solely with damages arising from charges imposed

7    directly by a retail broker on his client—in one case excessive commissions caused by churning the

8    customer's brokerage account and, in the other case, excessive mark-ups charged directly to the

9    customer on municipal bond transactions.  Neither case involves purchasers of mutual funds (whose only

10   direct contact with the issuer would have been by prospectus) and neither case arises from

11   misrepresentations or non-disclosures in a prospectus or other public filing.  We are aware of no case

12   beside *Siemers* that has imported these limited theories into the non-disclosure context, as Plaintiffs seek

13   to do here.  *Zandford* did not even involve damages.  It was an SEC enforcement action that did not seek

14   civil damages.

15                                    **CONCLUSION**

16        For each of these separate and independent grounds, the Amended Complaint should be dismissed

17   with prejudice.

18   DATED: February 12, 2009.              Respectfully,

19                                          GILBERT R. SEROTA
                                            JIN H. KIM
20                                          JEREMY T. KAMRAS
                                            HOWARD RICE NEMEROVSKI CANADY
21                                               FALK & RABKIN
                                            A Professional Corporation
22

23                                          By:  _____ /s/ Gilbert R. Serota _____
                                                      GILBERT R. SEROTA
24
                                            Attorneys for Defendants WELLS FARGO &
25                                          COMPANY, WELLS FARGO FUNDS
                                            MANAGEMENT, LLC, AND WELLS FARGO FUNDS
26                                          TRUST

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*