**REESE RICHMAN LLP**
Michael R. Reese (Cal. State Bar. No. 206773)
875 Avenue of the Americas
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 573-4272

- and –

**WHATLEY DRAKE & KALLAS, LLC**
Deborah Clark Weintraub
Elizabeth Rosenberg
1540 Broadway, 37th Floor
New York, New York 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EDWARD LEE, EDWARD ARSENAULT, EMIL DE BACCO, RICHARD HINTON, ARNOLD KREEK, and MARGARET MACHT,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO FUNDS MANAGEMENT, LLC, WELLS FARGO FUNDS TRUST,<br><br>Defendants. | No. CV-08-1830 RS<br><br>**PLAINTIFFS' MOTION FOR RECONSIDERATION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declaration of Deborah Clark-Weintraub and [Proposed] Order Filed Concurrently]<br><br>Hearing Date: January 20, 2011<br>Time: 1:30 p.m.<br>Courtroom: 3, 17th Floor<br><br>Honorable Richard Seeborg |

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ISSUES TO BE DECIDED (CIVIL LOCAL RULE 7-4(A)(3)) ................................................................................................ 1

I.   INTRODUCTION ............................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................................ 5

    A.   The *Siemers* Action ............................................................................................ 5

    B.   The *Kreek* Action ............................................................................................... 9

III. ARGUMENT ................................................................................................................... 10

    A.   Standard ............................................................................................................. 10

    B.   The Class Allegations Against the Defendants in This Case Are Timely Because the Facts Necessary to Allege Defendants' Scienter Were Not Publicly Disclosed More Than Two Years Prior To the Filing of This Action ........................................ 11

IV.  CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*In re American Funds Sec. Litig.*,
   556 F. Supp. 2d 1100 (C.D. Cal 2008) .................................................................. 1, 10, 11

*Betz v. Trainer Wortham & Co.*,
   610 F.3d 1169 (9th Cir. 2010) ...................................................................................... 1, 11

*Betz v. Trainer Wortham & Co., Inc.*,
   519 F.3d 863 (9th Cir. 2008) ............................................................................................ 10

*In re Impax Labs, Inc.*,
   No. C 04-04802 JW, 2008 U.S. Dist. LEXIS 104485 (N.D. Cal. Apr. 17, 2008) ................. 10

*Merck & Co., Inc. v. Reynolds*,
   130 S. Ct. 1784 (2010) ............................................................................................ *passim*

*Postal Service Bd. of Governors v. Aikens*,
   460 U.S. 711, 176 (1983) ................................................................................................. 11

*Sch. Dist. No. 1J, Multnomah County v. Acands, Inc.*,
   5 F.3d 1255 (9th Cir. 1993) .............................................................................................. 10

*Siemers v. Wells Fargo & Co.*,
   243 F.R.D. 369 (N.D. Cal. 2007) ........................................................................................ 9

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518 WHA, 2006 U.S. Dist. LEXIS 81097 (N.D. Cal. Oct. 24, 2006) ................. 4

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518 WHA, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006) ........................... 7, 15

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518 WHA, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2006) ............................ 8, 13

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518 WHA, 2007 WL 1140660 (N.D. Cal. Apr. 17, 2007) ............................ 9, 14

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518 WHA, 2007 WL 760750 (N.D. Cal. Mar. 9, 2007) ......................... *passim*

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ...................................................................................... 4, 8, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ......................................................................................................... 11

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(b)(2) ................................................................................................... 11, 12

28 U.S.C. §1658(b) ................................................................................................ 2, 3, 10, 11

**FEDERAL RULES**

Fed. R. Civ. P. 59 .................................................................................................................. 1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs herby move the Court pursuant to Fed. R. Civ. P. 59 and 60 and Local Rule 7-9 for reconsideration of the Court's August 19, 2009 Order Dismissing Class Allegations Only (Dkt. 86) ("Order"). This Motion is based on the recent decisions issued by the United States Supreme Court's recent decision in *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784 (2010), and the United States Court of Appeals for the Ninth Circuit in *Betz v. Trainer Wortham & Co.*, 610 F.3d 1169 (9th Cir. 2010), and *In re American Funds Securities Litigation*, 2010 U.S. App. LEXIS 19403 (9th Cir. Sept. 17, 2010), which vacated and remanded the precedents relied upon by this Court in finding that the two-year statute of limitations had run on Plaintiffs' class allegations with respect to their claims under Section 10(b) and Section 20(a) of the 1934 Securities Exchange Act (the "Exchange Act") in light of *Merck*.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**ISSUES TO BE DECIDED (CIVIL LOCAL RULE 7-4(A)(3))**

Should the Court reconsider its August 19, 2009 Order Dismissing Class Allegations Only in light of the intervening change in controlling law announced in the United States Supreme Court's decision in *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784 (2010), regarding the standard to be used to determine when the statute of limitations began running on Plaintiffs' class action Exchange Act claims?

I. INTRODUCTION

This action arises from materially false and misleading prospectuses and Statements of Additional Information (SAIs) issued by certain Wells Fargo mutual funds. In brief, Plaintiffs allege that Defendants Wells Fargo Funds Management, the investment adviser for the funds, and Wells Fargo Funds Trust, the registrant, failed to disclose that they had entered into secret revenue-sharing agreements pursuant to which the Defendants paid kickbacks to brokers and selling agents who steered their clients into Wells Fargo funds.[1] Defendants benefited from these secret revenue

---

[1] Wells Fargo & Company, the ultimate parent of Wells Fargo Funds Management and Wells Fargo Funds Trust, is also a Defendant herein, but is named as a Defendant only with respect to Plaintiffs' claim for violation of Section 20(a) of the Exchange Act as the alleged "control person" of the other
(continued . . . )

sharing arrangements because they increased the pool of assets under management and, concomitantly, Defendants' fees which were based on total fund assets. Investors in the funds, on the other hand, were damaged because the kickbacks were financed by improper and deceptive fees charged to and paid by investors.

This action is brought by investors in Wells Fargo mutual funds that were not part of the class action settlement that resolved the earlier action of *Siemers v. Wells Fargo & Co.*, C 05-04518-WHA ("*Siemers*") which was predicated on the same legal theories. In its August 19, 2009 Order Dismissing Class Allegations Only, the Court dismissed the class allegations asserted by Plaintiffs in this case as time-barred concluding that Plaintiffs were on inquiry notice no later than December 2005 "that Wells Fargo affiliates had participated in revenue-sharing agreements paid from fund assets not earlier disclosed in its prospectuses or SAIs." *See* Dkt. # 86 at 8. In support of this conclusion, the Court cited (i) a June 2005 NASD press release which announced that it had imposed fines totaling more than $34 million on 15 broker-dealer firms, including Wells Fargo Investments, which is not a defendant here, in connection with their receipt of directed brokerage in exchange for preferential treatment for certain mutual fund companies; (ii) press reports about the NASD action; and (iii) a December 2005 Disclosure Statement which disclosed that Wells Fargo Investments received payments from a limited number of mutual fund companies, including Wells Fargo Funds Management, in return for "enhanced access to Wells Fargo Investments' sales force," and that these payments were "in addition to the sales charges and fees that [are] disclosed in the fee tables, prospectuses and statements of additional information" of the funds. *Id.* at 6-7.

Earlier this year, in *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, the Supreme Court concluded that pursuant to 28 U.S.C. §1658(b) the limitations period for Section 10(b) claims begins to run "once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the

---

( . . . continued)

Defendants. Thus, whether Plaintiffs' Section 20(a) claim against Wells Fargo & Company is timely is dependant on whether Plaintiffs' Section 10(b) claims against Wells Fargo Funds Management and Wells Fargo Funds Trust are timely.

facts constituting the violation' – whichever comes first." *Id.* at 1798 (internal quotations omitted). In so holding, the Supreme Court rejected those lower court cases that had previously held that a Section 10(b) claim may accrue when a plaintiff was on "inquiry notice" of the claim – *i.e.*, when he or she possessed sufficient information suggestive of wrongdoing that the plaintiff should have begun to investigate. The Supreme Court in *Merck* held that the concept of "inquiry notice" is inconsistent with the language of the statute, which provides that a cause of action accrues only upon actual or constructive "discovery" of the facts of the violation. *Id.* at 1797. Most importantly for purposes of the instant motion, the Supreme Court held that the statutory language of 28 U.S.C. §1658(b) requiring "discovery of the facts constituting the violation" *included the facts supporting the "necessary element" of scienter*. *Id.* at 1796 (emphasis added). In this regard, the Supreme Court specifically rejected the assertion that facts demonstrating a material misrepresentation or omission are, by themselves, sufficient to show scienter and determined that, for purposes of a Section 10(b) claim, the "relation of factual falsity and state of mind" is "more context specific" such that a misrepresentation or omission does not automatically demonstrate scienter. *Id.* at 1796-97.

The Court's August 19, 2009 Order Dismissing Class Allegations Only must be reconsidered in light of the *Merck* decision. As explained more fully below, in its August 19, 2009 Order, this Court concluded that the statute of limitations began to run in December 2005 because a NASD regulatory action, press coverage of it, and a December 2005 Disclosure Statement issued by Wells Fargo revealed an omission – *i.e.*, "that Wells Fargo affiliates had participated in revenue-sharing agreements paid from fund assets not earlier disclosed in its prospectuses or SAIs." *See* Dkt. # 86 at 8. However, as noted above, *Merck* holds that a misrepresentation or omission does not automatically trigger the limitations period; facts demonstrating each defendant's scienter must also be discovered before the statute of limitations begins to run. *Merck*, 130 Sup. Ct. at 1796-97. The Court's August 19, 2009 Order did not consider whether the cited sources revealed facts demonstrating that the Defendants in this action – Wells Fargo Funds Management and Wells Fargo Funds Trust (as opposed to their affiliate, Wells Fargo Funds Investment) – acted with scienter. If it had, based on its earlier rulings in the *Siemers* action, it would have found that the cited documents

did *not* disclose facts sufficient to give rise to a strong inference that Wells Fargo Funds Management and Wells Fargo Funds Trust acted with the requisite intent to deceive as required by *Merck*.

Indeed, on October 24, 2006, (a date nearly a year after the Court found in the above-captioned case that a reasonably diligent plaintiff would have discovered these Defendants' wrongdoing), the Court dismissed the claims against Wells Fargo Funds Management in *Siemers* on the grounds that they "[fell] short of alleging, in 'great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct' on behalf of [Wells Fargo Funds Management]. *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 U.S. Dist. LEXIS 81097, at **36-37 (N.D. Cal. Oct. 24, 2006), *quoting In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999). Yet the facts relied upon in the *Siemers* complaint that the Court found insufficient to plead scienter when the Court issued its Order on October 24, 2006 **are the very same facts** that the Court cited to in its August 19, 2009 Order as placing Plaintiffs in the above-captioned action on inquiry notice. Clearly, based on the Court's previous ruling, even if these facts constituted inquiry notice (which Plaintiffs here contest) they were not sufficient to be "facts constituting the violation…including scienter" as is now required in *Merck*. Rather, the facts which finally led the Court to sustain the *Siemers*' plaintiffs' claims against Wells Fargo Funds Management were obtained in discovery in that action and were not *publicly disclosed* until they were included in the Court's own opinion in March 2007 permitting the claims against Wells Fargo Funds Management to proceed. *See Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 WL 760750, at *1 (N.D. Cal. Mar. 9, 2007). Since the facts required to plead the "[necessary] element" of scienter were not and could not have been discovered by Plaintiffs more than two years prior to the date this action was commenced (April 4, 2008), Plaintiffs' class allegations are timely and should not be dismissed.

The cited sources also did not contain sufficient facts to demonstrate that Wells Fargo Funds Trust acted with scienter. Although the Court sustained the *Siemers* plaintiffs' claims against Wells Fargo Funds Trust at an earlier point in the litigation, it did so on the basis of facts contained in an amended complaint filed on April 11, 2006, which were provided to plaintiffs' counsel in that case

by confidential sources and were *not* contained in any of the public sources cited by the Court in dismissing Plaintiffs' class allegations in this case as time-barred. Since the facts necessary to allege Wells Fargo Funds Trust's scienter were not publicly disclosed until April 11, 2006, when the amended complaint in *Siemers* was filed, Plaintiffs' class allegations against Wells Fargo Funds Trust in this case are timely as well.

In view of the foregoing, the Court's August 19, 2009 Order Dismissing Class Allegations Only should be vacated and Defendants' motion to dismiss Plaintiffs' class allegations in this case should be denied.

## II. STATEMENT OF FACTS

### A. The *Siemers* Action

On June 8, 2005, NASD issued a press release announcing that it had imposed fines totaling more than $34 million on 15 broker-dealer firms in connection with their receipt of directed brokerage in exchange for preferential treatment for certain mutual fund companies. Wells Fargo Investments, LLC, **which is not a defendant in this case**, was one of the 15 broker-dealer firms identified in the NASD press release. The release did not provide broker-dealer specific details concerning the violations found by NASD but did note that "[t]he use of directed brokerage allowed the fund complexes to use assets of the mutual funds instead of their own money to meet their revenue sharing obligations." *See* Dkt. # 66 Exhibit A.

Five months later, on November 4, 2005, the initial complaint was filed in the *Siemers* action.[2] The initial complaint named as defendants (i) broker dealers Wells Fargo Investments, LLC and H.D. Vest Investment Services, LLC; (ii) the advisers to the Wells Fargo Funds, Wells Fargo Funds Management LLC and Wells Fargo Capital Management Inc.; (iii) the distributors of the Wells Fargo Funds, Stephens Inc. and SEI Investments Distribution Company; (iv) the registrant of the Wells Fargo Funds, Wells Fargo Funds Trust; and (v) Wells Fargo & Co., the ultimate parent of most of the defendants. The complaint asserted claims for violation of Sections 12(a)(2) and 15 of

---

[2] A copy of the initial complaint in the *Siemers* action is attached as Exhibit A to the Declaration of Deborah Clark-Weintraub (the "Clark-Weintraub Decl.") submitted herewith.

the Securities Act of 1933, Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, Section 36(b) and 48(a) of the Investment Company Act, breach of fiduciary duty, and unjust enrichment.

The initial *Siemers* complaint, which was based entirely on publicly available information, alleged that the broker dealer defendants, Wells Fargo Investments, LLC and H.D. Vest Investments Services, LLC, violated their disclosure obligations and fiduciary duties by failing to disclose that they had been aggressively pushing their sales personnel to sell mutual funds, including Wells Fargo Funds, that participated in directed brokerage and revenue sharing arrangements (the "Shelf Space Funds") irrespective of a particular investor's investment objectives. In addition, the complaint alleged that the adviser defendants, Wells Fargo Funds Management and Wells Fargo Capital Management Inc., entered into illegal, undisclosed revenue sharing arrangements with broker-dealers that increased funds under management (thereby providing the investment advisers with higher fees) which were financed by excessive fees charged to the mutual funds in violation of the Investment Company Act of 1940 and state law – **claims that are not asserted here**. In this regard, although the initial complaint alleged generally that "W[ells] F[argo] Investments received revenue from its affiliate, [Wells Fargo] Funds Management, for pushing Wells Fargo Funds," and that the adviser defendants, including Wells Fargo Funds Management, were "highly motivated to allow and facilitate the conduct alleged" because they "received increased management fees, which inured to their benefit," *see* Clark-Weintraub Decl. Exhibit A at ¶¶ 33, 66, 91, the complaint did not specify the amount of the payments made by Wells Fargo Funds Management for shelf space or the amount "siphoned" from the Wells Fargo Funds for this purpose.

The following month, in December 2005, Wells Fargo issued a document entitled "Wells Fargo Investments, LLC Potential Conflicts of Interest Disclosure Statement" (the "Disclosure Statement"), which disclosed that Wells Fargo Investments received payments from a limited number of mutual fund companies, including Wells Fargo Funds Management, in return for "enhanced access to Wells Fargo Investments' sales force," and that these payments were "in addition to the sales charges and fees that are disclosed in the fee tables, prospectuses and statements of additional information" of the funds. Once again, however, no specifics were provided regarding the volume of payments at issue.

Following the appointment of Lead Plaintiff and Lead Counsel, a consolidated amended class action complaint was filed in the *Siemers* action on April 11, 2006. *See* Clark-Weintraub Decl. Exhibit B. Unlike the initial complaint, the consolidated amended class action complaint in *Siemers*, which was filed less than two years before the commencement of this action, contained factual allegations predicated on non-public information provided to plaintiffs' counsel in the *Siemers* action by confidential sources. *See, e.g., id.* at ¶¶ 39-42, 48-49. These confidential sources included "a former Shelf Space Board member" who stated that Wells Fargo's Corporate Trust Department sent monthly invoices totaling hundreds of thousands of dollars to Shelf Space Funds demanding payments which were paid by the funds on a monthly or quarterly basis. *See* Clark-Weintraub Decl. Exhibit B at ¶ 40. In addition, the consolidated amended complaint in *Siemers* referenced "internal Shelf Space documents" obtained from confidential sources, which reflected the annual amount of kickbacks the Shelf Space funds were required to pay and tracked the payments made to meet these quotas on a quarterly basis. *Id.*

On August 14, 2006, Judge Alsup issued an Order in *Siemers* granting in part and denying in part the defendants' motions to dismiss. Judge Alsup expressly relied on the allegations from confidential sources quoted above, which were not contained in the initial complaint filed in November 2005, in finding that the consolidated amended class action complaint in *Siemers* adequately alleged scienter with respect to the broker-dealer defendants, *i.e.*, Wells Fargo Investments and H.D. Vest, and Wells Fargo Funds Trust, the registrant. *See Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 2355411, at *9 (N.D. Cal. Aug. 14, 2006). With respect to Wells Fargo Funds Trust, Judge Alsup expressly relied on "plaintiff's allegation that the directors of the Wells Fargo Funds Trust knew about the already in place arrangements but left in place watered-down disclosures (Compl. ¶¶ 34, 39-55, 164)" in concluding that the consolidated amended complaint raised a strong inference of scienter. *Id.* at *9. Judge Alsup pointedly observed, however, that "[n]ot all defendants may have had such an intent or recklessness," but declined to "make defendant-specific challenges to the scienter allegations" when the defendants had failed to do so themselves. *See id.* at *9 n. 3.

Lead Plaintiff in *Siemers* filed a second amended consolidated class action complaint on

MOTION FOR RECONSIDERATION
-7-
CV-08-1830 RS

August 31, 2006. *See* Clark-Weintraub Decl. Exhibit C. This complaint was substantially identical to the consolidated amended class action complaint that had been filed on April 11, 2006 and differed only insofar as it (i) shortened the class period; (ii) added language to make clear that the Lead Plaintiff held shares of the Wells Fargo funds as of the filing of the action, and continued to hold those shares, in order to establish standing to bring the claim asserted for violation of Section 36 of the Investment Company Act of 1940 (a claim not asserted in the above-captioned action); and (iii) eliminated the claim that had been asserted for violation of section 48(a) of the Investment Company Act in view of the Court's ruling in the August 14, 2006 Order that there was no private right of action for violation of this provision of the statute. *See Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 3041090, at *3 (N.D. Cal. Oct. 24, 2006). Defendants again moved to dismiss, including on the grounds that the second consolidated amended class action complaint did not adequately allege scienter with respect to Wells Fargo Funds Management. Judge Alsup agreed, holding that that "the second amended complaint [fell] short of alleging, in 'great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct' on behalf of [Wells Fargo Funds Management]. *See id.* at *11, *quoting In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999). However, Judge Alsup granted the Lead Plaintiff leave to file a motion seeking leave to file a third amended class action complaint. *Id.* at *12.

Lead Plaintiff in *Siemers* filed his motion for leave on November 17, 2006. *See* Clark-Weintraub Decl. Exhibit D. The motion was opposed by defendants, including Wells Fargo Funds Management, which again argued that the latest iteration of the complaint failed to adequately allege scienter. Judge Alsup issued numerous requests for supplemental briefing in an effort to clarify the Lead Plaintiff's allegations and the parties' positions with respect to various legal issues. *See Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 WL 760750, at *4 (N.D. Cal. Mar. 9, 2007). All of this briefing culminated in an Order Identifying Claims To Proceed And Dismissing All Other Claims And Granting Motion To Amend In Part dated March 9, 2007. *Id.* In pertinent part, this Order finally sustained the Section 10(b) claim asserted against Wells Fargo Funds Management because discovery, which had been ongoing since the PSLRA discovery stay was lifted by the Court in September 2006, had revealed "that the size and scope of the revenue sharing . . .

had grown so large as to generate a conflict of interest **at the adviser level** requiring disclosure" which Wells Fargo Funds Management instead concealed. See *Id.* at *11 (emphasis added). Since the facts concerning the magnitude of the payments made by Wells Fargo Funds Management had only been disclosed in briefing which was filed under seal in response to one of the Court's requests for supplemental information and had not been included in the proposed third amended complaint, Judge Alsup's March 9, 2007 Order constituted the first public disclosure of the facts necessary to allege that Wells Fargo Funds Management had acted with scienter. At Judge Alsup's direction, these facts were subsequently included in the third amended and consolidated class action complaint (*see id.* at *11 n.9), which was finally sustained over defendants' objection in an Order dated April 17, 2007. See *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 WL 1140660 (N.D. Cal. Apr. 17, 2007).[3]

After Judge Alsup granted in part and denied in part the Lead Plaintiff's motion for class certification in *Siemers*, see *Siemers v. Wells Fargo & Co.*, 243 F.R.D. 369 (N.D. Cal. 2007), a settlement was approved by the Court with respect to the claims asserted on behalf of investors in certain of the Wells Fargo funds. These funds are not part of this action.

**B.    The *Kreek* Action**

This action was filed on April 4, 2008, less than two years after the consolidated amended class action complaint had been filed in *Siemers*. Following the appointment of Lead Plaintiff and Lead Counsel, an amended complaint was filed asserting claims for violation of Section 10(b) of the Exchange Act against Wells Fargo Funds Management and Wells Fargo Funds Trust, and a claim for control person liability against Wells Fargo & Co. On January 23, 2009, Defendants moved to dismiss including on the grounds that Plaintiffs' claims were time barred because the statute of limitations had begun to run no later than December 2005.

On August 19, 2009, the Court issued its Order finding that Plaintiffs' class allegations with respect to their Exchange Act claims filed on April 4, 2008 were barred by the statute of limitations

---

[3] A copy of the third amended complaint in the *Siemers* action is attached as Exhibit E to the Clark-Weintraub Decl.

under 28 U.S.C. §1658(b).[4] The Court articulated the following standard to be applied to determine when the statute of limitations began running: "*First*, a court must determine whether the plaintiff had inquiry notice of the facts giving rise to his claim . . . . *Second*, a court must ask whether 'the investor, in the exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud." Dkt. # 86 at 5 (italics in original), citing *Betz v. Trainer Wortham & Co., Inc.*, 519 F.3d 863 (9th Cir. 2008).

The Court then relied upon the standard and reasoning of *In re American Funds Sec. Litig.*, 556 F. Supp. 2d 1100 (C.D. Cal 2008), which the Court found to be "directly on point" (Dkt. # 86 at 5-10) with "nearly identical" facts (*id.* at 11). The Court concluded based upon the *Betz* and *American Funds* precedents that Plaintiffs in this case were on "inquiry notice" of their claims no later than December 2005 based on certain documents including the June 2005 NASD press releases, news articles concerning it, the December 2005 Disclosure Statement, and the initial complaint filed in the *Siemers* action. *See Id.* at 11-15. The Court held that "absent, tolling, the two-year statute of limitations ran on these claims before this action was commenced" on April 4, 2008 *Id.* at 8. The Court concluded that the statute of limitations for Plaintiffs' Exchange Act claims was tolled with respect to the individual plaintiffs but not for the class allegations and, therefore, dismissed Plaintiffs' class allegations as untimely. *Id.* at 16-21.

### III. ARGUMENT

#### A. Standard

A motion for reconsideration is appropriate under Local Rule 7-9 where "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, (3) if there was an intervening change in controlling law." *In re Impax Labs, Inc.*, No. C 04-04802 JW, 2008 U.S. Dist. LEXIS 104485, at *7 (N.D. Cal. April 17, 2008) (citing *Sch. Dist. No. 1J, Multnomah County v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). Here, based on

---

[4] 28 U.S.C. §1658(b)(1) provides that claims for violation of Section 10(b) and Section 20(a) of the Exchange Act must be brought within two years "after the discovery of the facts constituting the violation."

the decision issued by the Supreme Court of the United States in *Merck*, 130 S. Ct. at 1784, the Ninth Circuit has vacated and remanded the cases relied upon by the Court in dismissing Plaintiffs' class allegations as untimely under 28 U.S.C. §1658(b). *See Betz*, 610 F.3d at 1169 (vacating and remanding for further proceedings consistent with *Merck*); *In re American Funds Securities Litigation*, 2010 U.S. App. LEXIS 19403 (vacating and remanding for further proceedings consistent with *Merck* and *Betz*). Because there has been an intervening change in controlling law on the issue of when the statute of limitations began to run on Plaintiffs' Exchange Act claims, reconsideration of the Court's August 19, 2009 Order Dismissing Class Allegations Only is appropriate.

    **B. The Class Allegations Against the Defendants in This Case Are Timely Because the Facts Necessary to Allege Defendants' Scienter Were Not Publicly Disclosed More Than Two Years Prior To the Filing of This Action**

In *Merck*, the Supreme Court held that the statute of limitations on a claim for violation of Section 10(b) begins to run once the plaintiff discovers, or a reasonably diligent plaintiff would have discovered, ***the facts constituting the violation, including scienter***. 130 S. Ct. at 1798. In this regard, the Supreme Court rejected Merck's contention that discovery of scienter-related facts was not required to trigger the statute of limitations reasoning:

> The statute says that the limitations period does not begin to run until "discovery of the *facts constituting the violation*." 28 U.S.C. § 1658(b)(1) (emphasis added). Scienter is assuredly a "fact." In a § 10(b) action, scienter refers to a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst*, 425 U.S., at 194, n. 12, 96 S. Ct. 1375. And the "'state of a man's mind is as much a fact as the state of his digestion.'" *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 176, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983) (quoting *Edgington v. Fitzmaurice*, [1885] 29 Ch. Div. 459, 483).
>
> And this "fact" of scienter "contitut[es]" an important and necessary element of a § 10(b) "violation." A plaintiff cannot recover without proving that a defendant made a material misstatement *with an intent to deceive* – not merely innocently or negligently. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Ernst & Ernst, supra*. Indeed, Congress has enacted special heightened pleading requirements for the scienter element of § 10(b) fraud cases. *See* 15 U.S.C. § 78u-4(b)(2) (requiring plaintiffs to "state with particularity *facts* giving rise to a strong inference that the defendant acted with the required state of mind" (emphasis added)). As a result, unless a § 10(b) plaintiff can set forth facts in the complaint showing that it is "at least as likely as" not that the defendant acted with the relevant knowledge or intent, the claim will fail. *See Tellabs, supra*, at 328. It would therefore frustrate the very purpose of the discovery rule in this provision – which, after all, specifically applies only in cases "involv[ing] a claim of fraud, deceit, manipulation, or contrivance," § 1658(b) – if the limitations period began to run regardless of whether a

> plaintiff had discovered any facts suggesting scienter. So long as a defendant concealed for two years that he made a misstatement with an intent to deceive, the limitations period would expire before the plaintiff had actually "discover[ed]" the fraud.
>
> We consequently hold that facts showing scienter are among those that "constitut[e] the violation."

*Id.* at 1796.

Applying these principles, the Supreme Court concluded that the plaintiffs in *Merck* had not actually or constructively discovered facts indicating Merck's alleged scienter more than two years before the case was filed. In particular, the Court rejected the notion that an earlier products-liability suit, which alleged that Merck had "omitted, suppressed, or concealed material facts concerning the dangers and risks associated with Vioxx and *purposefully* downplayed and/or understated the serious nature of the risks associated with Vioxx," and a warning letter issued by the Food and Drug Administration, which said that Merck had "minimized the VIGOR study's potentially serious cardiovascular findings," contained facts that would suffice to plead Merck's scienter for securities fraud with the specificity needed to survive a motion to dismiss. *Id.* at 1799 (emphasis in original). The Supreme Court found, "whether viewed separately or together," these circumstances did not reveal any "facts" indicating scienter with respect to the plaintiffs' claims for securities fraud. *Id.*

In his decision dismissing the class allegations in this case, Judge Alsup did not consider whether, two years prior to the filing of this action on April 4, 2008, the plaintiff had discovered or a reasonably diligent plaintiff would have discovered facts showing that the Defendants knowingly, intentionally, or recklessly committed securities fraud by failing to disclose the revenue sharing arrangements in the prospectuses and SAIs at issue. Rather, Judge Alsup concluded that the statute of limitations began to run in December 2005 because the NASD action, press coverage of it, and the December 2005 Disclosure Statement revealed an omission – *i.e.*, "that Wells Fargo affiliates had participated in revenue-sharing agreements paid from fund assets not earlier disclosed in its prospectuses or SAIs." Dkt. # 86 at 8. However, as the Supreme Court instructed in *Merck*, facts that tend to show a false statement or omission are not necessarily sufficient to demonstrate a defendant's scienter in a § 10(b) case. *See* 130 S. Ct. at 1797 ("[T]he statute may require 'discovery' of scienter-related facts beyond the facts that show a statement (or omission) to be

materially false and misleading.").

Indeed, Judge Alsup's decisions in *Siemers* demonstrate this point. While the failure to disclose revenue sharing payments was an allegation contained in each complaint filed by the plaintiff in *Siemers*, including the original complaint filed in November 2005, it was not until the third amended complaint was filed in March 2007 that Judge Alsup held that the scienter allegations with respect to defendant Wells Fargo Funds Management were adequate. Indeed, in October 2006, nearly a year after the date Judge Alsup held in this case that the statute of limitations had begun to run with respect to plaintiff's claims, Judge Alsup dismissed the § 10(b) claims against defendant Wells Fargo Funds Management in *Siemers* for failure to allege scienter stating that:

> As to the issue of scienter, this order finds that the second amended complaint falls short of alleging, in "great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct" on behalf of [Wells Fargo Funds Management]. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 974. Plaintiff's only basis for alleging scienter against Well Fargo Funds Management . . . is that [it] had reached agreements with the broker-dealers . . . to promote their funds directly. The complaint also alleges that Wells Fargo & Co., as the parent of many of the other defendants, was the "ultimate beneficiary of the secret plan and scheme to endorse the Shelf Space to the detriment of the Funds and their investors," and thus that "it too was liable for the acts and omissions at issue" . . . . General allegations of tangential relationships to the actual misstatements made to the public are insufficient to support a strong inference of scienter.

See *Siemers*, 2006 WL 3041090, at *11.

Significantly, the scienter allegations with respect to Wells Fargo Funds Management contained in the third amended complaint filed in March 2007 which Judge Alsup finally found adequate to pass muster **were based on information that had been obtained in discovery that was not otherwise publicly available**. In this regard, in an Order addressing the adequacy of the proposed third amended complaint in *Siemers*, Judge Alsup held that to state a claim for inadequate disclosure of revenue sharing it was necessary to allege that "the size and scope of the revenue sharing . . . had grown so large as to generate a conflict of interest **at the adviser level** requiring disclosure." *Siemers v. Wells Fargo & Co.*, No. C-05-04518 WHA, 2007 WL 760750. The information regarding the magnitude of the Wells Fargo revenue-sharing programs necessary to make this allegation was obtained in discovery and was not publicly available until it was revealed in Judge Alsup's March 9, 2007 Order. As reflected in Judge Alsup's Order, "[d]iscovery [in

1   *Siemers*] revealed that the Wells Fargo sponsors paid at least $18 million annually to Wells Fargo
2   Investments, all of which was directly or indirectly drawn from the Wells Fargo complex of funds,"
3   and that the total payments "were likely to have been, for all Wells Fargo funds combined, more
4   than $100 million over a five-year period." *Siemers*, *Id.* at n.9. Judge Alsup stated that "[t]he
5   amended complaint to be filed *must* [contain] this allegation." *See id.* In his later Order finally
6   sustaining the § 10(b) claim as to Wells Fargo Funds Management contained in the third amended
7   complaint that he had permitted to be filed, Judge Alsup summarized the facts drawn from
8   confidential documents obtained in discovery and deposition testimony which evidenced Wells
9   Fargo Funds Management's use of excessive fees charged to the Wells Fargo Funds to finance the
10  "[a] vast system of Wells Fargo revenue sharing" that was known to its key officers and concealed
11  from investors. *See Siemers*, 2007 WL 1140660, at *2-6. In particular, Judge Alsup emphasized
12  that "[t]he magnitude of the revenue sharing obligation was huge – approximately $372 million to
13  472 brokers over five years – and reached proportions that created a conflict of interest for the
14  sponsors, namely that in order to find sources of cash to make payments, the sponsors would have to
15  inflate artificially the fees charged to the common fund even though this was against the interest of
16  the common fund." *Id.* at *2. In addition, Judge Alsup noted that the third amended complaint
17  "cite[d] to specific memoranda establishing the existence of the revenue sharing agreements
18  between the sponsors and the brokers" and "agreements [ ] negotiated and signed by successive
19  presidents of Wells Fargo Funds Management" (*id.*), all of which were obtained in discovery long
20  after the initial *Siemers* complaint was filed in November 2005. Based upon these facts, Judge
21  Alsup concluded that "the complaint is specific enough in alleging that the fees [charged by Wells
22  Fargo Funds Management] were intentionally inflated to surreptitiously cover the ongoing expense
23  of distribution." *Id.* at *8; *see also id.*, at *12 ("The revised complaint raises a strong inference of
24  material misleading on a [material] investment consideration.").

25          As for Wells Fargo Funds Trust, Judge Alsup's August 14, 2006 Order makes clear that the
26  information provided by the "former Shelf Space Executive and Board member" evidencing the
27  directors' knowledge of the revenue sharing arrangements, which appeared for the first time in the
28  consolidated amended complaint filed on April 11, 2006, was critical to finding that the scienter of

Wells Fargo Funds Trust had been adequately alleged. *See Siemers*, 2006 WL 2355411, at *9 (citing "plaintiff's allegation that the directors of the Wells Fargo Funds Trust knew about the already-in-place arrangements but left in place watered-down disclosures (Compl. ¶¶ 34, 39-55, 164)" as raising a strong inference of scienter).

In view of the foregoing, it is clear that the facts Judge Alsup found were necessary to allege scienter with respect to Wells Fargo Funds Trust and Wells Fargo Funds Management, the Defendants in this case, were not publicly disclosed until April 11, 2006 and March 9, 2007, respectively, less than two years prior to the filing of this action on April 4, 2008. Since this action was filed within the two year statute of limitations the Court's August 19, 2009 Order Dismissing Class Allegations Only must be vacated and Defendants' motion to dismiss Plaintiffs' claims as time-barred must be denied.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant their motion for reconsideration and deny Defendants' motion to dismiss the class claims as untimely.

Respectfully submitted,

DATED: December 16, 2010

**WHATLEY DRAKE & KALLAS, LLC**

By: */s/ Deborah Clark-Weintraub*
Deborah Clark-Weintraub
Elizabeth Rosenberg
1540 Broadway, 37th Floor
New York, New York 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077

**REESE RICHMAN LLP**
Michael R. Reese (Cal. State Bar. No. 206773)
875 Avenue of the Americas
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 573-4272

*Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Deborah Clark-Weintraub, hereby declare that on December 16, 2010, I served all counsel of record with the foregoing document by filing said document with the Court's electronic filing system, which then provided service of the document to all counsel of record.

                                                      /s/ Deborah Clark-Weintraub
                                                      Deborah Clark-Weintraub